## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

| | |
|---|---|
| BHUPENDRA KHONA, JENNIFER LUDGATE, BRIAN MANN, and LUCIA LUONG Individually and On Behalf of a Class of Similarly Situated Individuals,<br><br>        Plaintiffs,<br>    v.<br><br>SUBARU OF AMERICA, INC.,<br><br>        Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Bhupendra Khona, Jennifer Ludgate, Brian Mann, and Lucia Luong ("Plaintiffs") bring this action against Subaru of America Inc. ("Defendant" or "Subaru"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

### INTRODUCTION

1.     Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased 2015 through 2016 Subaru Outback or Legacy vehicles nationwide ("Class Vehicles") that were designed, manufactured, distributed, marketed, sold and leased by Defendant Subaru of America, Inc. ("Defendant" or "Subaru").

2.     Beginning in 2014, if not before, Defendant knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause the windshield to crack, chip and/or fracture ("Windshield Defect").

3.      Numerous Class Vehicle owners have reported that their windshields failed for no reason at all; others have reported windshield failure as a result of circumstances that would not cause a non-defective windshield to fail, such as a very slight impact.  On information and belief, replacement windshields provided by Defendant suffer from the same Defect, forcing some Class Vehicle owners to replace their windshields multiple times.  On information and belief, in an egregious breach of its duties under the law, Defendant has caused its dealers to systematically deny valid warranty claims, often times claiming that failure caused by the Defect is instead the result of some external factor not covered under warranty.  One owner complained to the National Highway Traffic Safety Administration ("NHTSA") as follows:

> NHTSA Complaint, October 12, 2015, ID No. 10781453:  OUR 2015 SUBURU OUTBACK WAS PURCHASED IN APRIL 2015. IN JULY, THE WINDSHIELD CRACKED (RIGHT UP THE MIDDLE AND THEN, BRANCHED OUT TO BOTH SIDES) RIGHT BEFORE OUR EYES IN THE PARKING LOT OF THE ZOO. NO IMPACT OF ANY DEBRIS WAS HEARD OR EVIDENT. WE HAD THE WINDSHIELD REPLACED AFTER SUBURU DETERMINED A POINT OF IMPACT FROM DEBRIS. WE DID NOT AGREE, BUT WE NEEDED A NEW WINDSHIELD, SO WE PAID FOR IT. ON OCTOBER 8, AFTER GETTING INTO CAR AT WORK PARKING LOT, ANOTHER CRACK WAS DISCOVERED AND MATCHED THE JULY'S CRACK EXACTLY. AGAIN, NO IMPACT OF DEBRIS AND THE START OF THE CRACK STARTS AT THE VERY BOTTOM OF THE WINDSHIELD. I VISITED SUBURU THIS MORNING FOR ROUTING MAINT AND THEY INFORMED ME OF NO RECALL AND DIDN'T DO ANYTHING ABOUT IT. I AM REPLACING THE WINDSHIELD, AGAIN, IN A COUPLE OF DAYS. I SUSPECT THERE IS SOMETHING WRONG WITH THE MANUFACTURING OR DESIGN OF THE OUTBACK.

As discussed in greater detail below, in about October of 2015, Defendant admitted the existence of a defect.  However, rather than offer to fix the Class

Vehicles free of charge, Defendant has instead fraudulently misrepresented the nature and scope of the defect, consistently denied valid warranty claims, and merely replaced defective windshields with other similarly defective windshields. The goal of this litigation is to remedy this fraudulent conduct.

4.     The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians.  A spontaneously shattering or cracking windshield can impair the driver's view and cause driver distraction.  It may also result in dislodged glass that can cause cuts, eye damage, and other injuries.

5.     In addition, the windshield is a vital component of a vehicle's safety restraint system, which also includes airbags and seatbelts.  These safety features, including the windshield, are all part of a safety network.  Each individual component of this network is dependent on the others functioning properly.  If there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased.  All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

6.     The windshield provides support that a passenger-side airbag needs to deploy properly.  If the windshield is compromised, the airbag may be useless in a collision.  Similarly, the windshield provides much of the roof support for most vehicles.  As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs in that the windshield supports the roof, thereby keeping the roof from collapsing and crushing the driver and passengers.

CLASS-ACTION COMPLAINT

7.     In addition to these obvious safety hazards, the cost to repair the Windshield Defect can be exorbitant, requiring consumers to pay significant sums over the life of their Class Vehicles.

8.     Plaintiffs are informed and believe, and based thereon allege, that Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Defendant has actively concealed the true nature and extent of the Windshield Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.  Had Plaintiffs and prospective Class Members known about the Windshield Defect, they would not have purchased the Class Vehicles or would have paid less for them.

9.     Plaintiffs are informed and believe, and based thereon allege, that despite notice of the Windshield Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Windshield Defect.

10.     Subaru knew of and concealed the Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.  As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

CLASS-ACTION COMPLAINT

11.     Plaintiffs bring this action against Defendant for violation of (1) New Jersey's Consumer Fraud Act N.J. Stat. Ann. § 56:8-1 *et. seq.*; (2) Breach of Express Warranty (N.J. Stat. Ann. 12A:2-313); (3) Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §12A:2-314); (4) New York's General Business Law for Deceptive Acts or Practices § 349; (5) Breach of Express Warranty (N.Y. U.C.C. § 2-313); (6) the California Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.*; (7) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (8) the California Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq.*, and Cal. Comm. Code §2314; (9) Breach of Express Warranty, Cal. Comm. Code §2313; (10) common law fraudulent omission; (11) Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. §2301, *et seq.*); and (12) Breach of Implied Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. §2301, *et seq.*) on behalf of themselves and all others similarly situated.  Plaintiffs seek for themselves and the class actual damages, statutory damages, injunctive relief, costs, attorneys' fees and such other relief as may be just and appropriate.

## PARTIES

### Plaintiff Bhupendra Khona

12.     Plaintiff Bhupendra Khona is a New Jersey citizen who lives in Voorhees, New Jersey.  In or about March of 2015, Mr. Khona purchased a new 2015 Subaru Legacy from Subaru of Cherry Hill in Cherry Hill, New Jersey.  At the time of purchase, Mr. Khona test drove the vehicle, spoke with the dealer sales representative and viewed the sticker posted on the side window of the vehicle.  Mr. Khona's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Subaru.

13.     In or around April of 2017, a crack appeared on the bottom of the driver's side of the vehicle's windshield and began to spread up towards the ceiling of the vehicle.  At no point prior to this time did Mr. Khona witness anything strike the windshield, nor was there any sign of an impact that he could see.  Shortly thereafter, Mr. Khona brought the vehicle to Subaru of Cherry Hill, in Cherry Hill, New Jersey where the service representative who inspected the windshield ran a ballpoint pen along the crack.  Based on this test, the service representative claimed that the crack in the windshield was caused by an impact and denied warranty coverage.  At the time that Mr. Khona was denied warranty coverage, his vehicle was within the New Car Limited Warranty of three (3) years/36,000 miles. Mr. Khona subsequently took the vehicle to Safelight AutoGlass in Cherry Hill New Jersey where he paid roughly $400.00 to replace the windshield.

14.     At all times, Mr. Khona has driven the vehicle in a foreseeable manner and in the manner in which it in was intended to be used.

**Plaintiff Jennifer Ludgate**

15.     Plaintiff Jennifer Ludgate is New York citizen who lives in Staten Island, New York.  In or about June 2015, Ms. Ludgate purchased a new 2015 Subaru Outback from Staten Island Subaru in Staten Island, New York.  At the time of purchase, Ms. Ludgate test drove the vehicle, spoke with the dealer sales representative and viewed the sticker posted on the side window of the vehicle. Because safety is important to Ms. Ludgate, she purchased a vehicle equipped with "Eyesight Driver Assist Technology," a crash prevention feature which monitors traffic movement, optimizes cruise control, and warns the driver if the vehicle sways out of its lane ("Eyesight Feature").  Ms. Ludgate's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Subaru.

16.    One morning in August of 2017, Ms. Ludgate noticed a crack originating in the bottom center portion of her windshield.  At no point prior to this time did Ms. Ludgate witness anything strike the windshield, nor was there any sign of an impact that she could see.  Ms. Ludgate took the vehicle to Staten Island Subaru and the dealer claimed there was a very slight chip in the lower black portion of the windshield which indicated the crack was the result of an outside influence.  As a result, Ms. Ludgate was informed that she was not eligible for warranty coverage.  Ms. Ludgate complained and was provided a $500 goodwill coupon.  Ms. Ludgate had her windshield replaced at an out-of-pocket cost of $107.69 after application of the $500 coupon.  At the time that Ms. Ludgate was denied warranty coverage, her vehicle was within the New Car Limited Warranty of three (3) years/36,000 miles.

17.    At all times, Ms. Ludgate drove her vehicle in a foreseeable manner and in the manner in which it in was intended to be used.

**Plaintiff Lucia Luong**

18.    Plaintiff Lucia Luong is a California citizen who lives in Santa Maria, California.  Ms. Luong purchased a new 2015 Subaru Outback from Puente Hills Subaru in City of Industry, California, in February of 2015.  Prior to purchase, Ms. Luong researched her vehicle on the Internet, including the Subaru website.  In addition, she viewed Youtube videos regarding the Outback to compare older models with the 2015 model.  At the time of purchase, Ms. Luong test drove the vehicle, spoke with the dealer sales representative and viewed the "Monroney" sticker posted on the side window of the vehicle.  Because safety is important to Ms. Luong, she purchased a vehicle with the Eyesight Feature.  Ms. Luong purchased her vehicle primarily for personal, family or household purposes.  Ms.

Luong's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Subaru.

19.    In about March of 2017, Ms. Luong noticed a crack that had spontaneously appeared on her windshield from the center base upward.  At no time prior to noticing this crack did Ms. Luong witness the windshield sustain an impact; indeed, Ms. Luong had not even driven the vehicle the day before the crack appeared.  Ms. Luong had her vehicle inspected by a representative of Rancho Grande Subaru in San Luis Obispo and was refused warranty coverage.  At the time that Plaintiff Luong was denied warranty coverage, her vehicle was within the New Car Limited Warranty of three (3) years/36,000 miles.

20.    At all times, Ms. Luong has driven her vehicle in a foreseeable manner and in the manner in which it in was intended to be used.

**Plaintiff Brian Mann**

21.    Plaintiff Brian Mann is a California citizen who lives in Santa Clara, California.  Mr. Mann purchased a new Subaru Outback from Stevens Creek Subaru in San Jose, California, in April 2016.  Prior to purchase, Mr. Mann researched his vehicle on the Internet, including the Subaru website.  At the time of purchase, Mr. Mann test drove the vehicle, spoke with the dealer sales representative and viewed the "Monroney" sticker posted on the side window of the vehicle.  Because safety is important to Mr. Mann, he purchased a vehicle with the Eyesight Feature.  Mr. Mann purchased his vehicle primarily for personal, family or household purposes.  Mr. Mann's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Subaru.

22.    In about February of 2017, Mr. Mann was driving his vehicle and noticed a small crack on the lower right passenger side of his windshield about four to five inches above the bottom portion of the windshield.  He did not see

anything impact the windshield.  Within ten minutes of driving a foot-long crack had formed; within 24 hours the crack grew to approximately two feet.  Mr. Mann had his vehicle inspected by a representative of Stevens Creek Subaru and was refused warranty coverage.  Mr. Mann had a replacement windshield installed for which he paid a $500 insurance deductible out-of-pocket.  At the time that Plaintiff Mann was denied warranty coverage, his vehicle was within the New Car Limited Warranty of three (3) years/36,000 miles.

23.     At all times, Mr. Mann has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Defendant**

24.     Defendant, Subaru of America, Inc., is a New Jersey corporation with its principal place of business located at 2235 Route 70 West, Cherry Hill New Jersey, 08002 and doing business in New Jersey and throughout the United States.

25.     Defendant is responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles.

26.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendant.

**JURISDICTION**

27.     This Court has subject matter jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  There are more than 100 Class Members.  At least one Class Member is a citizen of a different state than the Defendant.

CLASS-ACTION COMPLAINT

28.     This court also has federal question jurisdiction over this action under 28 U.S.C. §1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law, 15 U.S.C. § 2301, *et seq.*  This Court has personal jurisdiction over Defendant because it is a duly organized New Jersey corporation with its principle place of business located in Cherry Hill, New Jersey.

## VENUE

29.     Venue is proper in this District because Defendant resides in this district within the meaning of 28 U.S.C. §1391 and a substantial part of the acts and omissions alleged herein took place in this District, as the Class Vehicles are were and are regularly advertised, marketed, sold / leased and serviced in this District through Defendant's network of dealers.  Plaintiffs' counsel's Declaration of Venue, to the extent required under California Civil Code section 1780(d), is attached hereto as Exhibit 1.

## FACTUAL ALLEGATIONS

30.     For years, Subaru has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, it has sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles in California.

31.     The Windshield Defect causes the Class Vehicles' front windshield to crack, chip and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail. The Windshield Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, inter alia, the impact of the Defect on visibility as well as the Class Vehicles' structural integrity, and the potential for injury.

**Subaru's Sham Warranty Extension Program**

32.     In around the fall of 2015, Subaru purported to extend the original New Car Limited Warranty of three (3) years/36,000 miles to five (5) years/unlimited miles for front windshield failure pursuant to Service Bulletin 12-192-15R.  The warranty extension provided for one replacement windshield to be provided under certain very limited circumstances to a subset of Class Vehicles produced prior to August/September of 2015.   The warranty extension applies to vehicles equipped with the windshield wiper deicer feature, which is incorporated into the blackened bottom portion of the windshield.  Eligibility for coverage under the warranty extension is expressly limited to vehicles with damage in the lower deicer area of the windshield or a crack in the class that passes through that area.

33.     Some, but not all Class Vehicle owners and lessees were informed of the warranty extension via a customer letter sent by Defendant in about October of 2015 after the purchase of their vehicles.  Thousands of class members are not included in the warranty extension and were not informed of it.  Moreover, on information and belief not all of those covered by the warranty extension were informed of it.  For example, although Plaintiff Luong's VIN is within the range of vehicles covered under the warranty extension, she never received notice of it to the contact address provided to Subaru when she purchased her vehicle, which address was and is actively monitored for mail respecting Ms. Luong.  Mr. Mann's VIN is not within the range of vehicles covered under the warranty extension.

34.     On information and belief and based on the investigation of counsel, the warranty extension letter is false and misleading, and the warranty extension itself is a wholly inadequate and illusory sham remedy for the Windshield Defect.

35.     The warranty extension letter claims that the Defect is limited to the lower deicer area of the windshield and that damage to other areas of the

windshield, regardless of the cause, do not result from a manufacturing defect and consequently are not eligible for coverage under the vehicle's original limited warranty or the warranty extension. On information and belief, this is false and misleading. As a result of the Windshield Defect, the entire windshield of the Class Vehicles is defective.

36.     The warranty extension letter also states that if an impact is severe enough to cause glass penetration, starring, or other severe damage, it is not caused by the Defect since such an impact would also result in damage to the windshield even at its normally expected strength. On information and belief, this is also false and misleading. On information and belief, as result of the Windshield Defect, the Class Vehicles' windshields will fail (i.e., crack, chip, fracture, star, etc.) as a result of circumstances that would not cause non-defective windshields to fail.

37.     When vehicles are brought in for repair under warranty, Defendant's dealers search for any excuse to deny coverage, often claiming that an impact caused the failure, notwithstanding the fact that the customer witnessed no impact, there is no visual evidence of an impact, or that any impact was so slight it should not have caused the windshield to fail. On information and belief, Defendant's dealers' systematic denial of valid coverage claims is part of a concerted effort orchestrated by Defendant to minimize the cost of warranty claims.

38.     Moreover, on information and belief, when windshield repairs are performed by Defendant's dealers (for charge, or free of charge under the New Vehicle Limited Warranty or under the warranty extension, or as goodwill, as the case may be), defective windshields are merely replaced with similarly defective windshields. Although Subaru claims to have developed an "enhanced" windshield, on information and belief any enhancement was nonmaterial and did not resolve the Defect, and all the windshields in all the Class Vehicles, and all the

replacement windshields provided by Subaru, are defective.  Plaintiff Brian Mann owns a vehicle made after the production date cut-off for the warranty extension based upon its VIN, that on information and belief was equipped with an "enhanced" windshield, that failed.  Based on the investigation of counsel, many other Class Members with vehicles that post-date the production cut-off for the warranty extension, and/or who received replacement windshields after the introduction of Subaru's allegedly "enhanced" windshield, have similarly experienced the Windshield Defect.  The following complaints provide illustrative examples:

- • <u>NHTSA Complaint, November 5, 2016, ID No. 10924455:</u> FRONT WINDSHIELD CONTINUES TO CRACK CAUSING STRUCTURAL DEFECT IN VEHICLE. RECALL SUBARU 12-192-15R EXTENDED WARRANTY ONE TIME. WINDOW REPLACEMENT HAS CRACKED A TOTAL OF 6 TIMES IN 18,000 MILES.
  FRONT WINDOW CRACKED 4 TIMES WHILE VEHICLE WAS MOVING WITH NO APPARENT OBJECT BEING HIT. FRONT WINDOW CRACKED 2 TIMES WHILE BEING PARKED.
  REPEATED ISSUES NOTED IN WWW.SUBARUOUTBACK.ORG FOR MODEL YEARS 15, 16, AND 17.

- <u>NHTSA Complaint, March 1, 2016, ID No. 10839200:</u> CRACK IN WINDSHIELD HAD CRACKS APPEAR IN WINDSHIELD ON 2 SEPARATE DAYS IN JAN. 2016 . HAD THE WINDSHIELD REPLACED IN MID JAN BY SUBARU DEALER. ON FEB 25 WHILE DRIVING ON I-95 IN GA. ANOTHER CRACK APPEARED IN NEW WINDSHIELD WITH NO APPARENT CAUSE . WE WERE DRIVING ABOUT 70 MPH AT ABOUT 70 MPH.

- <u>NHTSA Complaint, May 3, 2016, ID No. 10862777:</u> SECOND WINDSHIELD CRACK IN 10 DAYS. WHILE DRIVING ON INTERSTATE IN THE RAIN, I TURNED ON THE FRONT

DE-FOGGER. APPROX 20 SECONDS LATER THE
WINDSHIELD CRACKED FROM THE CENTER BOTTOM
UP AND TOWARD THE DRIVERS SIDE. CRACK
CURRENTLY EXTENDS UP ABOUT 8 INCHES. AS
BEFORE, THERE WAS NO STRIKE THAT CAUSED THIS
AND PAVEMENT WAS CLEAN AND SMOOTH. THIS
WAS A NEW SUBARU BRANDED WINDSHIELD THAT
WAS INSTALLED LITERALLY 4 DAYS AGO. GOING
BACK IN TO THE SERVICE DEPT FOR REPAIR AS SOON
AS POSSIBLE.

- Carcomplaints.com Complaint, February 17, 2016:  The 2016
Outback was parked in a temperature controlled garage for 3
days. We had gone down various times over those 3 days to get
things out of the car, put things in the car etc. On the 4th day,
went to leave for work and saw a massive crack in the
windshield that started on the passenger pillar. The crack was
fairly straight, little curve to it, and about 16"-18". The car was
never struck with anything, this crack just appeared. Went to the
dealer and they said it seemed like there was something small on
the pillar that resembled a strike (although I know for a fact,
there was no strike!). Called SOA, as this seems to be a major
issue for Gen 5 Outbacks, and they replaced it as a "good faith
one time replacement". Now just 2,000 miles later, a small
pebble made a "tink" sound with basically no spidering from the
impact, and the new windshield is now cracked on the drivers
side. The crack got to about 10" within less than 5 minutes. The
impact was on the drivers side pillar, and within mere minutes a
major crack again! We've been driving the same roads for nearly
40 years and never had a windshield cracked ever, let alone 2 on
the same car! This seems to be a major issue with the Gen 5
Outbacks, after reading hundreds of complaints and similar
issues on the http://www.subaruoutback.org/ forum site. This is
making us question our decision of buying a Subaru, as this is
our first one. If this happens a 3rd time, we will probably get rid
of the car, even though we love it. Huge safety hazard!
(https://www.carcomplaints.com/Subaru/Outback/2016/window
s_windshield/windshield_crack.shtml).

- Carcomplaints.com Complaint, May 7, 2016: This is my third windshield crack within 15 months of purchasing a new 2015 Subaru Outback. Subaru refused to replace the windshield free this time because they said the last replaced windshield was the "enhanced" windshield. Well, the enhanced windshield has exactly the same problem as the original. Any small ding in the deicer area will crack the windshield. but if the ding happens in other areas, the windshield won't crack. I talked to Subaru national office about the problem. They said they can't do anything unless they find other people also complain about the cracking problem with their "enhanced" windshield. So if you have the same problem, please report it. (https://www.carcomplaints.com/Subaru/Outback/2015/windows_windshield/cracks_easily.shtml).

- SubaruOuback,org Forum Posting, January 23, 2016: So, we just had a new windshield installed 2 weeks ago... After the factory one turned to a mess of cracks in just a few months. Well. There are already 2 big chips on the new one. One of which just happened 10 min ago.  I BARELY even heard to rock hit, it was not big, and didn't hit hard at all... However it left a nasty chip right in front of my face that I'm sure will run.  What the heck to these windshields suck so bad? (http://www.subaruoutback.org/forums/138-gen-5-2015-present/213626-2015-outback-windshield-crack-62.html).

- SubaruOutback.org Forum Posting, April 25, 2016: 3rd replacement windshield…The first 2 windshield cracks and replacements did not look like impact breaks but Subaru said they were…The dealership replaced the 2nd last Wed and 3 days later the 3rd windshield cracked when a small pebble kicked off a truck and hit the glass…I stopped by this morning to show them... going to try and have it repaired rather than replaced... but I can't keep buying new windshields. (http://www.subaruoutback.org/forums/138-gen-5-2015-present/213626-2015-outback-windshield-crack-69.html).

39.    Subaru had and has a duty to fully disclose the true nature of the Windshield Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Subaru had and has exclusive knowledge or access to material facts about the Class Vehicles' front windshield that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Subaru has actively concealed the Windshield Defect from its customers.  Because the windshield contained in each Class Vehicle is defective, each Class Vehicle windshield should be replaced by Subaru free of charge regardless of whether the windshield has failed, or the facts and circumstances surrounding any failure.

### Subaru's Knowledge of the Defect

40.    Plaintiffs are informed and believe, and based thereon allege, that, as early as 2014, if not before, Subaru became aware of the Windshield Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Subaru's network of dealers and directly to Subaru, aggregate warranty data compiled from Subaru's network of dealers, testing conducted by Subaru in response to consumer complaints, and repair order and parts data received by Subaru from Subaru's network of dealers.

41.    During the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would necessarily have taken place prior to 2015, Subaru, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's windshields:  the types and properties of materials used to make them, including their durability and whether

those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the windshields would face; when and how the windshields would fail; and the cumulative and specific impacts on the windshields caused by wear and use, the passage of time, and environmental factors.

42. An adequate pre-release analysis of the design, engineering, and manufacture of the windshields used for the Class Vehicles would have revealed to Subaru that the windshields were insufficiently strong and durable for the intended use. Thus during the pre-release design stage of the Class Vehicles, Subaru would have known that the windshield chosen for the Class Vehicles was defective and would pose a safety risk to owners/lessees and the motoring public.

43. Upon information and belief, Subaru also would have known about the Windshield Defect because of the higher than expected number of replacement windshields ordered from Subaru, which should have alerted Subaru that this was a defective part. Upon information and belief, Subaru service centers use Subaru replacement parts that they order directly from Subaru. Therefore, Subaru would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement windshields. The ongoing high sales of replacement windshields was known to Subaru, and would have alerted Subaru that its windshields were defective and posed a safety risk early on.

44. Subaru also knew about the Windshield Defect because numerous consumer complaints regarding windshield failure were made directly to Subaru. The large number of complaints, and the consistency of their descriptions of windshield failure alerted Subaru to this serious Defect affecting the Class Vehicles. The full universe of complaints made directly to Subaru about the Windshield Defect is information presently in the exclusive custody and control of

Subaru and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Subaru and Subaru dealerships and service centers about the repeated windshield failures their Vehicles experienced.

### The NHTSA Complaints

45.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Windshield Defect.  The below example complaints filed by consumers with the NHTSA and posted on the Internet, which on information and belief Subaru actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous.

### 2015-2016 Subaru Outback NHTSA Complaints

- NHTSA Complaint, January 30, 2015, ID No. 10680025: NOTICED AN 18 INCH CRACK IN MY 2015 SUBARU OUTBACK WINDSHIELD STARTING AT THE TOP UNDER THE HEATING ELEMENT TWO MONTHS AGO. WAS NOT HIT BY A ROCK AND NO IMPACT SPOT FOUND. HAD THE WINDSHIELD REPLACED THREE WEEKS AGO. WHILE DRIVING YESTERDAY, HEARD A CRACKING SOUND AND NOTICED A 12 INCH CRACK APPEAR IN THE LOWER LEFT (AGAIN, STARTING WHERE THE HEATING ELEMENT IS AND AGAIN, NO ROCK SOUND OR IMPACT SPOT). MY SISTER HAS THE EXACT SAME CAR WITH A CRACK IN THE *EXACT* SAME SPOT THAT DEVELOPED LAST WEEK OUT OF THE BLUE (I HAVE PHOTOS OF BOTH OF OUR CRACKS FOR COMPARISON). FROM DOING RESEARCH, IT SEEMS THIS IS A COMMON PROBLEM WITH SUBARU WINDSHIELDS (WWW.SUBARUOUTBACK.ORG HAS SEVERAL FORUM THREADS DETAILING SIMILAR REPORTS). *TR

- NHTSA Complaint, February 9, 2015, ID No. 10682194: WINDSHIELD DEVELOPED A CRACK WITH NO

NOTICEABLE IMPACT FROM DEBRIS. FIRST INCIDENT DECEMBER 1, 2014, WINDSHIELD REPLACED WITH IDENTICAL MODEL BY CARLEX (MINUS THE SUBARU OEM STICKER). THE REPLACEMENT WINDSHIELD HAS EXHIBITED THE SAME SYMPTOMS (DEVELOPED A CRACK WITH NO NOTICEABLE IMPACT) ON JANUARY 15, 2015. THIS SEEMS LIKE A SAFETY ISSUE FOR STRUCTURAL AND VISIBILITY REASONS. BOTH CRACKS BEGAN IN THE WINDSHIELD WIPER HEATER AREA. *TR

- NHTSA Complaint, February 16, 2015, ID No. 10683733: AFTER OWNING CAR ROUGHLY 1.5 MONTHS, FRONT WINDSHIELD DEVELOPED A ROUGHLY 15 - 20 INCH CRACK STARTING FROM TOP LEFT SIDE STARTING FROM THE EDGE, WORKING DOWN AND ACROSS. CRACK APPEARS TO HAVE STARTED IN THE EDGE HEATING ELEMENT. POSSIBLE MINOR ROCK SCRAPE, BUT NO "PIT" OR "STAR." *TR

- NHTSA Complaint, March 14, 2015, Id No. 10846433:  TL* THE CONTACT OWNS A 2015 SUBARU OUTBACK. THE CONTACT STATED THAT WHILE DRIVING AT 65 MPH, THE CONTACT HEARD AN ABNORMAL NOISE COMING FROM THE WINDSHIELD AS IT BEGAN TO FRACTURE. THE VEHICLE WAS TAKEN TO A DEALER WHO DIAGNOSED THAT THE WINDSHIELD NEEDED TO BE REPLACED. THE VEHICLE WAS THEN TAKEN TO AN INDEPENDENT MECHANIC WHO REPLACED THE WINDSHIELD. HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 23,750.CHASSIS THAT IS CAUSING THE GLASS TO STRESS CRACK.

- NHTSA Complaint, April 2, 2015, ID No. 10703360:  WAS STOPPED AT A RED LIGHT THIS MORNING AND MY WINDSHIELD SPONTANEOUSLY DEVELOPED AN 8 INCH CRACK. NO ROCK OR IMPACT. THIS IS THE

THIRD WINDSHIELD I WILL HAVE TO HAVE REPLACED
ON THIS CAR IN FOUR MONTHS. *TR

- NHTSA Complaint, April 7, 2015, ID No. 1004311:  WHILE
  DRIVING ON THE ACCESS ROAD AT AROUND 38MPH.
  A ROCK HIT THE WINDSHIELD AND CAUSED A 8INCH
  CRACK AT THE LOWER PART OF DRIVERS SIDE AND
  GOES UP INTO DRIVERS VISIBILITY. I HAVE HAVE
  OWNED A SUBARU IN THE PAST AND HAVE HAD
  SEVERAL WINDSHIELD INCIDENTS AND NEVER SEEN
  THIS HAPPEN OR SEVERE. I FEAR THAT THEIR IS A
  DEFECT IN THE WINDSHIELD AND SPOKE WITH
  SUBARU AND THEY ARE UNWILLING TO REPAIR IT OR
  TAKE ACTION TO THE SAFETY OF MY VEHICLE. *TR

- NHTSA Complaint, April 9, 2015:  PURCHASED CAR NEW
  FROM DEALER. CAR HAD BEEN SITTING IN
  DRIVEWAY FOR 4-5 DAYS. I WENT OUTSIDE AND
  NOTICED A LONG HORIZONTAL CRACK IN THE
  WINDSHIELD RUNNING FROM HALF WAY UP DRIVERS
  SIDE TO THE MIDDLE OF THE GLASS. I DID NOT SEE
  OR HEAR ANYTHING HIT THE WINDSHIELD AT ANY
  TIME WHILE I HAD BEEN DRIVING, AND I CAN SEE NO
  CHIPS, PITS OR SCRATCHES IN THE WINDSHIELD.
  THERE ARE NUMEROUS REPORTS OF THESE
  "SPONTANEOUS" WINDSHIELD CRACKS FROM NEW
  OUTBACK OWNERS ON THE SUBARU OWNERS
  WEBSITE, SO I KNOW THIS IS NOT SOME RANDOM
  UNLUCKY EVENT. SOME OWNERS HAVE REPORTED 2-
  3 WINDSHIELD REPLACEMENTS CRACKING. SUBARU
  DEALERS REFUSE TO TAKE BLAME. THIS IS A SAFETY
  ISSUE THAT NEEDS TO BE ADDRESSED BY SUBARU!!
  *TR.

- NHTSA Complaint, April 13, 2015, ID No. 10705316:
  WINDSHIELD ON EYESIGHT EQUIPPED 2015 OUTBACK
  DEVELOPED A LARGE CRACK STARTING IN THE
  WIPER HEATING AREA JUST UNDER THE PASSENGER
  SIDE WIPER. THE CRACK APPEARED SPONTANEOUS

AS IT APPEARED WHILE THE CAR WAS PARKED AND WAS AT LEAST EIGHT INCHES LONG. BY THE NEXT MORNING WITH THE CAR REMAINING PARKED AND ONLY A FEW DEGREE TEMPERATURE CHANGE OVERNIGHT IT WAS AT LEAST 14 INCHES LONG. THE ONLY MARK ON THE GLASS I CAN FIND ALONG THE CRACK IS A MINUSCULE DOT THAT IS ABSOLUTELY NO LARGER THAN A GRAIN OF SAND IN THE WIPER HEATING AREA. IT IS A BARELY VISIBLE AND IS NOT EVEN AS DEEP AS A GRAIN OF SAND. IT WOULD BE INVISIBLE EXCEPT IN THE BRIGHTEST LIGHT AND IT SEEMS IMPOSSIBLE THAT IT COULD OR SHOULD BE RELATED TO THE CRACK. I HAVE DONE A QUICK SEARCH ONLINE AND AM FINDING AN INORDINATE NUMBER OF COMPLAINTS OF SPONTANEOUS CRACKING, OR CRACKING FROM ENTIRELY INSIGNIFICANT CHIPS ON OUTBACK WINDSHIELDS. MY OLDER OUTBACK HAS 160,000 MILES AND NUMEROUS PITS AND MARKS ON THE WINDSHIELD WITH NO CRACKING. DITTO WITH THE OLD LEGACY WAGON I OWNED BEFORE THAT. I'VE NEVER HEARD OF WINDSHIELDS CRACKING THE WAY THEY ARE ON THE NEW EYESIGHT EQUIPPED VEHICLES. I BELIEVE THERE IS A DEFECT IN MANUFACTURE THAT RESULTS IN THE WINDSHIELDS BEING UNDER ENORMOUS PRESSURE. IT IS ONLY A MATTER OF TIME BEFORE A SPONTANEOUS CRACK SHOOTS THROUGH SOMEONE'S LINE OF SIGHT AS THEY ARE DRIVING AND CAUSES AN ACCIDENT. SUBARU NEEDS TO BE ORDERED TO RECALL THESE VEHICLES AND FIND A WAY A TO PREVENT THIS. I FORESEE A CLASS ACTION SUIT PARTICULARLY IN LIGHT OF THOSE WHO HAVE REPORTED TWO OR THREE DESTROYED WINDSHIELDS IN THE FIRST MONTHS OF VEHICLE USE. *TR

- NHTSA Complaint, April 21, 2015, ID No. 10712088:  UPON ENTRY OF VEHICLE FOR THE FIRST TIME OF THE DAY, I DISCOVERED A 5-6 IN. CRACK IN WINDSHIELD. I HAD

NOT OBSERVED ANY IMPACTS WHILE DRIVING THE DAY PRIOR. THE VEHICLE WAS ONLY 2 MONTHS OLD AT THE TIME. ALL OTHER AUTO GLASS ISSUES PREVIOUSLY WERE OBSERVED AND OBVIOUS. HAVING REVIEWED SIMILAR STORIES AND PICTURES ONLINE OF ISSUES WITH THE WINDSHIELD OF THIS MODEL AND YEAR THE VEHICLE, I AM CONCERNED THAT THE ISSUE IS MORE THAN COINCIDENCE. *TR

- NHTSA Complaint, April 21, 2015, ID No. 10712080: SUBARU OUTBACK 2015 WINDSHIELDS HAVE VERY LOW QUALITY AND CRACK WITH MINIMAL CONTACT. OUR WINDSHIELDS BROKE TWICE IN ONE MONTH AFTER REPLACING THE ORIGINAL ONE WITH ANOTHER FROM SUBARU. THE TWO TIMES DRIVEN ON THE HIGHWAY AND TWO TINY ROCK HIT THE WINDSHIELD AND CREATED A 12" LONG CRACK ACROSS THE WINDSHIELD. THE COST FOR THE WINDSHIELDS IS VERY EXPENSIVE AT AROUND $700 TO PURCHASE A NEW WINDSHIELD AND TO HAVE IT INSTALLED. *TR

- NHTSA Complaint, April 27, 2015, ID No. 10713161: OUR FULLY-LOADED '15 OUTBACK WITH EYESIGHT & LANE ASSIST WAS PARKED OVERNIGHT IN THE GARAGE (AS ALWAYS). WHEN WE GOT INTO THE VEHICLE, WE NOTICED AN 12-INCH CRACK IN THE WINDSHIELD (BEGINNING IN THE LOWER CORNER ON THE PASSENGER SIDE AND HEADING UP TOWARD THE CENTER OF THE VEHICLE). THERE WAS NO ACCIDENT OR ROCK INCIDENT TO WARRANT THE CRACK - IT CAME OUT OF NOWHERE. WE CALLED OUR SUBARU SERVICE DEPARTMENT AND THEY REFERRED US TO THEIR (OUTSIDE VENDOR) WINDSHIELD REPAIR GUY. AFTER SEVERAL CALLS TO SUBARU, HE WAS TOLD THAT SUBARU HAS PULLED THESE WINDSHIELDS FROM THEIR PRODUCTION LINE BECAUSE THERE IS AN INHERENT PROBLEM WITH CRACKING DUE TO THEIR SUBSTANDARD QUALITY AND INFERIOR

AERONAUTICAL DESIGN. HE SAID THAT THE SUBARU PLANT WAS WAITING ON A SET OF WINDSHIELDS AND AN ORDER WAS PLACED FOR ME, BUT THAT I WOULD BE COMPETING WITH THE NEW CARS ROLLING OFF THE PRODUCTION LINE. THIS INFORMATION ALONE (ASSUMING IT IS ACCURATE) SHOULD WARRANT A RECALL. WE CONTACTED THE WINDSHIELD GUY AGAIN TODAY TO FOLLOW UP AND HE SAID HE JUST ORDERED ANOTHER '15 OUTBACK WINDSHIELD FOR SOMEONE THIS MORNING - - SAME PROBLEM (NO ACCIDENT OR INCIDENT). HE REITERATED HIS CONVERSATION WITH SUBARU PRODUCTION PERSONNEL ONCE AGAIN THAT "THERE IS A DESIGN PROBLEM WITH THE WINDSHIELDS AND SUBARU HAS PULLED THEM FROM THEIR PRODUCTION LINES." TWO WEEKS AGO WE PUT A POST-IT FLAG INSIDE THE WINDSHIELD AT THE END OF THE CRACK TO MARK ITS PLACE AND PROGRESS - THE CRACK HAS NOW GROWN TO 20+ INCHES STRAIGHT ACROSS THE CENTER OF THE WINDSHIELD. IT IS EASY TO FIND OTHER FOLKS WITH THIS PROBLEM - - INEXPLICABLE CRACKED WINDSHIELDS WITH NO OBVIOUS SIGNS OF CAUSE. THE CAUSE AND EFFECT OF THESE BROKEN WINDSHIELDS SHOULD BE INVESTIGATED IMMEDIATELY BEFORE SOMEONE IS SERIOUSLY HURT OR INJURED THROUGH NO FAULT OF THEIR OWN. *TR

- NHTSA Complaint, May 2, 2015, ID No. 10714157:  THIS IS A BRAND NEW SUBARU OUTLANDER WITH 850 MILES. THE WINDSHIELD GOT A SMALL CHIP, ABOUT 1MM IN SIZE NEAR THE VERY TOP. AS I WAS DRIVING ALONG THE WINDSHIELD STARTED TO CRACK FROM THE SMALL DING DOWN, APPROXIMATELY 1 FOOT IN LENGTH. THIS SHOULD NOT HAPPEN WITH NEW WINDSHIELD GLASS IN A NEW CAR. *TR.

- NHTSA Complaint, May 6, 2015, ID No. 10715062:  I JUST BOUGHT A BRAND NEW 2015 SUBARU OUTBACK ON

MARCH 18, 2015. I SEE ALREADY THAT THERE ARE
NUMEROUS COMPLAINTS ALREADY ON THE SAFETY
OF THE 2015 SUBARU OUTBACK WINDSHIELDS. I WAS
DRIVING DOWN THE FREEWAY ON MAY 2, 2015 AND A
VERY SMALL PEBBLE FLEW INTO THE WINDSHIELD
AND I COULDN'T BELIEVE THAT SMALL A PEBBLE
WOULD CRACK THE WINDSHIELD OVER 6 INCHES! I
AM VERY UPSET. I PARKED THE CAR IN A
RESTAURANT PARKING LOT THAT DAY AND WHEN I
CAME OUT, THE CRACK HAD GROWN TO 12 INCHES
BY ITSELF! MY RELATIVES WERE IN TOWN AND I
COULDN'T DRIVE MY NEW VEHICLE ON A SHORT TRIP
I WANTED TO TAKE THEM ON. OF COURSE THIS IS A
SPECIAL ORDER ITEM SO I AM WAITING AND
WAITING FOR IT TO BE REPLACED. CALLED SUBARU
SERVICE DEPARTMENT AND THEY CLAIM NO
KNOWLEDGE OF PROBLEMS WITH THE WINDSHIELDS
(OF COURSE). I HAVE NO VEHICLE TO DRIVE BECAUSE
I FEEL IT IS UNSAFE TO DRIVE AND HAVE BEEN
INCONVENIENCED TO HAVE TO DRIVE MY OTHER
OLDER VEHICLE. I DIDN'T WANT TO HAVE
INSURANCE ALSO PAY FOR A RENTAL/REPLACEMENT
VEHICLE AS WELL WHEN THIS IS A SUBARU PROBLEM
AND A NATIONAL SAFETY PROBLEM WITH THIS
VEHICLE THAT NEEDS TO BE ADDRESSED
IMMEDIATELY. IT IS NOW MAY 6TH AND I STILL HAVE
NO NEW WINDSHIELD AND DON'T EXPECT ONE
ANYTIME SOON. IT LOOKS LIKE THERE IS A GOOD
POSSIBILITY THAT THE WINDSHIELD WILL CRACK
AGAIN FROM ALL THE COMPLAINTS I AM READING
ON THIS WEBSITE. WHEN WILL SOMEONE RECALL
THIS WINDSHIELD? AFTER SOMEONE GETS KILLED?
PLEASE RECALL THIS WINDSHIELD! *TR

- NHTSA Complaint, May 8, 2015, ID No. 10715404:  FIRST
  TIME WASHING MY NEW 2015 SUBARU OUTBACK
  WITH BARELY 900 MILES ON IT. PARKED IT IN FRONT
  OF THE HOUSE. WALKED FROM THE GARAGE TO THE
  VEHICLE TO CHECK FOR WATER SPOTS AND NOTED A

5" CRACK IN THE WINDSHIELD WHERE THERE WASN'T ONE WHILE I WASHED IT! STARTS WHERE THE HEATING ELEMENT IS UNDER THE PASSENGER SIDE WIPER. IT'S RAPIDLY SPREAD UP AND ACROSS MY DRIVING LINE OF SIGHT. WHEN THE SUN IS UP, THE GLINTING BECOMES ALMOST BLINDING.  I TOOK IT TO THE DEALER WHERE I PURCHASED IT TO REPORT WHAT TO ME WAS AN OBVIOUS DEFECT. THEIR HEAD OF SERVICE LOOKED AT IT AND PRONOUNCED IT WAS CAUSED BY A ROCK. HE TRIED TO EXPLAIN WHERE HE SAW THIS "IMPACT". I DISAGREED. THERE IS NO IMPACT CRAZE. THEY TOLD ME TO CONTACT MY INSURANCE COMPANY. THE INSURANCE EXAMINER TOOK PICTURES AND PRONOUNCED IT DUE TO "A STRUCTURAL DEFECT". SUBSEQUENTLY, THE GLASS WAS ORDERED AND I'M SUPPOSED TO PAY FOR IT PLUS THE INSTALLATION OR THERE'LL BE A RE-STOCKING FEE. I'VE WAITED OVER A MONTH WHILE BEING TOLD THERE ARE SHORTAGES, OR IT'S TOO NEW, AND "DUE TO THE LONGSHOREMAN'S STRIKE IN LONG BEACH..." I RANG UP SUBARU OF AMERICA, WHO OPENED A CASE AND ARE HAVING ME GO BACK TO THE DEALER, HAVE THEM TAKE PICTURES, SEND THOSE AND THE REPORT FROM THE INSURANCE COMPANY TO THEM. SEEMS LIKE I'M DOING A LOT OF WORK FOR WHAT TO ME SHOULD BE COVERED AS A DEFECTIVE WINDSHIELD OR A STRUCTURAL PROBLEM WITH THIS MODEL. THERE ARE 7 COMPLAINTS, FILED ON THIS WEB-SITE FROM SUBARU OWNERS, THIS MODEL, SAME YEAR, WITH THE IDENTICAL PASSENGER SIDE CRACK. THERE ARE NUMEROUS OTHER RECORDS OF THESE INCIDENTS RECORDED AT SAFERCAR.GOV, AND SUBARUOUTBACK.ORG      I'M FRUSTRATED AND DISAPPOINTED BEYOND WORDS AS THIS IS A NEW CAR. *TR

- NHTSA Complaint, May 11, 2015, ID No. 10715794:  I PURCHASED MY 2015 SUBARU OUTBACK IN

NOVEMBER 2014 AND THE FIRST WINDSHIELD CRACK
OCCURRED BEGINNING OF MARCH 2015. THE CRACK
HAPPENED OVERNIGHT AND IT WAS THE DAY AFTER
A MAJOR SNOW STORM. THE CRACK INITIATED FROM
THE PASSENGER SIDE AND UP TO THE CENTER OF
WINDSHIELD. THERE WAS NO SIGN OF CHIPS/CRACKS
DUE TO FOREIGN OBJECTS WHICH SEEM LIKE A
DEFECTIVE PART/DESIGN TO ME. THE CRACK
PROPAGATED REALLY QUICKLY. I CONTACTED
DEALERSHIP AND THEY SAID ITS NOT COVERED
UNDER WARRANTY AND REFUSED TO LOOK AT THE
CRACK. THE DEALERSHIP ALSO TOLD ME STRAIGHT
UP TO GO THROUGH INSURANCE AND DEAL WITH IT
MYSELF. I WENT THROUGH INSURANCE AND
REPLACED THE WINDSHIELD WITH A GENUINE
SUBARU PART BY THE END OF MARCH. JUST WHEN I
THOUGH IT IS OVER, A CRACK JUST APPEARED ON MY
WINDSHIELD ON MAY 10, 2015. THE CRACK SEEM TO
HAVE INITIATED FROM THE WINDSHIELD HEATING
COMPARTMENT AGAIN. DURING THE MORNING OF
MAY 11, 2015, I LOOKED AT THE CRACK AGAIN AND IT
DIDN'T GROW OVERNIGHT. HOWEVER, WHEN I
CHECKED ON IT WHILE IT WAS PARKED AT WORK
DURING NOON TIME, THE CRACK GREW ABOUT 2
INCHES. THIS IS UNACCEPTABLE FOR A BRAND NEW
CAR TO HAVE TO GO THROUGH 2 CRACKED
WINDSHIELDS. A GOOD WINDSHIELD SHOULD BE
ABLE TO WITHSTAND TEMPERATURE CHANGE AND
MINOR IMPACTS FROM FOREIGN OBJECTS AND THE
2015 SUBARU OUTBACK IS DEFINITELY NOT MEETING
THAT REQUIREMENT. IN ADDITION, THE DEALERSHIP
IS NOT BEING HELPFUL WITH THE SITUATION AND
NOT TAKING ANY RESPONSIBILITIES IN
INVESTIGATING WHETHER THIS CAN BE A VEHICLE
DEFECT OR NOT. I AM NOT GOING TO REPLACE MY
WINDSHIELD OUT OF MY OWN EXPENSE AND I
DEMAND FOR AN ANSWER/EXPLANATION FROM
SUBARU.

CLASS-ACTION COMPLAINT

- NHTSA Complaint, May 11, 2015 ID No. 10715748:
  WINDSHIELD HIT BY PEBBLE ON FREEWAY, SMALL
  CHIP NOTED ON PARKING VEHICLE FOR THE NIGHT IN
  GARAGE. NEXT MORNING APPROXIMATE 9"VERTICAL
  CRACK ON WINDSHIELD WHILE DRIVING TO WORK,
  BY THE TIME I HAD DRIVEN VEHICLE 12 MILES
  CRACK GREW TO APPROXIMATELY 27 INCHES
  HORIZONTALLY ACROSS WINDSHIELD. AFTER TWO
  WEEKS OF DRIVING THERE ARE NOW COMPETING
  DUAL CRACKS EACH MEASURING IN EXCESS OF 30
  INCHES HORIZONTALLY ACROSS THE WINDSHIELD.
  WITH OVER 45 YEARS OF SAFE DRIVING UNDER MY
  BELT I HAVE NEVER SEEN A WINDSHIELD PERFORM
  IN THIS MANNER. THIS MUST BE A SAFETY ISSUE, I
  HAVE A DIFFICULT TIME BELIEVING THIS IS NOT A
  ISSUE WITH EITHER THE STRUCTURAL INTEGRITY OF
  THE VEHICLE AND OR THE WINDSHIELD. WHAT IS
  THE NHTSA DOING TO INVESTIGATE THIS ISSUE AND
  INSURE OR SAFETY?  I HAVE THE OLD WINDSHIELD
  IF THIS WILL HELP TO DETERMINE THE ISSUE.

- NHTSA Complaint, May 13, 2015, ID No. 10864799:  TL*
  THE CONTACT OWNS A 2016 SUBARU OUTBACK. THE
  CONTACT NOTICED TWO LARGE CRACKS IN THE
  WINDSHIELD. THE VEHICLE WAS DIAGNOSED AND
  REPAIRED. THE MANUFACTURER WAS NOTIFIED AND
  WOULD NOT COVER THE FAILURE. THE
  APPROXIMATE FAILURE MILEAGE WAS 6,000.

- NHTSA Complaint, May 17, 2015, Id. No. 10716961:  ON
  4/19/2015 WAS DRIVING AT 40 MILES PER HOUR IN A
  HEAVY RAIN STORM (I-75) IN GEORGIA A CRACK
  DEVELOPED IN THE WINDSHIELD. WE COULD NOT
  IDENTIFY A SOURCE OF IMPACT TO THE WINDSHIELD.
  THE CRACK STARTED AT THE VERY BOTTOM CENTER
  OF THE WINDSHIELD. THE CRACK THEN SPLIT INTO A
  "Y" SHAPE AND CONTINUED OVER THE NEXT
  SEVERAL DAYS. WE TRIED TO GET A NEW
  WINDSHIELD IN SARASOTA, FL OUR FIRST

DESTINATION. LOCAL AUTO GLASS COMPANY
RECOMMENDED BY SARASOTA SUBARU DEALER
ATTEMPTED TO ORDER ONE TO REPLACE DURING
OUR WEEK IN TOWN. THEN CALLED TO ADVISE US IT
WOULD BE AT LEAST ANOTHER WEEK. WE WERE
INFORMED THERE WAS A NATIONWIDE BACK LOG OF
OVER 600 WINDSHIELDS FOR THE 2015 SUBARU
OUTBACK. ON 4/27/2015 CONTACTED THE SUBARU
DEALER IN SILVER SPRING, MD. FOR POSSIBLE
REPLACEMENT DURING OUR SECOND STOP OF TRIP.
WE WERE AGAIN ADVISED OF A BACK LOG ON THAT
WINDSHIELD. THEY SUGGESTED TO CONTACT THE
DEALER NEAR MY HOME. ON 4/27/15 CONTACTED
INTERNATIONAL SUBARU OF TINLEY PARK, IL AND
ALL STAR GLASS AS RECOMMENDED BY DEALER.
WINDSHIELD ORDERED 4/27/2015 AND WAS ADVISED
AGAIN OF A NATIONWIDE BACK ORDER OF 2015
SUBARU OUTBACK WINDSHIELDS BY GLASS
COMPANY AND MY DEALER. AS OF 5/14/15, NO
WINDSHIELD AVAILABLE, CHECK BACK IN ANOTHER
WEEK. SUBARU DEALER AT HOME THINKS IT WAS
CAUSED BY A SMALL STONE. INDEPENDENT
MECHANICS THINK THERE IS A PRESSURE POINT ON
THE VEHICLE THAT AFFECTED THE WINDSHIELD. IF
THERE IS NOT A CONTRIBUTING VEHICLE PROBLEM
WITH THE WINDSHIELD THEN WHY THE VERY LONG
BACK LOG FOR A NEW VEHICLE WINDSHIELD?
REALLY THAT MANY 2015 SUBARU OUTBACKS WITH
WINDSHIELD PROBLEMS? AND, 3 DIFFERENT
DEALERS IN 3 DIFFERENT PARTS OF THE COUNTRY
ARE HAVING DIFFICULTY GETTING THE PART. WHEN
THE WINDSHIELD IS FINALLY REPLACED, WILL HAVE
THAT AREA CAREFULLY INSPECTED FOR POSSIBLE
CONTRIBUTING FACTORS.

- NHTSA Complaint, May 18, 2015, ID No. 10717178:
  SUBARU OUTBACK IS TWO MONTHS OLD AND
  DEVELOPED A CRACK IN THE WINDSHIELD, WHILE
  THE VEHICLE WAS PARKED. CRACK STARTED AT THE

BOTTOM/CENTER OF THE WINDSHIELD AND WAS
ROUGHLY EIGHT INCHES STRAIGHT UP. SUBARU
ACCEPTS ZERO RESPONSIBILITY, SO I HAVE TO PAY
FOR A NEW WINDSHIELD. I HAVE BEEN WAITING TWO
WEEKS WITH NO WINDSHIELDS AVAILABLE. CRACK
HAS GROWN TO ROUGHLY THIRTY INCHES AND A ZIG
ZAG PATTERN NOW.

- NHTSA Complaint, May 21, 2015, ID No. 10717895:  WE
  BOUGHT THE SUBARU IN ANCHORAGE AND STARTED
  HEADING TOWARD OUR HOME IN FAIRBANKS.
  APPROXIMATELY 100 MILES INTO THE JOURNEY WE
  STOPPED TO REST AND EAT. WHILE SITTING IN THE
  CAR TALKING, THERE WAS A POP SOUND AND A
  LARGE 9-10" CRACK APPEARED BEHIND THE MIRROR
  AND BINOCULAR CAMERAS DESCENDED INTO THE
  PASSENGER'S VIEW. I INSPECTED THE OUTSIDE
  WINDOW FOR EVIDENCE OF IMPACT FROM A ROCK
  OR DEBRIS, SUCH AS CHIPPING, BUT THERE WAS
  NONE. I TRIED TO GET A REPLACEMENT WINDOW
  AFTER SUBARU BLEW ME OFF, BUT WAS UNABLE TO
  DUE TO AN APPARENT LARGE DEMAND FOR
  REPLACEMENT GLASS FOR THIS MODEL. SINCE THEN
  CRACKS HAVE APPEARED SPONTANEOUSLY FROM
  THE BOTTOM OF THE WINDSHIELD WORKING THERE
  WAY UP. MY SON HAS A BRAND NEW 2015 SUBARU
  FORESTER, WHICH DID THE EXACT SAME THING ON
  THE WAY HOME FROM ANCHORAGE. AGAIN SUBARU
  DEALER DENIED THEY HAVE SEEN ANY PROBLEM
  WITH THE WINDSHIELD, BUT READ THE COMPLAINTS
  LOGGED WITH NHTSA AND ONE CAN ONLY COME TO
  A DIFFERENT CONCLUSION. PERHAPS SUBARU IS
  MAKING THEIR GLASS TOO THIN TO REDUCE WEIGHT
  OR THERE IS SOME SORT OF FLEXING OF THE
  WINDOW MIDPOINT ON THE GLASS BUT THIS IS A
  PROBLEM.

- NHTSA Complaint, May 28, 2015, ID No. 10721934:  2015
  SUBARU OUTBACK WITH EYESIGHT TECHNOLOGY.

HAD VEHICLE LESS THAN 2 MONTHS, SITTING IN
DRIVEWAY, NEXT AM NOTED LARGE CRACK IN
WINDSHIELD BEGINNING IN PASSENGER LOWER
CORNER AND TRAVELING DIAGONALLY UP
TOWARDS CENTER OF WINDSHIELD. NO TRAUMA
NOTED TO WINDSHIELD WHILE DRIVING (NO ROCKS,
ETC). SEEMED TO HAVE BROKEN SPONTANEOUSLY.
MADE INSURANCE CLAIM 4/12/15. UNABLE TO GET
NEW WINDSHIELD AS SUCH A LARGE BACKORDER OF
THESE WINDSHIELDS FOR SAME REASON AND IN
SAME LOCATION. STILL WAITING WITH NO END IN
SIGHT. ON-LINE THREADS INDICATE THIS IS AN
ONGOING ISSUE THAT HAS YET TO GENERATE A
RECALL.

- NHTSA Complaint, May 29, 2015, ID No. 10722222:  WHILE
CAR WASH PARKED IN DRIVEWAY BEING WASHED I
NOTICED A CRACK IN THE PASSENGER SIDE FRONT
WINDSHIELD .THE CRACK IS COMING FROM THE
LOWER WINDSHIELD HEATER THEN GOES UP
TOWARDS THE MIDDLE OF WINDSHIELD.STILL USING
CAR AND THE CRACK IS PAST THE REAR VIEW
MIRROR.TOLD BY DEALER SUBARU DOESN'T COVER
GLASS BREAKAGE ADVISED HIM I WAS FOLLOWING
UP WITH SUBARU TO PLEASE TAKE INFO AND
PIC'S.HE SUGGESTED GOING THRU MY CAR
INSURANCE BUT THERE ARE NO ROCK CHIPS OR
CRACKS SO WHY SHOULD THEY PAY. HE ADVISED HE
WOULD SHOW TO THE REP IN A FEW WEEKS ON HIS
VISIT??. I PERSONALLY THINK A WINDSHIELD IS A
SAFETY ISSUE AND THEY SHOULD MOVE ON IT NOW.
WHILE RESEARCHING IT AND SEEING HOW THIS IS A
COMMON ISSUE WITH OTHER PEOPLE I AM
WONDERING ABOUT THE SAFETY OF THE CAR NOW.
STARTED A CASE WITH SUBARU.

- NHTSA Complaint, May 29, 2015, ID No. 10722381:
WINDSHIELD HAS FAILED TWICE WITH NO IMPACTS.
LATEST CRACK STARTED AFTER I CLOSED THE

DRIVER DOOR...HEARD A POP, THEN WATCHED A
CRACK RUN FROM THE UPPER RIGHT ACROSS THE
DRIVER'S LINE OF SIGHT OVER THE COURSE OF A FEW
SECONDS. THERE WAS NO IMPACT TO THE GLASS,
WHICH HAD BEEN REPLACED LESS THAN 10 DAYS
EARLIER, WHICH ALSO FAILED MYSTERIOUSLY.

- NHTSA Complaint, June 1, 2015, ID No. 10722704:  BRAND
  NEW VEHICLE, PARKED ON THE STREET FOR
  APPROXIMATELY ONE HOUR. WHEN RETURNING TO
  THE CAR, A CRACK IN THE WINDSHIELD, BEGINNING
  AT THE LOWER CENTER AND EXTENDING TO THE
  MIDDLE OF THE WINDSHIELD APPROXIMATELY 6
  INCHES WAS EVIDENT. NO DEBRIS ON WINDSHIELD
  AND NO EVIDENCE OF IT BEING HIT WITH ANYTHING.
  CRACK HAS NOW EXTENDED FURTHER UP AND
  AROUND (SHAPE OF A LARGE QUESTION MARK) OF
  ABOUT 2 FT IN LENGTH. CONTACTED LOCAL
  DEALERS AND GLASS COMPANIES FOR REPAIR BUT
  NO ONE HAS ANY IN STOCK DUE TO A VERY LARGE
  NUMBER OF THESE ISSUES. AND THE PROJECTED
  DATE FOR WHEN REPLACEMENT GLASS WILL BE
  AVAILABLE IS NOW JULY 1 2015, MORE THAN 10
  WEEKS SINCE THE DEFECT APPEARED. GIVEN WHAT'S
  BEEN HAPPENING, I FULLY EXPECT THIS CRACK TO
  CONTINUE TO GROW AND BEGIN TO HAMPER
  VISIBILITY. WEB SEARCHES HAVE YIELDED MANY
  SIMILAR REPORTS OF THIS HAPPENING. *TR

- NHTSA Complaint, June 6, 2015, ID No. 10723786:  WE
  WERE EXTREMELY HAPPY TO PURCHASE OUR FIRST
  SUBARU OUTBACK WITH THE NEW EYESIGHT
  TECHNOLOGY IN MID-MARCH. THE CAR WAS ALMOST
  2 MONTHS OLD AND I HEARD SOMETHING HIT THE
  WINDSHIELD WHILE ON A HIGHWAY THAT I HAVE
  BEEN DRIVING ON FOR THE PAST 7 YEARS. I DID NOT
  NOTICE ANYTHING IMMEDIATELY. NINE HOURS
  LATER, I PICKED UP A PASSENGER WHO NOTICED A
  LARGE CRACK AT THE TOP OF THE WINDSHIELD (THE

REARVIEW MIRROR WAS OBSTRUCTING MY VIEW OF
THE CRACK) WHICH WAS ABOUT A FOOT LONG. OVER
THE COURSE OF THE NEXT FEW DAYS, THE CRACK
GOT LARGER AND EXTENDED INTO MY LINE OF
SIGHT. AFTER SPEAKING TO THE INSURANCE
COMPANY, THE WINDSHIELD WOULD BE COVERED,
BUT IT WAS ON NATIONAL BACKORDER AND WOULD
NOT BE AVAILABLE FOR 2-4 WEEKS. THE GLASS
ARRIVED TWO WEEKS LATER AND MY WINDSHIELD
WAS REPLACED. EXACTLY ONE WEEK AFTER THE
WINDSHIELD WAS FIXED, I HEARD A LITTLE POP ON
THE WINDOW WHILE DRIVING ON THE HIGHWAY. I
LOOKED AROUND AND NOTICED I GOT ANOTHER
CRACK ON THE WINDSHIELD. THIS TIME ON THE
LOWER PART OF THE WINDSHIELD BETWEEN THE
WIPER BLADES. THE CRACK STARTED OUT AROUND
3" LONG. A DAY LATER, THE CRACK GREW AN
ADDITIONAL 5". I STARTED TO THINK THIS CAN'T BE
NORMAL FOR A WINDSHIELD TO CRACK SO EASILY,
AND AFTER READING ALL THE POSTS ON THIS SITE
AND OTHERS, IT SEEMS THAT THIS IS A COMMON
ISSUE FOR THE 2015 OUTBACKS.

- NHTSA Complaint, June 7, 2015, ID No. 10723808:
  PURCHASED OUR 2015 OUTBACK JAN 2, 2015. WE
  WERE JUST GETTING ON THE FREEWAY LEAVING
  NEW ORLEANS WHEN WE HEARD A POP. WE ARE NOT
  SURE IF A STONE HIT IT OR NOT, BUT A STARBURST
  SMALLER THAN A DIME ALONG WITH ABOUT 6 INCH
  CRACK HAD OCCURRED ON THE LOWER PASSENGER
  AREA. THE CAR HAD BEEN PARKED IN THE SUN SO IT
  WAS REALLY HOT. NOW TWO DAYS LATER IT IS
  ABOUT 24 INCHES LONG AND IS ZAGGING ACROSS
  THE ENTIRE WINDSHIELD. WHEN WE CALLED OUR
  INSURANCE COMPANY WE WERE TOLD THAT THEIR
  VENDOR COULD NOT GET TO US FOR SEVERAL
  WEEKS. THEY REFERRED US TO A DIFFERENT
  VENDOR BUT THE WINDSHIELD IS NOT AVAILABLE
  FOR 3 WEEKS. THIS APPEARS TO BE A COMMON

OCCURRENCE SO ADD ME TO THE LIST OF
COMPLAINANTS.

- NHTSA Complaint, June 8, 2015, Id No. 10724108:  WAS
WASHING THE WINDSHIELD, SO I RAISED THE WIPER
ARMS LIKE MOST PEOPLE DO WHEN THEY WANT TO
CLEAN THE ENTIRE WINDSHIELD. A SLIGHT BREEZE
BLEW AND KNOCKED THE PASSENGER-SIDE WIPER
DOWN ONTO THE GLASS CRACKING THE WINDSHIELD
ON IMPACT. THE IMPACT CRACK THEN SPLIT UP AND
TOWARD THE DRIVER'S-SIDE ABOUT 2 FEET IN
LENGTH. I HAVE HAD NUMEROUS CARS OVER MY
LIFETIME, AND A FALLING WIPER ARM HAS NEVER
CRACKED MY WINDSHIELDS. UPON FURTHER
RESEARCH ON THE WEB, I DISCOVERED SCORES OF
STORIES OF FOLKS GOING ON THEIR THIRD OR
FOURTH WINDSHIELD (ON A 2015 MODEL!!). I HAVE
TO DRIVE AROUND IN AN UNSAFE MANNER BECAUSE
SAFELITE CANNOT GET THE ORIGINAL PART FROM
THE DEALER DUE TO THEM BEING BACKLOGGED.
THE WINDSHIELDS ARE BACKLOGGED BECAUSE
THEY KEEP CRACKING ON EVERYONE. NOW I'M
SHORT $500 ON MY DEDUCTIBLE, AND I CAN JUST
IMAGINE LIKE MOST OTHERS, I WILL BE SHORT $500
AGAIN IN THE NEAR FUTURE BECAUSE OF A FAULTY
DESIGN. THE WINDSHIELD IS NOT SAFE ON THE ROAD
FOR IMPACTS (ONE GUY SHUT HIS DOOR AND THE
WINDSHIELD CRACKED...CRAZY!). PLEASE, GET
THESE WINDSHIELDS OFF THE ROAD AND MAKE
SUBARU DESIGN ANOTHER WINDSHIELD AND PAY TO
REPLACE THEM ALL! THANK YOU!

- NHTSA Complaint, June 9, 2015, ID No. 10724452:  WAS
DRIVING AND A SMALL ROCK HIT THE WINDSHIELD. I
DIDN'T THINK ANY THING OF IT AT THE TIME. I
PARKED CAR IN THE DRIVEWAY. WHEN I CAME OUT
A COUPLE OF HOURS LATER THERE WAS A HUGE
CRACK.

- NHTSA Complaint, June 15, 2015, ID No. 10725382: WHILE
  WASHING MY CAR, THE PASSENGER SIDE WIPER
  BLADE WAS EXTENDED AND RETRACTED INTO THE
  WINDSHIELD. I FINISHED BY DRYING THE CAR,
  INCLUDING THE WINDSHIELD, WITH A CHAMOIS
  CLOTH. NO DAMAGE WAS NOTICEABLE AT THAT
  TIME. AFTER DRIVING TO THE GROCERY STORE AND
  BACK HOME, NEVER GOING OVER 40 MPH, I LOOKED
  OVER AND NOTICED AN 18 INCH CRACK HAD
  DEVELOPED ON THE PASSENGER SIDE OF THE
  WINDSHIELD. CLOSE INSPECTION REVEALS A
  POSSIBLE VERY SMALL IMPACT MARK DIRECTLY
  UNDER ONE OF THE METAL BLADE RETENTION
  PIECES ON THE WIPER BLADE FRAME. THERE WERE
  NO ROCKS THAT HIT THE WINDSHIELD BETWEEN THE
  CAR WASH, THE GROCERY STORE, AND HOME. I WAS
  TOLD BY THE DEALERSHIP THAT I WOULD NEED TO
  PAY TO REPLACE IT, AND THAT I COULD JUST GET
  SAFELITE TO DO IT. SAFELITE ORDERED THE GLASS
  FOR ME AND CONFIRMED WHAT THE DEALERSHIP
  HAD SAID, THAT I WOULD HAVE TO WAIT
  INDEFINITELY FOR THE GLASS, AS IT IS ON BACK
  ORDER. THIS NO DOUBT IS DUE TO THE HIGH
  NUMBER OF FAILURES AS SEEN ON THIS WEBSITE
  AND ELSEWHERE ON THE INTERNET. THE LOCAL
  SAFELITE REPAIR SHOP EVEN HAD 5 SUBARU
  VEHICLES WITH REPLACEMENT GLASS ON ORDER.
  MY RESEARCH HAS UNCOVERED NUMEROUS
  CUSTOMERS WHO HAVE HAD TO REPLACE THE
  GLASS ON THESE 2015 VEHICLES MULTIPLE TIMES. IN
  MY 37 YEARS OF DRIVING, I HAVE HAD WINDSHIELD
  WIPER BLADES RETRACT AGAINST THE WINDSHIELD
  UNTOLD NUMBERS OF TIMES, AND THIS IS THE FIRST
  TIME IT HAS EVER CAUSED A FAILURE.

  I THINK SUBARU NEEDS TO INVESTIGATE THIS ISSUE,
  FIND OUT WHY IT IS OCCURRING, AND REIMBURSE
  THOSE CUSTOMERS WHO HAVE BEEN IMPACTED.
  THIS IS MY FIRST SUBARU. OTHER THAN THIS ISSUE, I

LIKE THEIR PRODUCT VERY MUCH. MY CONTINUED
ALLEGIANCE TO THEM WILL DEPEND ON HOW THEY
HANDLE THIS ISSUE.

- NHTSA Complaint, June 15, 2015, ID No. 10725438:  WE
  SENT A SIMILAR EMAIL TO SUBARU OF AMERICA
  JUNE 5. THEY HAVE BEEN RESPONSIVE...BUT WE
  STILL HAVE A CRACKED WINDSHIELD AND IT
  REMAINS A DRIVING DISTRACTION....WE PURCHASED
  OUR 2015 OUTBACK IN JANUARY FROM SUBARU OF
  LAS VEGAS. IN APRIL A WINDSHIELD CRACK
  APPEARED -WE DIDN'T SEE THE ROCK, SAW NO CHIP
  TO CAUSE IT BUT THE DEALER SAID HE COULD FEEL
  ONE, SO SORRY, NO WARRANTY, SO WE CLAIMED IT
  ON THE INSURANCE -REPLACED A FEW WEEKS AGO
  FOR THE $500 DEDUCTIBLE. CHANGED TO A $100
  DEDUCTIBLE THE FIRST OF JUNE AND TWO DAYS
  LATER ANOTHER CRACK-INSTANT AND BIGGER. SAW
  THE ROCK THIS TIME. CLAIMED ON THE INSURANCE,
  AGAIN, BUT SAFELIGHT HAD TO CANCEL THE
  APPOINTMENT DUE TO A SHORTAGE OF SUBARU
  WINDSHIELDS -THE AFTERMARKET ONES ARE OUT,
  AND DEALER IS APPARENTLY HAVING TO RATION
  OUT THE OEMS!!! SO WE GET TO DRIVE WITH A
  GLARING, HAZARDOUS CRACK...I CHECKED ON THE
  INTERNET AND FOUND PAGES OF NEW SUBARU
  WINDSHIELD CRACK PROBLEMS SIMILAR TO OURS -
  SOME SEEMED TO INDICATE SOA HAD COVERED
  REPLACEMENT UNDER WARRANTY WHICH SHOULD
  HAVE HAPPENED THE FIRST TIME AS THERE TRULY
  WAS NO CHIP TO START THE CRACK. SUBARU NEEDS
  TO DO SOMETHING ABOUT THIS -MAYBE THICKER
  GLASS? MAYBE A RECALL? WE'VE DRIVEN SUBARU'S
  FOR MANY YEARS AND HAVE NOT HAD THIS TYPE OF
  PROBLEM. PLEASE ADVISE AS TO REPAIRS,
  REIMBURSEMENTS, ETC., AND WHAT YOU ARE DOING
  TO FIX THE PROBLEM FOR THE FUTURE -WE CANNOT
  BE REPLACING THE WINDSHIELD EVERY FEW
  MONTHS! NOW IT IS GOING ON THREE WEEKS AND NO

WINDSHIELD, WHILE THE CRACK KEEPS GETTING
BIGGER    THANKS

- NHTSA Complaint, June 15, 2015, ID No. 10725338:
VEHICLE WAS PARKED OUTSIDE OVERNIGHT. IN THE
MORNING A 12" S SHAPED CRACK HAD APPEARED IN
THE PASSENGER SIDE OF THE WINDSHIELD. THERE
WAS NO DETECTABLE PRIOR DAMAGE AND NO
KNOWN IMPACT TO CAUSE THE CRACK. THE CRACK
HAS CONTINUED TO GROW AND BRANCH. DEALER
STATES THE WINDSHIELD FAILS THE "PEN TEST," I.E.
THERE IS A TINY NICK AT ONE POINT OF THE CRACK
WHICH, THEY SAY, PROVES THE CRACK IS DUE TO
IMPACT DAMAGE. I BELIEVE THE CHIP APPEARED
AFTER THE CRACK FORMED, BUT CANNOT PROVE
THIS (NOR CAN THE DEALER PROVE THE OPPOSITE).
ONLINE RESEARCH SUGGESTS THERE IS A DESIGN
DEFECT IN 2015 SUBARU OUTBACK WINDSHIELDS,
WHICH FAIL AT REMARKABLE RATE.

- NHTSA Complaint, June 23, 2015, ID No. 10736145:  A
SMALL PEBBLE HIT THE WINDSHIELD ON 7/17/15
SHOWING A TINY CHIP AND 2-3 MM CRACK. WE HAD
THE CHIP REPAIRED BY SAFELIGHT EARLY MORNING
OF 7/18/15 AND IT LOOKED GOOD. THE NEXT DAY,
7/19/15, THERE WERE 2 CRACKS OVER 6 INCHES LONG
AND THE WINDOW WILL HAVE TO BE REPLACED.
WOULD HAVE CHALKED IT UP TO JUST BAD LUCK TO
HAVE THE REPAIR FAIL UNTIL I CAME ACROSS
REPORTS OF SIMILAR INCIDENTS ON THE INTERNET
AND THEN CAME ACROSS THIS SITE.

- NHTSA Complaint, July 2, 2015, ID No. 10731697:  WE HAD
THE SAME EXPERIENCE WITH OUR WINDSHIELD
THAT OTHERS HAVE HAD -- SEE, EG, COMPLAINT #
10730819. ABOUT TWO WEEKS AFTER BUYING A NEW
2015 OUTBACK, WHILE DRIVING OUT OF OUR
SOMEWHAT STEEPLY-ANGLED GARAGE, THE
WINDSHIELD CRACKED. I SAW NO EVIDENCE OF A

STONE HITTING THE WINDSHIELD AND THOUGHT THERE WAS A STRUCTURAL DEFECT. TOOK THE CAR TO OUR DEALER WHO DID A "PEN TEST" ON THE EXTERIOR OF THE WINDSHIELD. THE PEN TIP, INDEED, CAUGHT IN THE CRACK AND THE REPAIR PERSON SAID THAT INDICATED A ROCK HIT AND WE JUST HAD UNFORTUNATE LUCK. THE CRACK GREW QUICKLY, SNAKING AROUND THE WINDSHIELD, WHILE WE WAITED A FEW WEEKS FOR THE REPLACEMENT WINDSHIELD TO BECOME AVAILABLE VIA SAFELITE. BASED ON THIS AND OTHER COMMENT SITES, I'M CONCERNED ABOUT A REPEAT CRACK. ALSO, OF COURSE, WONDERING IF IT WAS REALLY JUST "BAD LUCK." OUR SUBARU DEALER'S SERVICE DEPARTMENT HAS BEEN NON-COMMUNICATIVE. I CONTACTED SUBARU CORPORATE WITH A COMPLAINT AND RECEIVED NO RESPONSE. DEEPLY DISAPPOINTED - AND WE'VE BEEN A "SUBARU FAMILY" FOR A LONG TIME.

- <u>NHTSA Complaint, July 3, 2015, ID No. 10731886:</u>  DROVE THROUGH A CONSTRUCTION ZONE ON A MILITARY BASE (30 MPH) AND PARKED AT THE BANK. NO NOISE INDICATION OF A ROCK HITTING THE WINDSHIELD. CAME OUT OF THE BANK AND THERE WAS A 6-8 INCH CRACK STARTING UNDER THE PASSENGER SIDE WIPERS, THAT EXTENDED FROM THE EDGE UP INTO THE PASSENGERS VIEW. DROVE THE CAR ANOTHER APPROXIMATELY 10 MINUTES TO GET HOME, CRACK BECAME 12-16 INCHES. PARKED THE CAR IN THE DRIVEWAY AND MARKED IT WITH A WINDOW MARKER. THE NEXT DAY THE CRACK WAS 3 INCHES LONGER....FROM SITTING IN THE DRIVEWAY?? EITHER WAY, HERE IT IS JULY AND STILL WAITING ON A NEW WINDSHIELD. CRACK EXTENDS HALFWAY UP AND INTO THE MIDDLE OF THE WINDSHIELD...AND THE CAR HAS NOT BEEN DRIVEN. IT HAS BEEN PARKED SINCE THE 19TH OF JUNE BUT THE CRACK IS STILL GETTING BIGGER.

- NHTSA Complaint, July 14, 2015, ID No. 10733972:  MY
  WIFE WAS DRIVING TO WORK AND A STONE HIT THE
  WINDSHIELD. SHE CHECKED IT WHEN SHE GOT TO
  WORK AND SAID THERE WAS A SMALL CHIP. BY THE
  TIME SHE GOT HOME THE CHIP HAD BECOME A
  CRACK AND WAS ALMOST A FOOT LONG. WE HAVE
  LIMITED OUR USE OF THE VEHICLE BUT THE CRACK
  CONTINUES TO GROW AND IS NOW OVER TWO FEET
  LONG. SAFELITE HAS SAID THAT THE WINDSHIELD IS
  ON NATIONAL BACK ORDER. I HAVE HAD STONE
  CHIPS BEFORE AND THEY WERE EASY TO REPAIR
  AND DID NOT REQUIRE REPLACEMENT. MY MAIN
  CONCERN IS THAT I NOT HAVE TO PAY FOR ANOTHER
  WINDSHIELD IF THERE IS A DESIGN FLAW.

- NHTSA Complaint, July 14, 2015, ID No. 10734048:  ON
  JULY 9, I WAS DRIVING DOWN THE INTERSTATE I
  TAKE TO WORK AND HEARD A SMALL POP, LIKE A
  PEBBLE HITTING THE WINDSHIELD. THE WINDSHIELD
  INSTANTLY CRACKED IN AN L SHAPE DOWN AROUND
  THE REARVIEW MIRROR. BY THE TIME I GOT HOME
  FROM WORK THAT NIGHT, THAT CRACK HAD
  EXTENDED TO ABOUT 18 INCHES LONG. I HAVE BEEN
  DRIVING CARS A LONG TIME, AND HAVE HAD
  NUMEROUS PEBBLE STRIKES WITHOUT ANY OF MY
  PREVIOUS WINDSHIELDS CRACKING. I FEEL THAT
  THIS IS OBVIOUSLY DUE TO SOME SORT OF DEFECT
  IN THE WINDSHIELD, AS IS EVIDENCED BY MANY
  OTHERS WHO ARE HAVING THE SAME ISSUE. I LOVE
  THE CAR OTHERWISE, BUT AM WORRIED ABOUT
  HAVING TO REPLACE THE WINDSHIELD EVERY TIME I
  TURN AROUND. SOME PEOPLE THAT HAVE POSTED
  COMPLAINTS WERE ON THEIR THIRD WINDSHIELD
  THIS YEAR ON THEIR 2015 OUTBACKS. THIS IS NOT
  ACCEPTABLE! I EMAILED SUBARU AND DID GET A
  REPLY SUGGESTING I TAKE THE CAR TO THE DEALER
  AND LET THEM INSPECT IT, AND THAT THEY WERE
  "NOT AWARE" OF ANY PROBLEMS WITH THE

WINDSHIELDS FOR THE 2015 OUTBACKS. INFORMATION ON THIS PAGE AND SEVERAL OTHERS SUGGESTS OTHERWISE. WE NEED TO SPEAK UP SO SUBARU KNOWS WHAT IS GOING ON AND IS FORCED TO ADDRESS THIS ISSUE.

- NHTSA Complaint, July 19, 2015, ID No. 10734973:  FOUND A 2 FOOT CRACK ON MY BRAND NEW SUBARU OUTBACK. AFTER WASHING MY CAR YESTERDAY, I STOOD BACK TO ADMIRE HOW GREAT THE CAR LOOKED AND THEN WENT INSIDE. WHEN I CAME BACK OUTSIDE 2 HOURS LATER, I NOTICED A 2 FOOT CRACK IN THE WINDSHIELD WITH THE STARTING POINT IMMEDIATELY UNDER THE WIPER BLADE ON THE PASSENGER SIDE. A ROCK COULD NOT HAVE POSSIBLY HIT THE CAR UNDER THE BLADE. THIS IS A BRAND NEW CAR AND I'VE TAKEN EXTRA PRECAUTIONS WITH IT. I CAN'T BELIEVE THAT THIS HAS HAPPENED.

- NHTSA Complaint, July 17, 2015, ID No. 10734875: WINDSHIELD FOUND CRACKED UNEXPECTEDLY WHEN COMING OUT FROM A STORE. 6" CRACK GREW QUICKLY OVER 2 WEEKS, SPREADING ALL OVER THE PASSENGER SIDE IN A BRANCHED FORMATION ABOUT 2X1'. YESTERDAY, ANOTHER CRACK DEVELOPED IN FRONT OF THE DRIVER'S SIDE AND IS COMPROMISING VISIBILITY WITH A GLARE FROM THE CRACK AND GROWING QUICKLY AGAIN. REPLACEMENT WINDSHIELD IS BACK-ORDERED FOR SEVERAL WEEKS. HAVE BEEN WAITING ABOUT 1 MONTH NOW, DRIVING WITH AN UNSAFE/UNSIGHTLY BRAND NEW CAR, AND I'M OUT A $500 DEDUCTIBLE. GOING TO CONTACT SUBARU AS WELL, BUT THEY NEED MORE PRESSURE TO REPLACE AND REIMBURSE THIS SEEMINGLY COMMON PROBLEM WITH THIS BRAND NEW CAR. UPDATED 10/9/15 *LN.......UPDATED 10/19/15 *BF

- NHTSA Complaint, July 22, 2015, ID No. 10743475:  FOR THE SECOND TIME, AFTER BEING PINGED BY A SMALL STONE, THE WINDSHIELD DEVELOPED A CRACK CIRCA 3000 MILES SIMILAR EXPERIENCE W/ 2014 SUBARU OUTBACK ALSO W/ LOW MILEAGE    NEVER HAD TO REPLACE WINDSHIELD IN SOME 56 YEARS OF DRIVING THREE TIMES IN 7 MONTHS SEEMS TO INDICATE SOME SORT OF SYSTEMIC OR WINDSHIELD CONFIGURATION PROBLEM?

- NHTSA Complaint, July 24, 2015, Id No. 10730137:  CAR WAS PARKED IN A PARKING LOT AWAY FROM TREES OR ANY OTHER VEGETATION. WAS GONE FROM CAR FOR APPROXIMATELY 10 MINUTES. UPON RETURN, THERE WAS A 12 INCH CRACK DESCENDING FROM UPPER RIGHT HAND CORNER OF WINDSHIELD. BY MORNING, AFTER HAVING BEEN PARKED INSIDE A LOCKED GARAGE, AND WITH LESS THAN 2 MORE MILES DRIVEN, CRACK HAD GROWN ANOTHER 12 INCHES (APPROXIMATELY.)

- NHTSA Complaint, July 24, 2015, ID No. 10743370:  THIS IS MY SUBARU OUTBACK LIMITED. WHILE MY CAR WAS PARKED IN FRONT OF MY HOME I CAME OUT AND FOUND A 6" CRACK IN MY WINDSHIELD ORIGINATING BELOW THE WIPERS. IT HAS SINCE SPREAD AN ADDITION 12"+ INCHES UPWARDS AND 4" DOWNWARD. I BELIEVE BELOW THE WIPERS IS WHERE THE HEATING ELEMENT IS LOCATED AND IN A QUICK INTERNET SEARCH, INCLUDING THIS SITE, I HAVE FOUND NUMEROUS COMPLAINTS OF CRACKS APPEARING ON PARKED CARS ALL STARTING BELOW WIPERS. NOW FOR THE REAL PROBLEM, THERE IS NO REPLACEMENT WINDSHIELDS AVAILABLE. THIS HAPPENED ON 6/24/15 AND I CONTACTED SAFELITE THAT DAY AND DUE THE HEATING ELEMENT THE PART HAS TO COME FROM SUBARU. IT IS NOW EXACTLY ONE MONTH LATER AND THERE IS NO REPLACEMENT IN SIGHT.

- NHTSA Complaint, July 24, 2015, ID No. 10743304: I WAS DRIVING ON THE HIGHWAY AND HEARD A RANDOM CRACKING SOUND. I THEN HEARD IT AGAIN COUPLE MINUTES LATER. DROVE HOME AND DIDN'T SEE ANYTHING FOR SEVERAL DAYS. THIS MORNING WHILE DRIVING HOME FROM THE GYM ON A REGULAR ROAD I HEARD THE SAME CRACKING SOUND AND THEN SAW A HUGE CRACK IN MY WINDSHIELD QUICKLY SPREADING. THE CRACK IS QUICKLY SPREADING AND IT LOOKS LIKE I WILL HAVE TO NOW REPLACE THE WINDSHIELD

- NHTSA Complaint, July 26, 2015, ID No. 10743525: WINDSHIELD CRACKED APPROXIMATELY 8". CRACK IS INSIDE GLASS (GLASS IS SMOOTH ON EXTERIOR AND INTERIOR OF CAR). NO TEMPERATURE FLUCTUATIONS AND NO IMPACTS TO VEHICLE. VEHICLE PARKED IN GARAGE WHEN CRACK OCCURRED - GLASS WAS NOT CRACKED WHEN PARKED IN SECURE GARAGE FRIDAY EVENING. WAS CRACKED WHEN I WENT TO THE CAR ON SATURDAY AFTERNOON.

- NHTSA Complaint, July 28, 2015, ID No. 10744446: NOTICED A SMALL CRACK IN THE WINDSHIELD THE MORNING OF 7/23/15, I DO NOT RECALL ANYTHING HITTING MY WINDSHIELD, BY LUNCH TIME THE CRACK HAD SPREAD HALF WAY ACROSS THE WINDSHIELD. NOW TO REPLACE THE WINDSHIELD I'M TOLD IT IS ON NATIONAL BACK ORDER AND MAY TAKE QUITE A WHILE TO GET A REPLACEMENT. SOUNDS TO ME LIKE SUBARU INSTALLED CHEEP OR DEFECTIVE GLASS WINDSHIELDS.

- NHTSA Complaint, July 30, 2015, ID No. 10745010: MY WIFE WAS DRIVING OUR OUTBACK AROUND TOWN WHEN SHE NOTICED A SMALL CRACK IN THE CENTER WINDSHIELD, JUST BELOW THE MIRROR

ATTACHMENT POINT. SHE DID NOT RECALL ANY
MAJOR STONE OR GRAVEL HITS (OTHER THAN THE
USUAL DUST/DEBRIS ON NEW ENGLAND ROADS).
LATER THAT DAY THE CRACK HAD SPREAD TO
APPROXIMATELY 6" AND THEN THREE DAYS LATER
(IN THE INTERIM, SHE WENT INTO LABOR AND HAD A
BABY), THE CRACK HAD EXPANDED TO NEARLY THE
LENGTH OF THE WINDSHIELD. WE IMMEDIATELY
CALLED BOTH THE DEALER AND OUR INSURANCE
COMPANY. AS IS STATED ELSEWHERE ON THE NTSB
COMPLAINT SITE, THE ONLY WINDSHIELDS
AVAILABLE FOR THE 2015 OUTBACK ARE FACTORY,
OEM UNITS - WHICH ARE ON BACK ORDER FROM
MOST DEALERS AND GLASS REPLACEMENT
COMPANIES.  GIVEN THE OVERALL NUMBER OF
COMPLAINTS ABOUT WINDSHIELD CRACKING (BOTH
HERE AND AVAILABLE THROUGH VARIOUS OTHER
AUTOMOTIVE SITES), I BELIEVE THAT SUBARU
SHOULD WORK TO FIX AN OBVIOUS ISSUE WITH THE
GLASS.

- NHTSA Complaint, July 30, 2015, ID No. 10744898:
  WINDSHIELD CRACK ON 2015 OUTBACK WAGON.
  THERE WAS NO CRACK WHEN THE CAR WAS PARKED
  FOR THE NIGHT AT 6:00 PM. THE NEXT MORNING,
  THERE WAS A ~12 INCH CRACK, LEFT SIDE OF THE
  WINDSHIELD. THERE WERE NO OVERHANGING TREES
  AT THE LOCATION WHERE THE CAR WAS PARKED.

- NHTSA Complaint, July 30, 2015, ID No. 10745034:  CRACK
  IN THE WINDSHIELD APPEARED OVER THE WEEKEND.
  STARTED IN THE LOWER CORNER ON THE
  PASSENGER'S SIDE AND SPREAD ABOUT 2/3 OF THE
  WAY TO DRIVER'S SIDE.

- NHTSA Complaint, August 1, 2015, ID No. 10745587:  7/28/15
  - I CAME OUT TO MY 2015 SUBARU OUTBACK AT THE
  END OF THE WORK DAY AND FOUND A "V" SHAPED
  CRACK IN MY WINDSHIELD, APPROX 9-11 INCHES IN

EACH DIRECTION, ORIGINATING BELOW THE
WINDSHIELD WIPER IN THE MIDDLE OF THE
WINDSHIELD. MY FIRST THOUGHT WAS DEFECT IN
THE GLASS SINCE THE TEMPERATURE THAT DAY
WAS APPROX. 93 DEG. 7/29/15 - I WENT TO THE
NEARBY DEALERSHIP AND UPON INSPECTION BY THE
SERVICE DEPT. WAS TOLD "A ROCK HIT THE
WINDSHIELD" WHICH CAUSED THE WINDSHIELD TO
CRACK. MY RESPONSE, "HOW COULD A ROCK HIT
UNDER THE WINDSHIELD WIPER WHERE THERE IS NO
EVIDENCE OF A ROCK HITTING IT?" THE COST TO
REPLACE THE WINDSHIELD IS OVER $700.00, NOT
COVERED BY SUBARU WARRANTY AND THE
WINDSHIELDS ARE BACKLOGGED BY 4-6 WEEKS
SINCE THERE NONE IN STOCK. I RETURNED HOME
DISCOURAGED AND IMMEDIATELY PULLED UP
NUMEROUS COMPLAINTS ABOUT THE 2015
WINDSHIELDS CRACKING. 7/30/15 - I WENT TO THE
DEALER WHERE I PURCHASED MY CAR, ARMED WITH
19 PAGES OF WINDSHIELD COMPLAINTS. THE
SERVICE DEPT REP INSPECTED THE WINDSHIELD AND
ALSO SAID "A ROCK HIT THE WINDSHIELD" BUT SAID
THIS IS COMMON OCCURRENCE, WINDSHIELDS WERE
IN SCARCE SUPPLY AND NOT COVERED BY SUBARU
WARRANTY. HOWEVER, HE WAS ABLE TO LOCATE
THE LAST WINDSHIELD THEY HAD IN STOCK AND
RESERVED IT SO I NOW HAVE A REPAIR DATE IN A
WEEK. I AM STILL GOING TO HAVE TO PAY THE
$700.00 WHETHER IT IS COVERED BY MY INSURANCE
COMPANY AS COMPREHENSIVE OR CASH OUT OF
POCKET. I QUESTIONED THE SERVICE REP ABOUT
THIS OBVIOUS DEFECT, THICKNESS OF THE GLASS
AND THE HEATING ELEMENT UNDER THE PASSENGER
SIDE WIPER AND OTHER VEHICLES HIT BY SMALL
PEBBLES WHERE "PITTING" WOULD OCCUR BUT NOT
CRACKING WHEN HIT. AS A GOOD SERVICE REP, HIS
ANSWERS WERE EVASIVE BUT EMPATHETIC, WHICH
LED ME TO BELIEVE THIS ISSUE IS BEING IGNORED
BY SUBARU. I WAS ASSURED, THOUGH, IF IN THE

FUTURE, SUBARU WERE TO HAVE A RECALL ON THE
WINDSHIELD, I WOULD BE REIMBURSED.

- NHTSA Complaint, August 3, 2015, ID No. 10745969:  NEW
WINDSHIELD SUFFERED A MINOR ROCK IMPACT ON
THE FREEWAY. THE CRACK PROPAGATED QUICKLY.
THE WINDSHIELD REQUIRES REPLACEMENT, BUT THE
SUBARU DEALERS SAY THERE IS A 3 MONTH
BACKLOG!

- NHTSA Complaint, August 7, 2015, ID No. 10746927:  WENT
TO PICK UP MY BRAND NEW 2015 OUTBACK FROM
THE DEALER AND THEY INFORMED ME THE
WINDSHIELD WAS CRACKED. THEY WILL BE
REPLACING IT, BUT THIS CRACK IS IDENTICAL TO
OTHERS DESCRIBED IN MANY COMPLAINTS. CRACK
STARTED IN THE HEATED WIPER ELEMENT ON THE
PASSENGER SIDE AND IS NOW ABOUT 12 INCHES IN
LENGTH. SUBARU DEALER SAID THEY BELIEVE IT
OCCURRED IN THEIR CAR WASH. LOOKING AT OTHER
COMPLAINTS, IT IS NOW OBVIOUS SUBARU 2015
OUTBACK WINDSHIELDS HAVE A DESIGN FLAW THAT
SHOULD BE ADDRESSED ASAP.

- NHTSA Complaint, August 5, 2015, ID No. 10746589:
SPONTANEOUS CRACK STARTED IN THE MIDDLE OF
THE WINDSHIELD RIGHT BEHIND THE REARVIEW
MIRROR. THERE WAS NO DEBRIS THAT HIT THE
WINDSHIELD. THE CRACK IS GROWING AND WE ARE
TOLD THAT WARRANTY DOES NOT HANDLE
WINDSHIELD CRACKS. WE HAVE TO PAY $250
INSURANCE DEDUCTIBLE AND THERE IS A 4-6 MONTH
DELAY ON GETTING THE NEW GLASS BECAUSE OF
BACKLOG...! THIS IS NOW A SAFETY ISSUE BECAUSE
IT INHIBITS OUR VISIBILITY AND WHO KNOWS WHAT
MAY HAPPEN IF THERE IS A CRASH OF ANY KIND!

- NHTSA Complaint, August 12, 2015, ID No. 10748301:  MY
WIFE AND I BOUGHT A NEW 2015 SUBARU OUTBACK

IN POCATELLO, IDAHO. ON OUR MAIDEN VOYAGE
HOME, 10 MILES FROM OUR HOME IN WYOMING THE
WINDSHIELD DEVELOPED A CRACK ON THE
PASSENGER SIDE. THE CRACK IMMEDIATELY SPREAD
TO OVER 18 INCHES. SEVERAL WEEKS LATER WHILE
WASHING THE CAR, THE CRACK RAN IN THE
OPPOSITE DIRECTION ANOTHER 18 INCHES. I
CONTACTED OUR GLASS SHOP AND WAS TOLD THAT
THE AFTERMARKET DOESN'T HAVE WINDSHIELDS
AVAILABLE FOR THE 2015 OUTBACK AT THIS TIME. I
CONTACTED SAFELITE AND WAS TOLD THAT THE
WINDSHIELD WOULD BE AVAILABLE IN SEVERAL
DAYS. THE NIGHT BEFORE MY WIFE WAS SCHEDULED
TO TAKE THE CAR IN FOR WINDSHIELD
REPLACEMENT, SAFELITE CALLED ME AND TOLD ME
THE WINDSHIELD WAS BACKORDERED FOR 3 MORE
WEEKS AND THE COST WOULD BE 100.00 MORE THAN
THE ORIGINAL QUOTE. I CANCELED THE ORDER AND
CONTACTED A SUBARU DEALER WHO TOLD ME THE
WINDSHIELD WAS ON NATIONAL BACK ORDER. I
CONTACTED SUBARU CUSTOMER SERVICE AND WAS
TOLD THEY WOULD EXPEDITE A NEW WINDSHIELD
FOR US AND THAT IT SHOULD BE IN ON AUGUST 1ST.
TODAY IS AUGUST 12TH, STILL NO WINDSHIELD. THE
ORIGINAL CRACK HAPPENED WITHOUT EVER
HEARING A ROCK HIT THE WINDSHIELD. SEVERAL
DAYS AGO A SMALL ROCK HIT THE DRIVER SIDE OF
THE WINDSHIELD CAUSING AN IMMEDIATE STAR
CRACK THAT SPREAD TO A 24 INCH CRACK WITHIN
MINUTES. THE CARS WINDSHIELD IS NOW
OBSTRUCTED AND UNSAFE TO DRIVE. I AM
REPORTING HERE AFTER READING ABOUT
COUNTLESS WINDSHIELD FAILURES ON 2015 SUBARU
OUTBACKS THAT SUGGEST SUBPAR GLASS OR A
DEFECT IN THE STRUCTURAL INTEGRITY OF THE

- NHTSA Complaint, August 12, 2015, ID  No. 10748058:
  WINDSHIELD CRACKED IN PARKING LOT. VERY LONG

BREAK STARTING AT BASE AND CONTINUED
HALFWAY UP THROUGH THE CENTER.

- NHTSA Complaint, August 13, 2015, ID No. 10748449:  MY
  WINDSHIELD HAS A CRACK THAT RUNS FROM THE
  LOWER PASSENGER SIDE TO THE CENTER OF THE
  WINDOW AND THEN HORIZONTALLY ACROSS TO THE
  DRIVER'S SIDE. THIS FIRST STARTED AS A SMALL
  CRACK AND GREW QUICKLY. THERE IS A TINY CHIP,
  LESS THAN A PIN HEAD IN SIZE NEAR THE BEGINNING
  OF THE CRACK. NO STAR, AND NOT THE SIZE I
  WOULD TAKE TO GET FIXED. I DIDN'T THINK MUCH
  OF IT OTHER THAN "BUMMER, A BIG CRACK IN MY
  BRAND NEW CAR'S WINDSHIELD" UNTIL I SAW
  ANOTHER OUTBACK, SAME BODY STYLE, WITH THE
  SAME CRACK. I CALLED THE DEALER TO GET IT
  REPLACED AND IT IS ON A 3 MONTH BACKORDER.
  THEN I CHECKED THIS WEBSITE AND SAW SEVERAL
  SIMILAR STORIES. PLEASE LOOK INTO THIS. IS THERE
  SOME KIND OF DEFECT IN THE WINDSHIELD,
  INSTALLATION, OR FIT?     THANKS

- NHTSA Complaint, August 14, 2015, ID No. 10748794:  I
  HEARD A POP ON THE HIGHWAY, ALTHOUGH
  NOTHING HIT MY VEHICLE. SEVERAL SMALL CRACKS
  APPEARED-ONE QUICKLY GOT LARGER. I HAD
  CALLED SUBARU A FEW MONTHS BEFORE ABOUT
  THE POP AS MY MECHANIC SAID THE WINDSHIELD
  SHOULD BE REPLACED-THERE WAS NO REACTION TO
  THIS COMPLAINT. I HAVE HAD ISSUES WITH WIND
  NOISE WITH THIS VEHICLE, AND HAD THE SMALL
  WINDOW REPLACED AS WELL. THERE IS A GENERAL
  ISSUE WITH THE WINDOW SIZING AND PLACEMENT
  OF THE WINDOWS IN THIS MODEL, AND SUBARU
  NEEDS TO ISSUE A RECALL BEFORE A SERIOUS
  ACCIDENT OCCURS.

- NHTSA Complaint, August 15, 2015, ID No. 10748906:  THE
  WINDSHIELD DEVELOPED A MYSTERIOUS CRACK

FROM THE LOWER CORNER DRIVER SIDE, AND IT PROPAGATED ACROSS IN A WEEK A TWO. WE HAVE BEEN UNABLE TO FIND A REASONABLY PRICED AFTER MARKET WINDSHIELD AND THE QUOTED COST FROM THE DEALER IS WAY TOO HIGH. WE ALSO UNDERSTAND THAT THE DEALER HAS DIFFICULTY GETTING THE NEW GLASS IN A TIMELY MANNER. I AM NOT WILLING TO SPEND SO MUCH MONEY TO REPLACE THE WINDSHIELD WHEN IT APPEARS THAT ANOTHER CRACK MAY OCCUR ON THIS DEFECTIVE PRODUCT.

- NHTSA Complaint, August 18, 2015, ID No. 10749565:  2015 OUTBACK, OWNED LESS THAN A YEAR. A SMALL PEBBLE HIT THE BOTTOM RIGHT CORNER OF WINDSHIELD WHILE DRIVING ON I-25 SOUTH OF PUEBLO, CO. THIS CREATED A DIME SIZE STARBURST PATTERN AT THE IMPACT SIGHT. MINUTES LATER A 12 INCH+ CRACK DEVELOPED. THE CRACK CONTINUED TO EXPAND TO ALMOST THE CENTER OF THE WINDSHIELD DURING THE THE DRIVE TO TX. THE TEMPERATURE WAS ABOUT 65 DEGREES SO THE WINDSHIELD WASN'T IN FREEZING CONDITIONS. THE PEBBLE IMPACT WAS NOTHING OF NOTE AND HARDLY GOT OUR ATTENTION. IN 4 DECADES OF DRIVING AND HAVEN TAKEN MANY ROCKS TO THE WINDSHIELD OF DIFFERENT MAKES OF VEHICLES I'VE NEVER SEEN THIS RESULT.

- NHTSA Complaint, August 20, 2015, ID No. 10749986:  CAR WAS SITTING IN DRIVEWAY. SOMETHING HIT BASE OF WINDSHIELD AND STARRED IT AT SPOT HIT. THE STAR SPREAD QUICKLY AS A CRACK RUNNING UP THE WINDSHIELD. THIS APPEARS TO BE A SAFETY ISSUE AS OTHER 2015 OUTBACK OWNERS ARE REPORTING MULTIPLE CRACKS IN WINDSHIELDS AS WELL.

- NHTSA Complaint, August 23, 2015, ID. No. 10758656:  A SMALL OBJECT HIT THE PASSENGER SIDE LOWER PART OF THE WINDSHIELD. AT FIRST THERE WAS A SMALL STAR SHAPE MARK THAT I THOUGHT COULD BE FIXED. HOWEVER IT SPREAD QUICKLY. I WENT TO AMERICAN AUTO GLASS AND WAS TOLD THAT HE HAD MANY OF THESE WINDSHIELD ON BACK ORDER AND THAT THEY WERE ONLY MADE BY SUBARU. I WAITED FOR ABOUT 6 WEEKS AND STILL NO WINDSHIELD . I CALLED CUSTOMER SERVICE AT SUBARU AND FINALLY I RECEIVED A WINDSHIELD ABOUT 7 WEEKS AFTER IT CRACKED. THE MANAGER AT AMERICAN AUTO GLASS TOLD ME THAT HE HAS NEVER SEEN SO MANY CRACKED WINDSHIELDS IN A NEW MODEL CAR AND FELT THAT SUBARU HAD AN ISSUE.     LAST WEEK ABOUT 2 MONTHS AFTER I HAD THE GLASS REPLACED I HAD ANOTHER CRACK AT ALMOST THE SAME PLACE AS THE FIRST CRACK. I CALLED SUBARU AND HAD IT INSPECTED BY SUBARU AND THEY SAID I NEEDED A NEW WINDSHIELD AND THAT IT WAS NOT COVERED UNDER WARRANTY. I THAN BROUGHT IT TO SAFELIGHT AUTO GLASS AND THEY WERE ABLE TO REPAIR IT.      I FEEL THAT THERE IS A SAFETY ISSUE WITH THE WINDSHIELDS IN THE 2015 SUBARU OUTBACK AND THAT SUBARU NEEDS TO COME UP WITH A FIX. I WILL ALSO FOLLOW UP WITH CUSTOMER SERVICE AT SUBARU

- NHTSA Complaint, August 24, 2015, ID No. 10758773:  HAD A SMALL STONE HIT THE WINDSHIELD AND SAW NOTHING AT THE TIME. ABOUT HALF HOUR LATER, WE SAW A CRACK IN THE LOWER PART OF THE WINDSHIELD, WHICH SPREAD QUICKLY ACROSS THE DRIVER'S SIDE. WAS TOLD BY THE GLASS REPLACEMENT COMPANY THAT THESE WINDSHIELDS WERE ON BACK ORDER AND HAD TO WAIT WEEKS FOR REPAIR. THEN ON AUGUST 22, 2015 WE HAD ANOTHER SMALL STONE HIT THE WINDSHIELD ON THE DRIVER'S SIDE. IT WAS SMALL AND NORMALLY

WE WOULD HAVE BEEN ABLE TO GET THIS FIXED. BUT WE SAW IT START TO SPREAD AND THEN HEARD A LOUD POP AND SAW THE THING STAR OUT INTO SIX DIFFERENT DIRECTIONS QUICKLY. THESE STONES WERE NOT VERY LARGE AND I'VE NEVER HAD A WINDSHIELD REACT LIKE THE SUBARU. I'VE HAD LARGER STONES HIT OUR SUBARU AND WAS ABLE TO GET A REPAIR PRIOR TO A WINDSHIELD BEING REPLACED. I BELIEVE THERE IS AN ISSUE IN THE MANUFACTURE OF THESE WINDSHIELDS. THESE ARE EXPENSIVE TO KEEP REPLACING AND I AM CONCERNED WITH SAFETY OF THESE WINDSHIELDS.

- NHTSA Complaint, August 24, 2015, ID No. 10759014: DRIVING HOME UPON TAKING DELIVERY, THE WINDSHIELD CRACKED, STARTING AT THE PASSENGER SIDE WIPER. WITHIN 20 MILES, THE CRACK WAS 24" LONG. WE DID NOT HIT ANYTHING. AFTER TWO DAYS OF FIGHTING WITH THE DEALER, THEY REPLACED THE WINDSHIELD. THREE DAYS AGO, WITH APPROX. 2000 MILES ON THE VEHICLE, IT CRACKED AGAIN. AGAIN, WE DID NOT HIT ANYTHING. THE DEALER WILL NOT REPLACE IT. THERE HAS TO BE AN ISSUE WITH THIS VEHICLE. I'M AN ENGINEER, AND HAVE BEEN DRIVING FOR 35 YEARS. I'VE NEVER EXPERIENCED ANYTHING LIKE THIS.

- NHTSA Complaint, August 25, 2015, ID No. 10759059: WITHIN 9 DAYS OF RECEIVING A REPLACEMENT WINDSHIELD FOR MY SUBARU OUTBACK, MY WINDSHIELD WAS DAMAGED AGAIN. THE DEALER NOTED IT ON 8/8/15 AND THE WINDSHIELD WAS REPLACED ON 7/31/15. I DO NOT RECALL ANY ROCK HITTING THE WINDSHIELD. THE TOP CORNER OF THE PASSENGER SIDE WINDSHIELD HAD A CRACK. I DID CONTACT SUBARU OF AMERICA WHO AGREED TO REPLACE THE WINDSHIELD FREE OF CHARGE.

- **NHTSA Complaint, August 25, 2015, ID No. 10759058:**
  WINDSHIELD WAS HIT BY A ROCK. IN THE MIDDLE OF
  THE PASSENGER SIDE. APPROXIMATELY THE SIZE OF
  A DIME. WITHIN 4 HOURS, LEAVING THE CAR
  PARKED, THE CRACK SPREAD A FEW INCHES TO THE
  LEFT TOWARDS THE DRIVER SIDE. IT STOPPED IN THE
  MIDDLE. OVER THE COURSE OF A FEW DAYS, THE
  CRACK SPREAD UNTIL IT WAS ALMOST WITHIN VIEW
  OF THE DRIVER.

- **NHTSA Complaint, August 27, 2015, ID. No. 10759757:** WE
  HAVE 7,100 MILES ON OUR NEW & VERY FIRST
  SUBARU OUTBACK.THIS PAST WEEK WE DEVELOPED
  A CRACK THAT BEGAN ON THE LOWER 4 INCHES /
  CENTER PORTION ON THE PASSENGER SIDE OF
  WINDSHIELD. YES, THERE IS A "VERY SMALL NICK"
  FROM WHERE IT BEGAN. BELIEVE ME, IT'S SMALLER
  THAN THE TOP OF A STRAIGHT PIN.  THE CRACK
  STARTED OUT IN 2 DIRECTIONS AND OVER THE PAST
  FEW DAYS HAS GROWN TO 20 INCHES AND 11 INCHES
  RESPECTFULLY, AS OF TODAY. IF YOU LOOK AT THE
  DATA ON THE NHTSA WEB SITE FOR COMPLAINTS
  ABOUT THE 2015 SUBARU OUTBACK (104 TOTAL
  8/20/15 ) 65 OF THEM ARE ABOUT WINDSHIELDS
  CRACKING AT A VERY HIGH FREQUENCY RATE. PLUS,
  THE SUBARUOUTBACK.ORG WEB SITE HAS A LITANY
  OF THE SAME COMPLAINTS . IT'S TO THE POINT, THAT
  THERE IS A SERIOUS BACKORDER OF WINDSHIELDS
  FOR THE OUTBACK. THERE HAVE EVEN BEEN CASES,
  WERE AFTER REPLACEMENT, THE PROBLEM HAPPENS
  AGAIN, SHORTLY THEREAFTER. I HAVE TRIED TO
  FIND THIS TYPE OF PROBLEM WITH OTHER VEHICLES
  / BRANDS FOR 2015. THERE ARE NONE TO BE FOUND!
  EXCEPT THE 2015 SUBARU LEGACY, 10 CURRENTLY ,
  SAME TYPE OF WINDSHIELD. THAT WOULD MAKE IT
  AROUND 75 WINDSHIELD CRACKING COMPLAINTS
  TOTAL. SOMETHING OTHER THAN "BAD LUCK" IS
  CAUSING THIS ISSUE. SUBARU NEEDS TO SERIOUSLY
  TAKE THIS ISSUE TO THEIR ENGINEERING PEOPLE

AND FIND IT'S ROOT CAUSE AND COVER A PROPER
REPLACEMENT . I WOULDN'T RECOMMEND ANYONE
RUNNING OUT AND GETTING A REPLACEMENT UNTIL
THIS WHOLE PROBLEM IS ADDRESSED. AGAIN, THE
REPLACEMENT WINDSHIELDS ARE CRACKING ALSO.
SUBARU "PLEASE STEP UP" AND DO THE RIGHT THING
FOR THE SAKE OF YOUR REPUTATION AND THE
SATISFACTION OF YOUR MANY CUSTOMERS, BOTH
OLD AND NEW.

- NHTSA Complaint, August 28, 2015, ID No. 10760241:  I
  JUST PURCHASED A 2016 OB 2.5I PREMIUM. I HAVE
  HAD THE CAR FOR A WEEK AND A HALF. ON FRIDAY I
  DECIDED TO WASH MY CAR FOR THE FIRST TIME. I
  STARTED ON THE DRIVERS SIDE, RAISED THE
  DRIVERS SIDE WIPER, WENT AROUND THE FRONT OF
  THE CAR AND RAISED THE PASSENGER SIDE WIPER. I
  THEN WASHED AROUND THE CAR. WHEN I WENT TO
  PUT THE DRIVERS SIDE WIPER DOWN IT HIT THE
  PASSENGER SIDE WIPER AND SLAPPED IT DOWN
  ONTO THE WINDSHIELD. AN HOUR LATER I NOTICED
  A CRACK COMING FROM THE PASSENGER SIDE. I DID
  THE "PEN TEST" AND FOUND A SMALL DEPRESSION
  UNDER THE WIPER. NO ROCK HIT MY WINDSHIELD, IT
  WOULD HAVE HAD TO PASS THROUGH THE WIPER.
  THATS IMPOSSIBLE. BECAUSE I WAS JUST FREAKING
  AMAZED THAT IT COULD OF HAPPENED I RAISED THE
  PASSENGER WIPER AND LET IT COME DOWN ON THE
  WINDSHIELD TO SEE WHAT WOULD HAPPEN. IT PUT A
  SECOND CRACK IN THE WINDSHIELD, NOT ONE
  EMANATING FROM THE FIRST BUT A WHOLE NEW
  CRACK. IM TAKING IT TO MY DEALER TOMORROW.

- NHTSA Complaint, August 31, 2015, ID No. 10760316:
  THREE DAYS AGO, OUR NEW SUBARU OUTBACK
  (PURCHASED IN LATE FEBRUARY 2015) DEVELOPED A
  CRACK IN THE WINDSHIELD OVERNIGHT THAT IS
  NOW OVER TWO FEET IN LENGTH. THE CRACK RUNS

FROM THE TOP EDGE, MID-WINDSHIELD ON THE DRIVER'S SIDE, AND CIRCLES AROUND THE REAR VIEW MIRROR BEFORE TAILING OFF A FOOT OR SO ABOVE THE BOTTOM EDGE, IN FRONT OF THE PASSENGER'S SIDE. NO OBJECT STRUCK THE WINDSHIELD, IT SIMPLY CRACKED. WE CONTACTED THE DEALERSHIP, WHO TOLD US THAT THIS WOULD NOT BE COVERED UNDER THE WARRANTY, THAT NO AFTERMARKET WINDSHIELDS ARE AVAILABLE FOR THIS MODEL, AND QUOTED A PRICE OF $625 (BEFORE TAXES) FOR REPLACEMENT WITH SUBARU GLASS. THE DEALERSHIP ALSO INDICATED THAT THERE ARE ONLY A FEW SUBARU WINDSHIELDS AVAILABLE IN THE US. AFTER HEARING THIS, WE WENT ONLINE AND DISCOVERED THAT MANY OTHERS HAVE HAD SIMILAR EXPERIENCES WITH THIS MODEL. NO WONDER THERE ARE SO FEW WINDSHIELDS AVAILABLE! SINCE WE BOUGHT THE CAR, WE HAVE NOTICED SIGNIFICANT ROAD NOISE INSIDE THE CABIN, EVEN WITH ALL WINDOWS TIGHTLY CLOSED. THIS, COUPLED WITH THE NUMBER OF SIMILAR COMPLAINTS WE'VE SEEN ABOUT CRACKED WINDSHIELDS ON 2015 SUBARU OUTBACKS, LEADS US TO BELIEVE THAT SUBARU SHOULD RECALL THE MODEL, IN ORDER TO ADDRESS THE DESIGN FLAW BEFORE SOMEONE IS KILLED OR INJURED.

- NHTSA Complaint, September 1, 2015, ID No. 10760851:  I WAS AT WORK TODAY AND WHEN I LEFT I SAT IN THE OUTBACK FOR ABOUT 10 MIN WITH THE AIR CONDITIONING ON AND MADE PHONE CALLS. WHEN I GOT READY TO TAKE OFF I HEARD A CRACK. I LOOKED AROUND AND DIDN'T SEE ANYTHING. ABOUT 30 MINUTES AGO, MY HUSBAND AND I WENT TO PICK UP THE GRANDKIDS AND MY HUSBAND SAID, "HOW DID THE WINDSHIELD GET CRACKED? HE WAS RIGHT IT WAS CRACKED RIGHT AT THE REARVIEW MIRROR. I CALL THE SERVICE DEPARTMENT OF THE SALES COMPANY AND THEY SAID I WILL HAVE TO

COME WHEN A SUBARU REP IS IN THE STORE AND HE
WILL TELL WHETHER IT WAS DEFECTIVE MATERIAL.
IT HAS TO BE A DEFECT, I WAS SITTING STILL AND IT
JUST CRACKED. IT WAS NOT HIT BY ANYTHING, AND
THERE ARE NO INDENTS WHERE IT WAS HIT.

- NHTSA Complaint, September 4, 2015, ID No. 10761600:
  TRAVELING FROM KANSAS CITY MO TO PHOENIX
  WINDSHIELD DEVELOPED CRACK WHILE DRIVING.
  WE WERE TRAVELING IN A LIGHT RAIN AND THERE
  WAS SOME VERY SMALL PEA GRAVEL BEING
  THROWN UP BY PASSING CARS ON THE OPPOSITE
  SIDE OF CAR. THE CRACK CENTERED OVER THE
  PASSENGER WIPER ABOUT 4 INCHES UPWARD. THERE
  WAS NO STAR FORMATION. I TOOK IT TO THE
  SUBARU DEALERSHIP IN CHANDLER AZ. I WAS TOLD
  BY THE GENERAL MANAGER THAT THERE WAS A
  BACK ORDER ON THE GLASS BUT TO WAIT UNTIL I
  RETURNED TO KANSAS CITY FOR REPAIR. DURING
  OUR DRIVE HOME I CALLED OUR INSURANCE,
  SUBARU (WHERE PURCHASED) AND GLASS
  COMPANY. I FOUND THAT GLASS ON MY OUTBACK
  WAS AT LEAST 6 WEEKS OUT. AFTER 6 WEEKS I WAS
  AGAIN TOLD THE GLASS REMAINS ON BACKORDER.
  IT WAS FINALLY REPLACED BY SAFELITE ON AUGUST
  25TH. PLEASE LOOK INTO THIS. IS THERE SOME KIND
  OF DEFECT IN THE WINDSHIELD, INSTALLATION, OR
  FIT? THANKS

- NHTSA Complaint, September 5, 2015, ID No. 10761752:
  THE WINDSHIELD CRACKED HORIZONTALLY ON THE
  DRIVER'S SIDE. NOTHING HIT THE WINDSHIELD TO
  CAUSE THE CRACK. IT WAS FINE WHEN I GOT HOME
  FROM WORK AND PARKED THE VEHICLE IN THE
  GARAGE; THE FOLLOWING MORNING THE CRACK
  WAS THERE.

- NHTSA Complaint, September 7, 2015, ID No. 10761943:
  FOR UNKNOWN REASONS, MY WINDSHIELD CRACKED

ON THE DRIVER'S SIDE WHILE IT WAS PARKED IN THE DRIVEWAY. THERE IS NO EVIDENCE OF ANY IMPACT DAMAGE.

- NHTSA Complaint, September 10, 2015, ID. No. 10762933: NOTICED A CRACK IN THE WINDSHIELD ON 8/27/15. IT EXTENDED FROM UNDER THE RIGHT WINDSHIELD WIPER TOWARDS THE CENTER OF THE WINDSHIELD ABOUT 18 INCHES LONG. I COULD NOT THINK OF AN OBJECT HAVING HIT THE WINDSHIELD, THEN RECALLED DRIVING DOWN THE STREET EARLIER AT ABOUT 30 MPH. I HAD HEARD A LOUD POP SOUND, BUT THOUGHT IT WAS COMING FROM UNDER THE CHASIS, LIKE THE SOUND OF A ROCK FLYING UP FROM A TIRE AND HITTING UNDERNEATH. IN RETROSPECT THIS WAS PROBABLY WHEN THE WINDSHIELD CRACKED. ONLINE RESEARCH I DID EARLIER SHOWED HUNDREDS OF COMPLAINTS ABOUT THE WINDSHIELDS ON THE 2015 OUTBACKS CRACKING EASILY, MANY OF WHICH DID NOT INVOLVE OBJECTS HITTING THE CAR. I FOUND SEVERAL SITES OF SIMILAR COMPLAINTS, WITH THE LINKS OF 1 BELOW. I BROUGHT THE CAR INTO THE DEALER THE NEXT DAY AND EXPLAINED THAT THE WINDSHIELD HAD SPONTANEOUSLY CRACKED. THEY INITIALLY TOLD ME THAT MY CRACK APPEARED TO HAVE BEEN CAUSED BY AN OBJECT AND NOT COVERED UNDER WARRANTY. I ASKED THEM TO EXPLAIN HOW AN OBJECT COULD POSSIBLY HAVE HIT THE GLASS AND NOT DAMAGED THE WIPER, WHICH WAS FULLY INTACT. THEY SAID: "THE WIPER BLADE MUST HAVE BEEN MOVING WHEN A ROCK STRUCK WINDSHIELD". I SAID NO, THE WIPER BLADES HAVE NOT BEEN USED IN SEVERAL DAYS SINCE IT HAD NOT BEEN RAINING. ALSO, AN INSURANCE APPRAISER LOOKED AT THE DAMAGED GLASS AND SAID THIS WAS NOT CAUSED BY AN OBJECT HITTING IT FROM THE OUTSIDE, SINCE THE CRACK HE SAID WAS AN "INSIDE-OUT" CRACK BASED ON THE FEEL OF

THE CRACK. A WARRANTY CLAIM WAS SUBMITTED
BY THE DEALER TO SUBARU OF AMERICA. WITHIN 2-3
DAYS THE DECISION WAS MADE BY SOA TO COVER
THE GLASS UNDER WARRANTY. FORTUNATELY THE
DEALER HAD A NEW WINDSHIELD IN STOCK,
HOWEVER, THERE ARE MANY REPORTS OF THE
WINDSHIELD HAVING BEEN BACK ORDERED FOR
WEEKS AT A TIME, WHICH IS A SAFETY ISSUE.

- NHTSA Complaint, September 13, 2015:  THE WINDSHIELD
  CRACKED IN THE BOTTOM CORNER OF THE
  PASSENGER SIDE, MERELY AS A RESULT OF THE
  WINDSHIELD WIPER RETRACTING ONTO IT WHILE
  BEING WASHED. (I HAVE NEVER IN MY 30+ YEARS OF
  DRIVING CARS HAD A WINDSHIELD CRACK FROM
  THE IMPACT OF A WINDSHIELD WIPER RETRACTING
  ONTO IT!!!) THE CRACK HAS SINCE SPREAD ALMOST
  TO THE DRIVER SIDE. BASED ON MY OWN RESEARCH
  AND INVESTIGATION, I BELIEVE THE BUILT IN
  WINDSHIELD DE-ICER UNIT COMPROMISES THE
  INTEGRITY OF THE WINDSHIELD GLASS. IN THE
  EVENT AN ACCIDENT WERE TO OCCUR, THE
  WINDSHIELD COULD VERY WELL SHATTER AND
  CAUSE BODILY INJURY. A SUBARU OF AMERICA
  REPRESENTATIVE CONFIRMED VIA EMAIL THAT "IN
  THE PAST FEW MONTHS WE HAVE SEEN A HIGHER
  DEMAND FOR WINDSHIELD REPLACEMENT THAN WE
  USUALLY SEE. OUR PARTS DEPARTMENT IS WORKING
  HARD WITH RETAILERS AND SUPPLIERS
  AVAILABILITY....WE HAVE ALSO UPDATED OUR
  PRODUCTION PROCESS TO IMPROVE THE DURABILITY
  OF OUR WINDSHIELDS." CLEARLY, THE SUBARU
  OUTBACK 2015 WINDSHIELDS HAVE A DEFECT, AND
  THERE SHOULD BE A RECALL FOR THEM TO BE
  REPLACED AT NO COST TO THE OWNER BEFORE
  SOMEONE GETS HURT. I HAVE AN APPOINTMENT
  WITH THE LOCAL DEALERSHIP TO HAVE THE
  WINDSHIELD REPLACED NEXT WEEK. ONLY TIME
  WILL WILL TELL HOW LONG THIS WILL TAKE AND

HOW MUCH IT IS GOING TO COST. IN FAIRNESS, THE
SUBARU OF AMERICA REP HAS ASKED ME TO SEND A
COPY OF THE REPLACEMENT RECEIPT TO SEE IF THEY
CAN HELP WITH THE COST. CONSIDERING SUBARU'S
REPUTATION, MY HOPE IS THEY WILL ULTIMATELY
REIMBURSE ME IN FULL.

- NHTSA Complaint, September 16, 2015, ID No. 10764422:
  NOTICED A SMALL WINDSHIELD CRACK AND WAS
  TOLD IT COULDN'T BE REPAIRED. IT STAYED SMALL
  FOR A MONTH OR SO THEN SPREAD RAPIDLY WHEN
  WEATHER HEATED UP. I'VE HAD DINGS BEFORE IN
  PRIOR CARS' WINDSHIELDS, BUT NEVER A CRACK.

- NHTSA Complaint, September 21, 2015, ID  No. 10766830:
  WINDSHIELD CRACKED WHILE DRIVING THROUGH
  LAKE TAHOE AREA WITHOUT ANY DEBRIS HITTING
  WINDSHIELD. THE CRACK STARTED AT LOWER
  PASSENGER CORNER AND HAS GROWN PAST MID
  SECTION OF THE WINDSHIELD. THIS IS THE 2ND
  WINDSHIELD DAMAGED BEYOND REPAIR ON THIS
  VEHICLE.

- NHTSA Complaint, September 29, 2015, ID No. 10778563:  IN
  LESS THAN SIX MONTHS, TWO WINDSHIELDS HAVE
  CRACKED WITH NORMAL USAGE. VEHICLES HAS
  LESS THAN 4600 MILES. THIS IS EITHER A GLASS
  FAILURE ISSUES OR A DESIGN FLAW. EITHER WAY,
  UNSAFE.

- NHTSA Complaint, September 30, 2015, Id No. 10778668:
  THIS WILL BE THE SECOND WINDSHILED REPLACED
  SINCE I BOUGHT MY OUTBACK IN MARCH 2015. FIRST
  TIME IT CRACKED, FOR NO APPARENT REASON, 2
  WEEKS AFTER PURCHASE. NOW ON SECOND
  WINDSHILED, AND SEAL IN UPPER RIGHT IS BROKEN,
  AND CAN'T TAKE IT OUT OF THE GARAGE BECAUSE
  THERE'S A DELUGE OF RAIN OUT THERE. MUST WAIT

FOR FACTORY REPLACEMENT BECAUSE IT'S TOO
NEW!

- NHTSA Complaint, October 8, 2015, ID. No. 10782117:  TL*
  THE CONTACT OWNS A 2015 SUBARU OUTBACK.
  WHILE DRIVING 75 MPH, A PEBBLE STRUCK THE
  CONTACT'S WINDSHIELD AND CREATED A TWELVE
  INCH CRACK. UPON ARRIVING HOME, THE CRACK
  EXPANDED TO APPROXIMATELY SIXTEEN INCHES IN
  THE SHAPE OF THE LETTER "U". THE VEHICLE WAS
  NOT TAKEN TO A DEALER OR REPAIRED. THE
  MANUFACTURER WAS NOTIFIED OF THE FAILURE.
  THE FAILURE MILEAGE WAS 12,000.

- NHTSA Complaint, October 10, 2015, ID No. 10781227:  NON
  COLLISION OR OTHER VEHICLE DAMAGE CRACK IN
  WINDSHIELD. A CRACK APPEARED ON THE
  PASSENGER SIDE OF THE WINDSHIELD. ACCORDING
  TO OWNER WEBSITE THIS IS AN ONGOING PROBLEM
  OF WHICH SUBARU IS AWARE FOR THE 2015 AND 2016
  MODEL YEARS. THEY OCCASIONALLY COVER THE
  REPAIR UNDER WARRANTY CLAIMING THEY DO SO
  AS A "COURTESY" CAR WAS STATIONARY, PARKED IN
  GARAGE ENGINE OFF. WINDSHIELD JUST CRACKED

- NHTSA Complaint, October 12, 2015, ID No. 10781453:  OUR
  2015 SUBURU OUTBACK WAS PURCHASED IN APRIL
  2015. IN JULY, THE WINDSHIELD CRACKED (RIGHT UP
  THE MIDDLE AND THEN, BRANCHED OUT TO BOTH
  SIDES) RIGHT BEFORE OUR EYES IN THE PARKING
  LOT OF THE ZOO. NO IMPACT OF ANY DEBRIS WAS
  HEARD OR EVIDENT. WE HAD THE WINDSHIELD
  REPLACED AFTER SUBURU DETERMINED A POINT OF
  IMPACT FROM DEBRIS. WE DID NOT AGREE, BUT WE
  NEEDED A NEW WINDSHIELD, SO WE PAID FOR IT. ON
  OCTOBER 8, AFTER GETTING INTO CAR AT WORK
  PARKING LOT, ANOTHER CRACK WAS DISCOVERED
  AND MATCHED THE JULY'S CRACK EXACTLY. AGAIN,
  NO IMPACT OF DEBRIS AND THE START OF THE

CRACK STARTS AT THE VERY BOTTOM OF THE
WINDSHIELD. I VISITED SUBURU THIS MORNING FOR
ROUTING MAINT AND THEY INFORMED ME OF NO
RECALL AND DIDN'T DO ANYTHING ABOUT IT. I AM
REPLACING THE WINDSHIELD, AGAIN, IN A COUPLE
OF DAYS. I SUSPECT THERE IS SOMETHING WRONG
WITH THE MANUFACTURING OR DESIGN OF THE
OUTBACK.

- NHTSA Complaint, October 14, 2015, ID No. 10782117:  TL*
  THE CONTACT OWNS A 2015 SUBARU OUTBACK. THE
  CONTACT STATED THAT WHILE THE VEHICLE WAS
  ON, THE FRONT WINDOW DEFROSTER CAUSED THE
  FRONT WINDSHIELD TO CRACK. THE CRACK WAS
  LOCATED IN THE MIDDLE OF THE WINDSHIELD AND
  EXTENDED UPWARD. ALSO, THE CONTACT
  INDICATED THAT THE PLASTIC EXTERIOR PANEL
  NEAR THE WINDOW MELTED. THE CAUSE OF THE
  FAILURE WAS NOT DIAGNOSED OR REPAIRED. THE
  MANUFACTURER WAS NOT NOTIFIED OF THE
  FAILURE. THE FAILURE MILEAGE WAS
  3,400...UPDATED 06/09/15*BF

- NHTSA Complaint, October 23, 2015, ID No. 10785682:  ON
  SUNDAY OCT 11TH WHILE SITTING IN THE DRIVEWAY
  AND WASHING THE CAR A SPIDER CRACK APPEARED
  UNDER THE TIP OF THE PASSENGER SIDE
  WINDSHIELD WIPER THAT HAS SPREAD ACROSS TO
  JUST ABOUT THE REAR VIEW MIRROR. WENT TO THE
  DEALER WHO THEN TOOK SOME PHOTOS TO SEND TO
  SUBARU. AFTER MANY CALLS BACK AND FORTH WE
  ARE STILL WAITING ON A DETERMINATION. FIRST
  WAS TO BE BE TODAY 10/23 NOW BEING TOLD 10/28.
  THERE IS NO EVIDENCE OF AN EXTERNAL IMPACT
  AND AS THE CAR IS SITTING IN THE DRIVEWAY IT
  SEEMS IT IS BEING PUSHED OUT FROM THE INSIDE.

- NHTSA Complaint, October 26, 2015, ID No. 10785981:  THE
  WINDSHIELD CRACKED EARLIER THIS YEAR AND

HAD TO BE REPLACED. THE CRACK EXTENDED FROM
THE UPPER RIGHT TO THE DRIVERS SIDE. LAST WEEK
A ROCK HIT MY WINDSHIELD AND WITHIN MINUTES
A 2 FOOT CRACK APPEARED (EXTENDS FROM UPPER
RIGHT TO THE MIDDLE). THE CRACK IS CONTINUING
TO GROW. I'M CONCERNED THERE IS A SAFETY ISSUE
WITH THE WINDSHIELD.

- NHTSA Complaint, November 4, 2015, ID No. 10788422:  MY
  WINDSHIELD CRACKED WHILE ON THE HIGHWAY. I
  DID NOT SEE OR HEAR A STONE HIT. 3 OTHER PEOPLE
  WERE IN THE CAR WHEN A 10 INCH CRACK APPEARED
  FROM THE DRIVER SIDE CORNER POST TOWARD THE
  MIDDLE. NO ONE SAW OR HEARD A STONE HIT. I
  CAME HOME AND RESEARCHED IT AND THERE ARE
  MANY COMPLAINTS ON THE OUTBACK FORUM
  ABOUT HOW EASILY THEIR WINDSHIELDS BROKE. I
  THINK IT IS A SAFETY ISSUE IF SO MANY OF
  SUBARU'S NEW WINDSHIELDS ARE CRACKING SO
  EASILY.

- NHTSA Complaint, November 10, 2015, ID. No. 10789553:
  WHILE DRIVING ON THE HIGHWAY, A SMALL ROCK
  HIT OUR WINDSHIELD IN THE PASSENGER SIDE
  DEICER AREA. WE HAVE RECEIVED A NOTICE THAT
  SUBARU KNOWS THERE IS AN ISSUE WITH
  WINDSHIELDS CRACKING AT THE DEICER AREA, BUT
  THE LOCAL DEALER STATES THAT OUR CRACK
  INITIATED ABOVE THE AREA FOR WHICH THEY
  ACCEPT RESPONSIBILITY. THE DEICER AREA ON OUR
  WINDSHIELD EXTENDS ABOVE THE SPOT WHERE THE
  ROCK HIT, BUT SUBARU IS TRYING TO LIMIT
  RESPONSIBILITY TO A LOWER AREA. VISIBILITY IS A
  HIGHLY IMPORTANT COMPONENT OF SAFE DRIVING.
  THE DEICER AREA WAS NOT APPLIED BY TWO
  DIFFERENT MANUFACTURING PROCESSES WHEN IT IS
  A FEW INCHES APART. SUBARU IS TRYING TO LIMIT
  LIABILITY FOR A DESIGN OR MANUFACTURING
  FLAW. WE BELIEVE THAT SHOULD NOT BE ALLOWED.

- NHTSA Complaint, November 14, 2015, ID No. 10790396: SMALL PEBBLE STRUCK WINDSHIELD PASSENGER SIDE AT EDGE ADJACENT TO HEATING ELEMENT AT LEVEL OF MID WINDSHIELD. THIS LEFT A SMALL SHALLOW PIT IN OUTER GLASS. 12 HOURS LATER A CRACK DEVELOPED AT THE WINDSHIELD EDGE AND EXTENDED 12 INCHES TOWARD THE MIDDLE OF THE WINDSHIELD WHICH IS SLOWLY EXTENDING

- NHTSA Complaint, November 17, 2015, ID No. 10794385:  I HAVE HAD THIS CAR FOR 1 YEAR AND HAVE HAD 3 WINDSHIELDS CRACK. I HAVE NEVER HAD A CAR THAT HAD THIS MANY INCIDENTS WITH CRACKED WINDSHIELDS

- NHTSA Complaint, November 23, 2015 ID No. 10806357 PURCHASED THE 2015 OUTBACK IN SEPT. 2014. TOOK TO BACK TO DEALERSHIP SERVICE DEPT. OCTOBER. 24, 2014 BECAUSE OF LOUD POPPING NOISE AROUND WINDSHIELD ESPECIALLY WHEN BLUETOOTH PHONE CONNECTED. THEY COULD NOT FIND ANY PROBLEMS. POPPING NOISE AROUND WINDSHIELD CONTINUED FROM TIME TO TIME. TOOK BACK TO DEALER JULY 29, 2015 FOR POPPING NOISE AROUND WINDSHIELD AND POOR RADIO AM RECEPTION. THEY REPLACED THE RADIO BUT AM RADIO RECEPTION STILL NOT GREAT. GOT IN THE OUTBACK ON NOV 17, 2015 AND THERE WAS A 5" CRACK ON THE BOTTOM OF THE WINDSHIELD SLIGHTLY RIGHT OF THE CENTER. A COUPLE OF WEEKS BEFORE THIS I WAS DRIVING AND HEARD A VERY LOUD POPPING NOISE. IT MADE ME JUMP AS I THOUGHT THE WINDSHIELD WAS GOING TO SHATTER BUT NOTHING HAPPENED. I HAD RECEIVED A LETTER FROM SUBARU ABOUT WINDSHIELD CRACKING PROBLEMS SO I CONTACTED THE DEALERSHIP. I TOOK IT IN SO THEY COULD TAKE A PICTURE. AT THAT TIME I ALSO REPORTED PROBLEMS WITH THE DEFROSTER NOT KEEPING THE

WINDSHIELD CLEAR ESPECIALLY ON RAINY DAYS AND NIGHTS. THIS PROBLEM WITH THE DEFROSTER HAS OCCURRED SEVERAL TIMES AND IT WAS I THE LOWER PORTION OF THE WINDSHIELD. I THOUGHT THE SUBARU HAD ELECTRICAL L ISSUES BECAUSE OF THE POPPING, POOR AM RADIO RECEPTION AND THE DEFROSTER. NOW THE WINDSHIELD! THIS IS MY FIRST SUBARU AND POSSIBLY LAST IF THE PROBLEMS PERSIST. ALL OF THE INCIDENTS HAPPENED WHILE DRIVING BUT WHEN I DISCOVERED THE CRACK IT WAS PARKED IN THE GARAGE. CRACK US NOW ABOUT 9".

- NHTSA Complaint, December 16, 2015, ID No. 10810785: DURING A RECENT TRIP TO COLORADO, THE FRONT WINDSHIELD ON MY NEW 2015 SUBARU OUTBACK DEVELOPED A DOZEN SMALL PITS IN THE EXTERIOR GLASS SURFACE FROM CONTACT WITH VERY TINY PEBBLES. TWO OF THE PITS HAVE DEVELOPED LARGE CRACKS THAT HAVE GROWN TO LENGTHS EXCEEDING 15 INCHES. THE TINY PEBBLE STRIKES SHOULD NOT HAVE CAUSED SUCH PITS BASED ON MY EXTENSIVE DRIVING EXPERIENCE. I BELIEVE THERE TO BE A DEFECT IN THE GLASS ITSELF, MAKING IT UNUSUALLY BRITTLE. THE PEBBLE STRIKES OCCURRED WHILE DRIVING AT HIGHWAY SPEEDS (I.E. 55-65 MPH) ON PAVED ROADWAYS. THE TEMPERATURE OUTSIDE DURING THE PEBBLE STRIKES, WHICH TOOK PLACE OVER SEVERAL DAYS OF DRIVING, RANGED FROM 20 TO 45 DEGREES F. THE CRACKS APPEAR TO STILL BE GROWING.

- NHTSA Complaint, December 27, 2015, ID No. 10816355: WHILE PARKED OVERNIGHT THE FRONT WINDSHIELD DEVELOPED A18 INCH HORIZONTAL CRACK AT EYE LEVEL STARTED FROM THE DRIVERS SIDE. THE CRACK IS TRAVELING. AIR TEMP WAS IN THE 70'S, NO RAIN OR HAIL, HAPPENED SOMETIME BETWEEN DEC 24-26, 2015. ODOMETER WAS 9200. I SAW ON A CAR

COMPLAINTS WEBSITE MANY OTHER 2015 OUTBACKS
WITH THE SAME ISSUE.

- NHTSA Complaint, January 1, 2016, Id No. 10817540: 2016
  SUBARU OUTBACK    WHILE DRIVING CAR ON I-95 ,
  NOTICED 4-4 IN. CRACK IN LOWER DRIVER SIDE
  WINDSHIELD ,AFTER INVESTIGATING NOTICED
  SMALL PIT SIZE OF PENCIL POINT WHERE THE CRACK
  STARTED. CRACK KEPT GROWING. NEXT DAY
  CONTINUED MY TRIP ON I-95 , ABOUT 3 HRS LATER
  ANOTHER CRACK APPEARED IN THE UPPER CENTER
  OF THE WINDSHIELD , AFTER INVESTIGATING
  NOTICED SMALL PIT THE SIZE OF PENCIL POINT
  WHERE THE CRACK STARTED. SAME AS FIRST CRACK
  I DID NOT NOTICE ANY DEBRIS HITTING THE
  WINDSHIELD . I RESEARCHED ON THE INTERNET AND
  FOUND NUMEROUS SIMILAR INCIDENTS WITH
  SUBARU OUTBACKS. I BELIEVE THIS IS A MAJOR
  SAFETY ISSUE WITH THE GLASS IN THE WINDSHIELD

- NHTSA Complaint. January 11, 2016, ID No. 10819549:
  WHILE I WAS DRIVING I HEARD A POP, DID SEE OR
  NOTICE ANYTHING. NEXT DAY I HAD A CRACK IN MY
  DRIVER SIDE WINDSHIELD, ABOUT 8-10 INCHES
  CRACK. THOUGHT I HAD GLASS COVERAGE BUT ITS
  $1000 DEDUCTIBLE. SAFELITE COST IS $461.55. I HAVE
  THE 2015 SUBARU OUTBACK WITH EYESIGHT, THAT
  MEANS AFTER SAFELIGHT REPAIRS THE WINDSHIELD
  I THEN NEED TO BRING THE CAR TO MY SUBARU
  DEALER TO HAVE THE EYESIGHT RECALIBRATE FOR
  ABOUT $200. MY CAR ONLY HAS 8700 MILES. LOOKING
  AT OTHER COMMENTS, THIS SEEMS TO BE A BIG
  PROBLEM WITH 2015 SUBARU OUTBACKS. IF I HAD
  FULL GLASS COVERAGE I WOULD HAVE CARED OR
  WROTE ABOUT THIS. HOPE SUBARU FIXES THIS
  PROBLEM. THANKS AND HOPE EVERYONE STAYS
  SAFE. AFTER SEEING THE NOTE BELOW I WAS IN
  MOTION ON A 2 LANE STREET. I DO DRIVE FROM NY
  TO FLORIDA TWICE A YEAR AND DON'T KNOW WHAT

I WOULD DO IF THIS HAPPENED ON A LONG TRIP.
DOESN'T SEEM SAFE IF SUBARU HAS DEFECTIVE
WINDSHIELDS

- <u>NHTSA Complaint, January 28, 2016, ID No. 10822881:</u>  I
  WAS DRIVING ON THE HIGHWAY AND HEARD THE
  WINDOW CRACK (POSSIBLY A SMALL PEBBLE, BUT
  NOT A ROCK SOUND) AND SAW A CRACK ON THE
  DRIVERS SIDE WINDOW THAT EXTENDED TO NEAR
  THE LANE DEPARTURE SYSTEM. I DISABLE THE LANE
  DEPARTURE SYSTEM OUT OF CAUTION. WHEN I
  STOPPED I FOUND A TINY PIT LIKELY FROM A SMALL
  ROCK/PEBBLE NEAR THE EDGE OF THE WINDSHIELD.
  IT SEEMS LIKE IT FORMED A CRACK VERY EASILY
  WITH NO NOTICEABLE IMPACT..

- <u>NHTSA Complaint, February 3, 2016, ID No. 10823921:</u>
  DURING A RECENT TRIP TO FLORIDA, THE FRONT
  WINDSHIELD ON MY NEW 2016 SUBARU OUTBACK
  DEVELOPED OVER HALF A DOZEN SMALL PITS IN THE
  EXTERIOR GLASS SURFACE FROM CONTACT WITH
  VERY TINY PEBBLES. THE TINY PEBBLE STRIKES
  SHOULD NOT HAVE CAUSED SUCH PITS BASED ON MY
  EXTENSIVE DRIVING EXPERIENCE. I BELIEVE THERE
  TO BE A DEFECT IN THE GLASS ITSELF, MAKING IT
  UNUSUALLY BRITTLE. THE PEBBLE STRIKES
  OCCURRED WHILE DRIVING AT LOW SPEEDS ON
  HIGHWAY OFF RAMPS. THE TEMPERATURE OUTSIDE
  DURING THE PEBBLE STRIKES, WHICH TOOK PLACE
  OVER SEVERAL DAYS OF DRIVING, RANGED FROM 60
  TO 85 DEGREES F. THE DEALER EXAMINED THE
  WINDSHIELD AND SAID THERE WAS NOTHING
  INFERIOR ABOUT IT.

- <u>NHTSA Complaint, February 16, 2016, ID No. 10836465 :</u>
  SHORTLY AFTER PURCHASING OUR VEHICLE, A
  PEBBLE HIT THE WINDSHIELD CAUSING A CHIP IN
  DRIVERS SIDE. CHIP WAS REPAIRED BY OUR
  DEALERSHIP, BUT WAS IN LINE OF VISION. WAS

EXCEPTING THIS REPAIR, BUT THOUGHT THE
WINDSHIELD MATERIAL WAS TOO SOFT OR BRITTLE
FOR THIS SMALL REPAIR, NOW HAVE A BROKEN
WINDSHIELD FROM CHIP ON LEFT SIDE, NEEDS
REPLACING.

- NHTSA Complaint, February 18, 2016 ID No. 10837027:  WE
  TEST DRIVE A 2015 OUTBACK SUBARU AT THE
  DEALERSHIP. IT HAD A CRACK IN IT AND DIDN'T
  THINK TO MUCH OF IT 20K MILES. WE ENDED UP
  PURCHASING THIS ONE PRIVATELY AND IT HAS A
  CRACKED WINDSHIELD AS WELL. IT ONLY HAS 11K
  MILES. THE CRACK ON THE OUTBACK THAT WE
  PURCHASED STARTS AT THE TOP MIDDLE OF THE
  WINDSHIELD BEHIND THE REARVIEW MIRROW AND
  CUTS DOWN AND TO THE RIGHT ABOUT 8 INCHES.
  AFTER READING THE COMPLAINTS ON THIS SITE, IT
  SEEMS THAT THERE'S A HUGE DEFECT WITH THE
  WINDSHIELD AND DEFROSTER THAT NEEDS TO BE
  RECALLED. THIS IS A MASSIVE SAFETY ISSUE!

- NHTSA Complaint, February 22, 2016, ID No. 10837433:
  FRONT WINDSHIELD DEVELOPED A 20 INCH CRACK,
  RUNNING FROM PILLAR ON PASSENGER SIDE,
  TOWARD CENTER OF WINDSHIELD. NO APPEARANCE
  OF ROCK STRIKE. NO SOUND OF ROCK STRIKE WHEN
  CRACK FIRST DEVELOPED. CRACK STARTED AT
  AROUND 14 INCHES, AND CONTINUES TO GROW
  LONGER. CAR WAS BEING DRIVEN AT HIGHWAY
  SPEEDS WHEN CRACK FIRST APPEARED, AT AROUND
  75 MPH.

- NHTSA Complaint, February 24, 2016, ID No. 10837939:
  WHILE THE CAR WAS GARAGED WITH THE GARAGE
  DOOR CLOSED, IT DEVELOPED AT ROUGHLY 12"
  CRACK RUNNING FROM THE RIGHT (PASSENGER
  SIDE) PILLAR. THERE IS NO ROCK STRIKE OR OTHER
  IMPACT, NOR HAD THERE BEEN ONE PRIOR TO IT
  BEING GARAGED. IT DEVELOPED OVERNIGHT.

- NHTSA Complain, March 11, 2016, ID No. 10846084: WHEN
DRIVING ABOUT 60MPH ON A SMOOTH FLAT
HIGHWAY, A SMALL CLICK WAS HEARD. DIDN'T
THINK ANYTHING OF IT AT FIRST. AFTER ABOUT 10
MORE MINUTES OF DRIVING I HEARD A LOUD POP. A 8
INCH VERTICAL CRACK STARTED ON THE
WINDSHIELD. IT STARTED LOW, BY THE WIPERS,
AROUND THE MID-LINE OF THE WINDSHIELD. THE
CRACK HAS CONTINUALLY GROWN AND IS NOW
RUNNING HORIZONTALLY ACROSS THE DRIVER-SIDE.

- NHTSA Complaint, March 20, 2016, ID No. 10850657:  THE
DAY AFTER DRIVING THE NEW CAR HOME FROM THE
DEALERSHIP, A CRACK APPROXIMATELY 12 INCHES
IN LENGTH APPEARED IN THE WINDSHIELD. THE
CRACK WAS NOT NOTICED UNTIL THE VEHICLE WAS
STATIONARY AND HAD NOT MOVED FOR ABOUT 24
HOURS. THE CRACK STARTED AT THE EXTREME EDGE
OF THE WINDSHIELD ON THE PASSENGER SIDE
TOWARD THE TOP AND CURVED DOWN.

- NHTSA Complaint, March 21, 2016, ID No. 10850872:  I
BOUGHT A 2016 SUBARU OUTBACK ON MARCH 5TH,
2016. AFTER TWO WEEKS I TOOK A TRIP DOWN TO
ATLANTA AND BACK TO KNOXVILLE, TN. I WAS
DRIVING ON I-75 AND GOING 70MPH. I HEARD NO
SOUND NOR DID I SEE A ROCK OR DEBRIS HIT MY
WINDSHIELD, BUT ALL OF A SUDDEN I SAW A CRACK
APPEAR. WITHIN AN HOUR OF HOME THIS CRACK
GREW FROM ABOUT 3 INCHES TO 5 INCHES. I CALLED
SUBARU OF AMERICA AND ALL THEY TOLD ME WAS
'CRACKS HAPPEN.'

- NHTSA Complaint, April 4, 216, ID No. 10853243:
WINDSHIELD CRACKED WITHIN FIRST 150 MILES/48
HOURS OF OWNERSHIP OF THE NEW CAR. A VERY
SMALL PIECE OF GRAVEL HIT THE WINDSHIELD NEAR
THE PASSENGER SIDE WIPER BLADE. IT BARELY

65
CLASS-ACTION COMPLAINT

MADE ANY NOISE. ON ANY OTHER CAR I'VE OWNED, IT LIKELY WOULD NOT HAVE DAMAGED THE WINDSHIELD AT ALL. IT LEFT A STAR ON THE OUTBACK, WHICH TURNED INTO A FOOT LONG CRACK WITHIN 30 SECONDS. SITTING OVERNIGHT THE CRACK DOUBLED IN SIZE. A WINDSHIELD WHICH FAILS UNDER TYPICAL DAY-TO-DAY CONDITIONS IS NOT ACCEPTABLE.

- NHTSA Complaint, April 6, 2016, ID No. 10853907:  ON 2/11/2016, I WAS DRIVING MY 2015 OUTBACK ON HIGHWAY 50 NEAR FOLSOM, CA. THERE WAS NO VEHICLE IN FRONT OF MY VEHICLE WITH IN 300 FEET. ALL OF A SUDDEN, I NOTICED THERE WAS A 5 TO 6 INCH LONG CRACK ON THE WINDSHIELD LOCATED THE DRIVER SIDE LOWER CORNER. ALTHOUGH LATER ON WE FOUND THERE WAS A CHIP ON THE WINDSHIELD, NO BODY ON THE CAR HEARD ANYTHING HIT THE WINDSHIELD, NOR SAW ANYTHING HIT THE WINDSHIELD. WITHIN A FEW DAYS, THAT CRACK BECAME A TWO FEET LONG CRACK FROM THE DRIVER SIDE LOWER CORNER ALL THE WAY TO THE CENTER OF THE WINDSHIELD. AND IT KEEP REFLECTING STRONG LIGHTS FROM DIFFERENT DIRECTIONS WHICH MADE IT MORE DIFFICULT TO SEE THINGS IN FRONT OF MY VEHICLE.THIS WAS THE SECOND WINDSHIELD I HAVE WITHIN ONE YEAR'S OWNERSHIP OF THIS CAR. THE FIRST ONE WAS CRACKED WHEN I PARKED MY CAR IN THE PARKING LOT OF A COSTCO  WAREHOUSE.
    LOOKING AT THE COMPLAINS FILED AGAINST THE 2015 AND 2016 OUTBACK ON NHTSA, ALMOST 50% COMPLAINS ARE ABOUT WINDSHIELD CRACKING ISSUE. THIS RATIO IS THE WAY HIGHER THAN SIMILAR VEHICLES AND PREVIOUS MODEL YEARS. ALTHOUGH SUBARU EXTENDED WIND SHIELD WARRANTY UNDER CERTAIN CIRCUMSTANCES, THE PROBLEM IS NOT SOLVED. THAT'S WHY 2016 OUTBACK OWNERS ARE RUNNING INTO SAME

SITUATION. PLEASE STEP IN AND URGE SUBARU TO
DELIVER A REAL SOLUTION.

- NHTSA Complaint, April 9, 2016, ID No. 10854576:
  WINDSHIELD CRACKED WHILE SITTING IN A PARKING
  AREA. THERE WAS A SMALL CHIP IN THE DEICER
  AREA WHERE THE CRACK BEGAN. HOWEVER, IT
  APPEARS THE STRIKE WAS MINOR AND WOULD HAVE
  BEEN EASILY REPAIRED BEFORE SPREADING.
  ALREADY HAD ONE CHIP REPAIRED FOR ANOTHER
  MINOR STRIKE. WINDSHIELD APPEARS TO BE
  EXCESSIVELY FRAGILE WHICH COULD RESULT IN A
  MAJOR SAFETY PROBLEM. DEALER IS WILLING TO
  REPAIR, BUT I AM CONCERNED ABOUT THE QUALITY
  OF GLASS BEING USED IN THE SUBARU.

- NHTSA Complaint, April 9, 2016, ID No. 10854576:
  WINDSHIELD CRACKED WITHIN FIRST 150 MILES/48
  HOURS OF OWNERSHIP OF THE NEW CAR. A VERY
  SMALL PIECE OF GRAVEL HIT THE WINDSHIELD NEAR
  THE PASSENGER SIDE WIPER BLADE. IT BARELY
  MADE ANY NOISE. ON ANY OTHER CAR I'VE OWNED,
  IT LIKELY WOULD NOT HAVE DAMAGED THE
  WINDSHIELD AT ALL. IT LEFT A STAR ON THE
  OUTBACK, WHICH TURNED INTO A FOOT LONG
  CRACK WITHIN 30 SECONDS. SITTING OVERNIGHT
  THE CRACK DOUBLED IN SIZE. A WINDSHIELD WHICH
  FAILS UNDER TYPICAL DAY-TO-DAY CONDITIONS IS
  NOT ACCEPTABLE.

- NHTSA Complaint, April 12, 2016:  6-8 INCH CRACK IN
  WINDSHIELD, NO ROCK IMPACT OR PREVIOUS
  DAMAGE. WINDSHIELD HAS TO BE REPLACED AND
  EYESIGHT SYSTEM RE-CALIBRATED. CRACK
  OCCURRED DRIVING STRAIGHT ON A 4 LANE
  HIGHWAY, NO TRUCKS IN THE AREA, NOT CLOSE TO
  OTHER CARS.

- NHTSA Complaint, April 14, 2016, ID No. 10855598:
SUBARU 2015 WINDSHIELD CRACK: DRIVING INTO
ALBUQUERQUE NM FROM SANTA FE ON HWY25, I
SAW A CRACK APPEAR IN MY WINDSHIELD, FROM
THE DRIVER'S SIDE. THE NEXT DAY IT HAD GROWN
INTO AN L SHAPE.IN 2 MORE DAYS IT HAD GROWN TO
AN S SHAPE. I DID NOT SEE ANY CARS CLOSE BY OR
ANY ROCK AT THE TIME THE CRACK APPEARED.
WHEN I CALLED THE DEALER, I WAS TOLD TO COME
IN ON 4-27-16 FOR MY ANNUAL MAINTENANCE, BUT
WAS CONCERNED BECAUSE THE CRACK KEPT
GROWING. I WENT TO THE ALBUQUERQUE GARCIA
DEALER TODAY 4-14-16, I WAS TOLD A TINY PINPOINT
SPOT ON THE LEFT SIDE OF THE WINDSHIELD
INDICATED A ROCK HAD CAUSED THE CRACK TO
START. BUT I HAVE DRIVEN CARS FOR 40 YEARS AND
NEVER SEEN ANYTHING THIS DRAMATIC. I NOW
HAVE READ ONLINE ABOUT DOZENS OF COMPLAINTS
LIKE MINE AND MOST VICTIMS BELIEVE THE
FLEXING OF THE CAR BODY MAY HAVE CAUSED THIS
CRACK. THE FRAGILITY OF THIS WINDSHIELD MAKES
THIS CAR EXTREMELY DANGEROUS. I BELIEVE THIS
CAR SHOULD HAVE A SAFETY RECALL.

- NHTSA Complaint, April 22, 2016, ID No. 10860865:  WHILE
DRIVING THE CAR, A CRACK APPEARED IN MY
WINDSHIELD ON THE DRIVER SIDE. IT FORMED AN
REVERSE L ABOUT THE MIDDLE OF THE WINDSHIELD.
THERE WAS NO IMPACT OR ANYTHING HITTING THE
WINDSHIELD. THE CRACK APPEARED BEFORE MY
EYES AS I WAS DRIVING UP THE ROAD.

- NHTSA Complaint, April 23, 2016, ID No. 10862769:  CAR
HAD 2578 MILES ON IT. WHILE PARKED OVERNIGHT
WINDSHIELD CRACKED STARTING AT PASSENGER
SIDE AND EXTENDING APPROXIMATELY 12 INCHES
TOWARD DRIVER SIDE. WENT IMMEDIATELY TO THE
LOCAL SUBARU SERVICE DEPT AND THEY
DETERMINED THAT IT WOULD BE COVERED UNDER

WARRANTY DUE TO NO EVIDENCE OF A STRIKE CAUSING IT. WINDSHIELD WAS REPLACED WITH SUBARU BRANDED PART 6 DAYS LATER THROUGH SUBARU BUT BY THEN THE CRACK HAD GROWN TO APPROX. 18INCHS.

- NHTSA Complaint, April 25, 2016, ID No. 10861402: VEHICLE PURCHASED NEW 2/25/2016. 1990 MILEAGE. CRACKS DEVELOPED WHILE DRIVING AT 70MPH. NO SOUNDS OF STONES HITTING GLASS AT ANY TIME DURING DRIVE. STOPPED TO WASH WINDSHIELD AT GAS STOP. DID NOT NOTICE CRACKS UNTIL LATER IN DRIVE. AC WAS TURNED ON & OFF DURING DRIVE, IF THAT MADE A DIFFERENCE. DRIVEN 500 MILES IN MODESTLY WARM SUNNY WEATHER IN 8 HRS THAT DAY,4/24/2016. CRACK PROGRESSED TO DRIVERS LINE OF SITE WITHIN ONE HOURS TIME. WAS INFORMED BY SUBARU DEALER NOT COVERED BY WARRANTY. REPAIR IS MY EXPENSE.

- NHTSA Complaint, April 28, 2016, ID No. 10862102: WINDSHIELD CRACKED FROM DRIVERS SIDE BOTTOM CORNER ACROSS THE MID LINE ABOVE THE STEERING WHEEL TO PASSENGER SIDE WITHOUT WARNING OR IMPACT FROM AN ROCK OR OBJECT. CRACK BEGUN WHILE DRIVING ON FREEWAY AND WITHIN 45 SECONDS EXTENDED ACROSS THE WINDSHIELD FROM DRIVERS SIDE TO THE MID POINT OF THE WINDSHIELD. CRACK IS IN DRIVERS LINE OF SIGHT, AND A SAFETY HAZARD. TOOK IT TO DEALER, WHO RESPONDED, THAT IT IS A COMMON OCCURRENCE IN THIS MODEL. PULLED OVER AND FOUND NO IMPACT OR ROCK CHIP ANYWHERE ALONG CRACK. WINDSHIELD DEFECTIVE.

- NHTSA Complaint, May 10, 2016, ID No 10905527.: WINDSHIELD CRACKED FROM PASSENGER SIDE WIPER AREA UP AND ACROSS WINDSHIELD WHILE CAR WAS PARKED. HAD RECEIVED A LETTER FROM

SUBARU INDICATING THERE WAS A POTENTIAL
WEAKNESS IN WINDSHIELD - DEALER REFUSED TO
REPLACE WINDSHIELD . CLAIMED DAMAGE WAS
FROM A ROCK.

- <u>NHTSA Complaint, May 30 2016, ID. No. 10871475:</u>  THIS IS
MY ORIGINAL 2015 OUTBACK. I OWN 2 2015S. MY
OTHER ONE ONE HAD A WINDSHIELD ISSUE WHEN I
WAS DRIVING AROUND 35 ON A COLD NIGHT. THERE
WAS A LARGE POP AND SUDDENLY A CRACK
APPEARED ON THE PASSENGER SIDE. OVER THE NEXT
DAYS IT GREW INTO A BACKWARDS "J". DEALER SAID
IT WAS NOT COVERED, HOWEVER IT WAS DIFFICULT
TO EVEN SEE A MARK THAT WOULD INDICATE IT
WAS HIT FROM A ROCK, AND NOT DEFECTIVE. WE
WENT AHEAD AND FIXED IT, EVEN THOUGH WE
THOUGHT IT WAS ODD. THE OTHER MORNING, WE
WENT DOWN TO THE GARAGE AND FOUND THAT OUR
ORIGINAL 2015 HAD A SIMILAR CRACK ON THE
DRIVER'S SIDE, IN A SIMILAR SHAPE AND LENGTH.
THE DAY BEFORE, WE DROVE THE CAR TO THE
BEACH. NOTHING HIT IT, AND THE CRACK IS SMOOTH,
WITH NOTHING FOUND WHERE IT ORIGINATES.
SOMETHING IS DEFECTIVE WITH THESE
WINDSHIELDS. THERE IS NO WAY 2 WINDSHIELDS ON
2 NEW CARS SHOULD BOTH HAVE TO BE REPLACED.
WE OWN OURS CARS A LONG TIME, AND HAVE NEVER
HAD A WINDSHIELD EXPERIENCE LIKE THIS, AND IF A
ROCK EVER HITS ONE, IT'S A TINY MARK THAT CAN
BE HANDLED BY INSURANCE. SOMETHING IS WRONG
BUT SUBARU HAS WRITTEN IT SO ANY UPPER
WINDSHIELD ISSUES ARE NOT INCLUDED, AND THIS
IS NOT RIGHT. WE ARE GOING BUYING OUR SECOND
ONE IN FOUR MONTHS, WITH EYESIGHT. THERE IS A
DEFECT.

- <u>NHTSA Complaint, May 30, 2016, ID No. 10871473:</u>
DRIVING ON A ROAD TRAVELING APPROX. 35 MILES
AN HOUR ON A COLD NIGHT. HEARD A LOUD POP

AROUND THE PASSENGER SIDE UPPER WINDSHIELD.
A SMALL CRACK APPEARED. THERE WAS NO BUMP
OR ROCK HIT AS THE REST OF THE AREA APPEARED
SMOOTH. CRACK SPREAD INTO BACKWARDS "J"
SHAPE OVER NEXT FEW DAYS AT LEAST 12 INCHES
LONG. DEALERSHIP TOLD ME IT WASN'T COVERED
AND THERE WAS A ROCK HIT. BUT THE AREA WAS
SMOOTH AND I'VE BEEN DRIVING FOR 30 YEARS AND
HAVE NEVER HAD THIS HAPPEN. WE ATE THE COST
BECAUSE IT NEEDED TO BE REPAIRED, EVEN THOUGH
CONSIDERED IT ODD THAT THIS WOULD HAPPEN.
HOWEVER, WE HAPPEN TO OWN ANOTHER 2015
OUTBACK. YESTERDAY, WE WENT INTO THE GARAGE
TO START THE CAR AND THERE IS A 12 INCH CRACK -
THE SAME SHAPE- ON THE DRIVER'S SIDE IN THE
SAME LOCATIONS. NO SIGNS OF A ROCK HIT.
WEATHER HAS BEEN VERY WARM, BUT THIS TIME,
THE CAR WAS PARKED. SOMETHING IS WRONG. 2 -
2015 OUTBACKS? 2 "J" SHAPED CRACKS? IT'S NO
COINCIDENCE AND TOO MANY COMPLAINTS ON LINE
FROM PEOPLE WITH SIMILAR SITUATIONS.
WINDSHIELD IS FAULTY AND SUBARU WON'T STEP UP
AND INCLUDE THE UPPER PART IN ITS RECALLS. IT
NEEDS TO. VERY DISSATISFIED CUSTOMER.

- <u>NHTSA Complaint, June 2, 2016 ID No. 10872231:</u>  I WAS
DRIVING MY 2015 SUBARU OUTBACK ON THE
HIGHWAY, NORTHBOUND INTERSTATE 280, IN
WOODSIDE, CALIFORNIA, ON MAY 27, 2016.
SUDDENLY I SAW A SMALL CRACK ON MY
WINDSHIELD THAT GREW TO ABOUT 6 INCHES IN A
FEW SECONDS, STARTING FROM THE WIPERS, AT THE
BOTTOM AND A BIT TOWARDS THE DRIVER SIDE AND
GOING UP THEN CURVING TOWARDS THE RIGHT, IN
AN L SHAPE. BY THE NEXT MORNING THE
HORIZONTAL PART OF THE CRACK HAD EXPANDED
AT LEAST 12 INCHES MORE. I DID NOT HEAR THE
NOISE OF IMPACT OF A STONE OR ANY OTHER
OBJECT.

- **NHTSA Complaint, June 6, 2016, ID No. 10872719:**
  WINDSHIELD CRACK ON A 2016 SUBARU OUTBACK
  LIMITED WITH EYESIGHT, PURCHASED NEW IN APRIL
  2016 AND CURRENTLY HAS 2,200 MILES ON IT. WENT
  TO RUN A QUICK ERRAND, DID NOT NOTICE
  ANYTHING UNUSUAL. ON THE WAY HOME WHILE
  DRIVING IN A RAINSTORM, I NOTICED A 6" CRACK ON
  THE DRIVER'S SIDE WINDSHIELD. THE CRACK RUNS
  FROM THE EDGE OF THE DRIVER'S SIDE, ABOUT 1/3
  UP FROM THE BOTTOM AND ABOUT 4" IN TOWARD
  THE CENTER. THE CRACK HAS GROWN TO ABOUT 18
  INCHES OVERNIGHT. THERE IS EVIDENCE OF A SMALL
  CHIP IN THE GLASS, BUT NOTHING I WOULD EXPECT
  TO CAUSE A CRACK AND I DON'T RECALL ANYTHING
  IMPACTING THE WINDSHIELD. THIS CRACK ONLY
  AFFECTS THE OUTER GLASS AND DOES NOT
  PROPAGATE THROUGH THE LAMINATION INTO THE
  INNER GLASS. THERE IS EVIDENCE OF
  DELAMINATION OF THE GLASS IN THE AREA
  ADJACENT TO THE CRACK. THIS IS A WIDE CRACK. I
  MEASURED 0.009" IMMEDIATELY ADJACENT TO THE
  CHIP DAMAGE ALL THE WAY TO THE EDGE OF THE
  GLASS WITH A STARRETT MODEL 66 THICKNESS
  GAGE. IT SEEMS THE OUTER GLASS MAY BE SUBJECT
  TO TENSION IN THE "AS INSTALLED" CONDITION AS
  EVIDENCED BY THE OPENING OF THIS CRACK. THIS
  MAY CONTRIBUTE TO THE APPARENT DAMAGE
  INTOLERANCE OF THE WINDSHIELD. PICTURES OF
  THE DAMAGE AND MEASUREMENT ARE ATTACHED.

- **NHTSA Complaint, July 19, 2016, ID No. 11006456:** FRONT
  WINDSHIELD SPONTANEOUSLY CRACKED FROM TOP
  OF DRIVER SIDE DOWN BOTH SIDES WHILE SITTING
  IN HOME DRIVEWAY FOR ABOUT TWO HOURS ON
  CLEAR, 90 DEGREE DAY. NO IMPACTS NOTED WHILE
  DRIVING ABOUT 25 MILES EARLIER IN THE DAY, AND
  NO CHIP IN WINDSHIELD AT APPARENT IMPACT

POINT. NOTHING FELL ON THE VEHICLE IN THE
DRIVEWAY OR EXERTED PRESSURE ON THE GLASS.

- NHTSA Complaint, August 2, 2016, ID No. 10892595:  I WAS
  DRIVING DOWN A CITY STREET GOING 40 MPH WHEN
  I HEARD A POP COMING FROM THE WINDSHIELD.
  WHEN I LOOKED OVER, THERE WAS A CRACK ABOUT
  MIDWAY UP THE WINDSHIELD. IT RAN FROM THE FAR
  RIGHT TOWARD THE MIDDLE ABdriOUT 10 INCHES
  AND THEN DOWNWARD. IT WAS CURVING
  DOWNWARD. THERE WAS ONE CAR IN FRONT ABOUT
  25 YARDS AWAY GOING ABOUT THE SAME SPEED AS I
  WAS. I COULD NOT BELIEVE THAT THE CAR IN FRONT
  OF ME COULD HAVE THROWN A ROCK THAT FAR AND
  HARD ENOUGH TO BREAK MY WINDSHIELD. I HAVE
  BEEN HIT MANY TIMES BEFORE ON THE HIGHWAY
  AND MY WINDOW HAD NEVER BROKEN. ONLY SMALL
  NICKS THAT I CAN SEE. I GOT TO THE THEATER AND
  GOT OUT TO LOOK AT THE WINDOW. THE CRACK
  STARTED FROM THE EDGE OF THE WINDOW. I COULD
  NOT SEE WHERE ANYTHING HAD HIT THE WINDOW.
  IT WAS A CLEAN BREAK. I HAD TO TAKE MY
  OUTBACK TO THE DEALER BECAUSE I'M HAVING
  PROBLEMS WITH THE WINDOW EXPRESS SWITCH,
  AND THEY LOOKED AT MY WINDSHIELD. THEY ARE
  GOING TO REPLACE IT BECAUSE I HAD PURCHASED
  EXTENDED COVERAGE AND IT WAS COVERED.

- NHTSA Complaint, September 1, 2016, ID No. 10903175:
  HAVE 2016 OUTBACK BUILT ON JUNE 15,2016.
  WINDSHIELD CRACKED AT 750 KM. MARK.
  TRAVELING ON PAVED ROAD AND NO KNOW STONES
  HIT WINDSHIELD. PAID FOR THROUGH INSURANCE
  COMPANY WITH A $300.00 DEDUCTIBLE. NOW READ
  OF ALL THE OTHER WINDSHIELD PROBLEMS. CRACK
  STARTED IN BLACK AREA JUST ABOVE PASSENGER
  SIDE WIPER.

- NHTSA Complaint, October 12, 2016, ID No. 10915621:
  WINDSHIELD CRACKED WHILE DRIVING ON I-684.
  THERE WAS NO OBJECT THAT HIT THE GLASS OR
  SOUND OF ANYTHING HITTING. JUST A CRACK
  ORIGINATING FROM THE DEICER AREA OF THE
  WINDSHIELD TOWARDS THE DRIVER'S SIDE AND UP
  AND TO THE RIGHT THAT APPEARED SUDDENLY.
  THERE WAS NO ADVERSE WEATHER AND THE CAR
  WAS OPERATING AS NORMAL. THE DEFROSTER WAS
  ON AT THE TIME.

- NHTSA Complaint, November 4, 2016, ID No. 10924304:
  DRIVING DOWN THE STREET, HEARD A LOUD POP
  AND THE WINDSHELD CRACKED. L SHAPED CRACK
  ABOUT 6 IN IN EACH DIRECTION. ABOUT THE SAME
  WAY THAT HAPPENED TO THE OTHER 122 PEOPLE
  THAT FILED COMPLAINTS FOR OUTBACK
  WINDSHIELDS CRACKING.

- NHTSA Complaint, November 11, 2016, ID No. 10925528:
  REPLACED WINDSHIELD THREE TIMES IN 15 MONTHS.
  TWO WERE ORIGINAL SUBARU BRANDED
  WINDSHIELDS. ORIGINAL AND INDUSTRY
  REPLACEMENT WINDSHIELD ARE TOO BRITTLE AND
  THUS UNSAFE. ANY LITTLE PEBBLE CHIPS THEM AND
  THEY ALWAYS HAVE A LONG CRACK WITHIN A FEW
  HOURS.

- NHTSA Complaint, February 23, 2017, ID No. 10956481
  WINDSHIELD CRACK APPEARED SUDDENLY
  ORIGINATING NEAR THE HEATING ELEMENT AT THE
  BOTTOM .DO NOT SEE ANY VISIBLE ROCK HIT MARKS
  . DEALERSHIP DOES NOT ACKNOWLEDGE ANY
  MANUFACTURING DEFECTS AND I HAVE TO GET IT
  REPAIRED USING MY INSURANCE .

- NHTSA Complaint, March 9, 2017, ID No.: 10959895:
  DEFECTIVE/DELICATE WINDSHIELD. DRIVING AT
  65MPH ON SMOOTH HIGHWAY IN RAIN. PUT

DEFROSTERS ON. WINDSHIELD CRACK ON DRIVERS
SIDE ABOUT 12" FROM BOTTOM. RUNS TO ABOUT 2'
BEFORE STOPPING. CLOSEUP INSPECTION REVEALS
NO MISSING MATERIAL OR CHIP INDICATIVE OF
IMPACT.

- NHTSA Complaint, August 13, 2017, ID no. 10748580:  THE
  WINDSHIELD HAS DEVELOPED A SMALL CRACK ON
  THE PASSENGER SIDE BEHIND THE WINDSHIELD
  WIPER. I TOOK IT TO THE DEALER AND THEY CLAIM
  THERE IS AN IMPACT POINT AT THE ORIGIN OF THE
  CRACK, YET THERE IS NO EVIDENCE OF ANY
  DAMAGE WHATSOEVER TO THE WIPER ASSEMBLY. I
  WASHED THE CAR ON TUESDAY 8/11/15 AND THERE
  WAS NO CRACK THEN. THE CRACK WAS FIRST
  NOTICED BY A PASSENGER ON 8/12/15. THE CRACK
  SEEMS TO BE GETTING LARGER. THE SUBARU
  DEALER WILL NOT COVER THE REPLACEMENT
  UNDER THE WARRANTY, BUT I KNOW NOTHING HIT
  MY WINDSHIELD. THE CAR IS ALWAYS KEPT IN MY
  GARAGE WHEN NOT IN USE.

- NHTSA Complaint, September 2, 2017, ID No.: 11021726:
  THE WINDSHIELD DEVELOPED A FISSURE OVER 2
  FEET LONG WITH NO KNOWN (VISIBLE OR AUDIBLE
  IMPACT) I SIMPLY NOTICED IT AS I WAS DRIVING
  HOME AND IT WAS NOT THERE WHEN I LEFT HOME. IT
  STARTS IN THE LOWER PASSENGER SIDE UNDER THE
  BLACK PORTION AND RUNS HALF WAY ACROSS THE
  WINDSHIELD.

**2015-2016 Subaru Legacy NHTSA Complaints**

- NHTSA Complaint, May 14, 2015, ID No. 10716388: CRACK
  IN WINDSHIELD APPEARED WITHOUT KNOWN CAUSE.
  IN SEARCHING THE INTERNET FOR SIMILAR
  INCIDENTS THERE ARE A NUMBER OF NEW SUBARU
  LEGACY OWNERS WHO HAVE THIS SAME
  EXPERIENCE. THE GLASS IS ON BACKORDER SO

REPAIRS MAY BE SEVERAL WEEKS OUT. SOME OF
THE OWNERS HAVE REPORTED MORE THAN ONE
CRACKED WINDSHIELD ON THE SAME NEW VEHICLE.

- NHTSA Complaint June 2, 2015, ID No. 10723097: SUDDEN
LOUD CRACKING SOUND WHILE TRAVELING ON
INTERSTATE. NOW THERE IS A 3 FOOT WINDING
CRACK ACROSS THE WINDSHIELD. NO EVIDENCE OF
ANYTHING STRIKING THE GLASS. REPLACEMENT NOT
AVAILABLE FOR 6 WEEKS. DEALER ADVISES 500
WINDSHIELDS ON BACKORDER FOR 2015 LEGACY.

- NHTSA Complaint, June 9, 2015, ID No. 10724419: WHEN
GETTING INTO THE CAR IN THE AFTERNOON,
NOTICED A HUGE CRACK ON THE WINDSHIELD
STARTING BETWEEN THE WIPER BLADES AND GOING
TO THE TOP OF THE WINDSHIELD. THERE WAS NO
IMPACT TO HAVE CAUSED THIS. THE CAR WAS
PARKED IN THE OPEN ON A DAY WHERE
TEMPERATURES WERE MILD. LOOKS LIKE THERE ARE
QUITE A FEW COMPLAINTS IN THE SUBARU FORUMS
COMPLAINING ABOUT THE SUBARU LEGACY AND
OUTBACK WHICH SHARE THE SAME PLATFORM. THE
ISSUES DISCUSSED MATCHES MY SPECIFIC CASE.
SUBARU SHOULD BE ENCOURAGED TO PERFORM A
RECALL.

- NHTSA Complaint, June 25, 2015, Id No. 10730306: THE
WINDSHIELD CRACKED FROM THE LOWER
PASSENGER SIDE. THREE LARGE CRACKS ONE OF
WHICH IS NOW ALMOST ALL THE WAY OVER IN
FRONT OF THE DRIVER. THERE WAS A CHIP WHERE
THE CRACK STARTED. THE BIG PROBLEM IS THAT
THE WINDSHIELDS ARE ON BACK ORDER WITH NO
IDEA HOW LONG IT WILL BE TO GET A
REPLACEMENT. I HAVE HAD CARS WITH ROCK CHIPS
BEFORE AND USUALLY GET THEM FILLED, BUT THIS
WINDSHIELD CRACKED ALMOST IMMEDIATELY
WHILE ON A ROAD TRIP. I THINK IT IS OBVIOUS THAT

SUBARU HAS A PROBLEM WITH POOR QUALITY WINDSHIELDS IF THEY CANNOT MAKE THEM FAST ENOUGH TO REPLACE ALL THE DAMAGED ONES. THE CAR DOES HAVE THE EYESIGHT SYSTEM AND THERE IS NO AFTERMARKET WINDSHIELD AVAILABLE.

- NHTSA Complaint, July 1, 2015, ID No. 10731615: WITHIN A MONTH OF BUYING A BRAND NEW SUBARU LEGACY 2015, MY WINDSHIELD SPONTANEOUS CRACKED WHILE DRIVING ON AN OPEN-AIR INTERSTATE AWAY FROM OTHER CARS. AT FIRST I THOUGHT MAYBE A PEBBLE HIT THE WINDSHIELD, BUT UPON LATER INSPECTION I COULD NOT FIND A DISTINCT STARTING POINT FOR THE CRACK IN THE WINDSHIELD CRACK (NO DENTS OR PLACES WHERE SOMETHING MIGHT HAVE HIT MY CAR). THE CRACK INITIATED FROM THE VERY BOTTOM OF THE MIDDLE OF THE WINDSHIELD AND EXTENDED ABOUT 6-8 INCHES FROM THE BOTTOM OF THE WINDSHIELD.

- NHTSA Complaint, July 15, 2015, ID No. 10734114: OUT OF NOWHERE THE WINDSHIELD STARTED TO CRACK - STARTED ON THE EDGE OF THE WINDSHIELD ON THE PASSENGERSIDE ABOUT 8-10 INCHES FROM THE BOTTOM - AT THIS POINT IT HAS SPREAD PAST THE MIDDLE OF THE WINDSHIELD LEAVING A HORIZONTAL CRACH THAT PRETTY MUCH SPLIT MY WINDSHIELD IN HAVE - THE WINSHIELD IS CURRENTLY ON BACKORDER WITH NO ETA AS TO WHEN IT WILL BE AVAILABLE

- NHTSA Complaint, July 20, 2015, ID No. 10735049: OUR WINDSHIELD DEVELOPED A CRACK THAT GREW OVER TWO DAYS AND NOW EXTENDS HALF THE WIDTH OF THE WINDSHIELD. WE DISCOVERED THIS CRACK WHEN GETTING INTO THE CAR AFTER IT WAS PARKED. THERE IS NO OBVIOUS REASON FOR THIS CRACK. WE HAVE NO MEMORY OF HITTING OR BEING HIT BY ANY OBJECT. I UNDERSTAND THAT SUCH

SPONTANEOUS CRACKS HAVE APPEARED ON OTHER
SUBARU OUTBACKS AND LEGACIES.

- NHTSA Complaint, August 10, 2015 ID No. 10747432: IN
  THE COURSE OF DRIVING AROUND OUR AREA, MY
  WIFE & I PARKED OUR NEW 2015 SUBARU LEGACY
  FOR AN HOUR TO DO SOME SHOPPING. WHEN WE GOT
  BACK TO THE CAR, WE COULDN'T HELP BUT NOTICE
  A CRACK ON THE PASSENGER SIDE FRONT
  WINDSHIELD, WHERE THERE HADN'T BEEN ONE
  BEFORE. WE DROVE IMMEDIATELY TO OUR LOCAL
  SUBARU DEALER, WHERE THEY NOTICED A VERY
  SMALL DING JUST BELOW THE RIGHT WINDSHIELD
  WIPER, WITH THE AFOREMENTIONED CRACK COMING
  FROM THE DING. FROM MY PERSONAL EXPERIENCE
  OF CLOSE TO 50 YEARS OF DRIVING, THIS IS THE
  FIRST EVER NON-CRASH WINDSHIELD PROBLEM I'VE
  HAD THAT'S HAD A PROGRESSIVE CRACK, AND THIS
  IS A BRAND NEW CAR! I'M READING THAT I'M NOT
  THE ONLY ONE WITH THIS PROBLEM!

- NHTSA Complaint, August 17, 2015, ID No. 10749296: ON
  JULY 13, 2015, IN THE MORNING I SAW A CRACK THAT
  HADN'T BEEN ON MY WINDSHIELD THERE THE DAY
  BEFORE HAD STARTED LOW IN THE PASSENGER SIDE,
  NEAR THE CORNER OF MY 9- MONTH OLD 2015
  LEGACY. OVER THE NEXT SEVERAL DAYS IT GREW
  INCHES A DAY, STRAIGHT UP AND ANOTHER CRACK
  TOWARDS THE DRIVING SIDE. NO OBVIOUS CAUSE -
  NO ROCK HIT NOR "STAR" TO START IT. THE DEALER
  IN SAID WINDSHIELDS ARE ON BACK ORDER, AND
  WANT $839 FOR THE REPLACEMENT AND
  INSTALLATION. I STILL HAVEN'T HAD IT REPLACED,
  WAITING TO SEE IF SUBARU IS GOING TO TAKE SOME
  RESPONSIBILITY, SINCE THE INTERNET IS FILLING UP
  WITH SIMILAR ACCOUNTS.

- NHTSA Complaint, August 24, 2015, Id No. 10758713:
  WINDSHIELD DEVELOPED SMALL CRACK. GREW

OVER TIME. SUBARU HAD NEW PARTS UNDER
NATIONAL BACKORDER. NUMEROUS REPORTS OF
CRACKS DEVELOPING FOR NO APPARENT REASONS.
SEE:HTTP://LEGACYGT.COM/FORUMS/

- NHTSA Complaint, October 22, 2015, ID No. 10785281:
  WINDSHIELD SUDDENLY DEVELOPED A CRACK A
  FEW INCHES FROM THE BOTTOM TOWARD THE
  CENTER CLOSER TO THE PASSENGER SIDE. VEHICLE
  WAS 3 MONTHS OLD AT THE TIME. THERE WAS NO
  KNOWN STONE HIT AND NO OBVIOUS STARTING
  POINT FOR THE CRACK. CRACK SPREAD OVER THE
  NEXT DAY ACROSS THE ENTIRE WINDSHIELD.
  WINDSHIELD HAD TO BE REPLACED AT A COST OF
  $500.

- NHTSA Complaint, October 28, 2015, ID No. 10786891:  I
  PACKED THE CAR IN THE GARAGE PERFECTLY OK
  THEN IN THE MORNING IT HAD A CRACKED
  WINDSHIELD ABOUT 6 IN. I HAD THE CAR FOR 6
  WEEKS AND ODOMETER WAS AT 2100 MIL. IT
  CRACKED IN THE DRIVER SIDE UP AND NOW IS
  ALMOST IN THE OTHER SIDE IN WEIRD PATHER UP
  AND DOWN AND UP AND DOWN . I WENT TO
  DEALERSHIP AND THEY TOLD ME THAT WAS A VERY
  SMALL CHIP THEREFORE IS NOT COVERED BY
  BUMPER TO BUMPER -). LATER I WENT TO FAST
  GLASS - THEY ARE NOT THRILLED TO CHANGE IT -
  REASON BEEN THEY DID A LOT OF NEW SUBARU
  WITH ORIGINAL GLASS AND THEN 1 -2 WEEKS LATER
  SAME PEOPLE ARE BACK WITH A CRACKED
  WINDSHIELD. ..THEY ARE WILLING TO SUPORT MY
  CLAIM.

- NHTSA Complaint, November 11, 2015, ID No. 10789844:
  THREE MONTHS INTO OWNING MY NEW SUBARU
  LEGACY, A SMALL PEBBLE HIT MY WINDSHIELD
  WHILE I WAS DRIVING AT A LOW SPEED, RESULTING
  IN A VISIBLE CHIP. IT DID NOT TURN INTO A CRACK,

SO I DIDN'T GET IT FILLED. HOWEVER, THE WINDSHIELD HAS INCURRED MULTIPLE OTHER CHIPS FROM VERY SMALL PIECES OF ROCK/GRAVEL. I'VE NEVER SEEN SUCH A WEAK WINDSHIELD, AND IT'S SERIOUSLY CONCERNING. I HAVE EXPERIENCED OTHER SMALL ISSUES WITH THE CAR AS WELL, INCLUDING A STRANGE PITCH IN THE VEHICLE HORN AND A RATTLING NOISE COMING FROM THE DRIVER'S SIDE WINDOW. ALL PROBLEMS WERE REPORTED TO THE DEALER, BUT NONE WERE ADDRESSED.

- NHTSA Complaint, December 20, 2015, ID No. 10811354:  I HAVE A 2015 SUBARU LEGACY WITH 6000 MILES ON IT. ON DEC 8TH, 2015, I TOOK IT TO THE DEALER FOR ROUTINE SERVICE, I.E. OIL CHANGE FILTER, TIRE ROTATION, SYSTEM CHECKS AND FLUID LEVELS, ETC. I WAITED FOR THE CAR. I WAS TOLD TO COME BACK AND LOOK AT THE WINDSHIELD IN THE SERVICE BAY. I WAS TOLD THAT THERE WAS A CRACK (HORSESHOE SHAPED) AROUND THE CENTER TOP OF THE WINDSHIELD. THE CRACK WAS NOT THERE WHEN I BROUGHT IT IN BECAUSE I HAD THE CAR WASHED AND I WIPED OFF THE WINDOWS MYSELF PRIOR TO GOING UP TO THE DEALERS. I WOULD HAVE NOTICED THE CRACK. THERE IS NO DING OR STAR SHAPE MARK THAT I CAN SEE ON THE WINDOW. IT LOOKS TO ME LIKE THE CRACK STARTED ON THE INSIDE AROUND THE REAR VIEW MIRROR AREA. I HAVE READ QUITE A FEW REPORTS OF UNEXPLAINED CRACKS IN LEGACY AND OUTBACKS. 2015 MODELS. IT APPEARS TO BE A WINDSHIELD DEFECT. I'M WAITING FOR THEM TO GET BACK TO ME ABOUT REPLACING THE WINDSHIELD. THEY BETTER NOT GIVE ME A HARD TIME BECAUSE I AM THEIR WORST NIGHTMARE. THE DEALERSHIP THAT I WENT TO IS A REPUTABLE DEALER, I JUST HOPE THEY DO THE RIGHT THING. *DT

- NHTSA Complaint, December 30, 2015, ID No. 10816960:
BOUGHT MY VEHICLE AND WAS DRIVING IT HOME,
HAD THE DEFROST ON CAUSE THE WINDOW KEPT
FOGGING UP WHEN I HEARD A CRACK AND THE
WINDSHIELD CRACKED FROM THE BOTTOM UP
WHERE THE DEFROSTER IS AND THEY WONT
REPLACE IT, ON TOP OF THE WHERE U PUT GAS IN
THE CAR IT STUCK SHUT AND THEY TOLD ME TO PRY
IT OPEN N LEAVE IT OPEN TILL THEY GET A PART BUT
IT IS ON BACK ORDER SO DON'T NO WHEN I WILL GET
IT FIXED THAT OCCURRED THIS MONTH ON THE GAS
OPENER 12/30/2015

- NHTSA Complaint, January 18, 2016, ID No. 10820859:  1.5
MONTHS AFTER PURCHASING CAR, NOTICED
VERTICAL ~1 INCH CRACK (WHILE DRIVING, BUT
ONLY BECAUSE I WAS DRIVING INTO THE SUN) IN
WINDSHIELD ABOVE STEERING WHEEL. THERE WAS
NO AUDIBLE CRACKING NOISE WINDSHIELD WAS ON
BACKORDER, AND GOT REPLACED. NOTICED NEW
CRACK IN SAME AREA, ON INSIDE OF WINDSHIELD.
(WAS DRIVING INTO SUN, BUT NO AUDIBLE NOISE)
12/11/2015 MILEAGE 6323 REPLACED WINDSHIELD
1/18/2015. MILEAGE 6508 PARKED VEHICLE UNDER
LIGHT, AND NOTICE APPROXIMATELY 3 INCH
SCRATCH (VERTICAL, IN SAME AREA AS THE LAST 2.
WINDSHIELD WAS LESS THAN 12 HOURS OLD

- NHTSA Complaint, February 2, 2016, ID No. 10823764:
WINDSHIELD CRACKS FROM EDGES. NO NOTICEABLE
CHIPS. CRACK STARTED WITH ROCK HITS. POSSIBLE
DEFECTIVE GLASS.

- NHTSA Complaint, February 15, 2016, Id No. 10826159:  WE
HAVE OWNED THE CAR FOR 14 MONTH'S AND HAVE
HAD TO REPLACE THE WINDSHIELD 6 TIMES DUE TO
CRACKING. OTHER CARS IN THE SAME HOUSEHOLD
HAVE NEVER HAD TO HAVE THEIR WINDSHIELDS
REPLACED. THERE IS OBVIOUSLY SOME KIND OF

DEFECT ASSOCIATED WITH THIS VEHICLE.
CONTACTED SUBARU DEALER WITH NO HELP.

- NHTSA Complaint, February 17, 2016 Id No. 10836790:
  WHILE TRAVELING ON THE OPEN INTERSTATE, THE
  WINDSHIELD STARTED TO CRACK. THE CRACK
  STARTED IN THE LOWER DRIVER SIDE CORNER,
  UNDER THE WIPER BLADE. IN LESS THAN 30 MIN, THE
  CRACK EXTENDED UP AND OVER, IN-FRONT OF THE
  DRIVER'S VIEW AND EXTENDED TO THE CENTER.
  FROM THE OUTSIDE, YOU CAN FEEL THE CRACK. IF
  YOU PUSH ON THE WINDSHIELD, YOU CAN TELL
  THAT THE WINDSHIELD IS WEAK, POOR QUALITY,
  AND A OBVIOUS SAFETY ISSUE.

- NHTSA Complaint, February 29, 2016, ID No. 1838879
  WENT OUTSIDE TO WASH THE CAR AND BEFORE I
  EVEN GOT STARTED I NOTICED A CRACK IN THE
  WINDSHIELD. I LOOKS LIKE IT STARTED IN THE VERY
  CENTER AT THE BOTTOM AND TRAVELED UP AND
  THEN TO THE PASSENGER'S SIDE. THE CRACK IS
  ABOUT 12 INCHES LONG. NO IMPACT, VEHICLE
  WASN'T EVEN MOVING. THERE WAS NO CRACK THE
  DAY BEFORE.

- NHTSA Complaint, March 15, 2016, ID No. 10849849: I
  BOUGHT THE CAR AS A DEALER CAR (THEY TOLD ME
  IT WAS REGISTERED TO A MANAGER AS A TEST CAR).
  IT HAD 4,810 MILES WHEN I BOUGHT IT. I HAVE
  DRIVEN THE CAR JUST OVER 300 MILES. WHEN I TEST
  DRIVE IT, IT MADE A SOUND LIKE A STONE HIT THE
  WINDSHIELD. THEN ALMOST EVERY TIME I HAVE
  DRIVEN IT SINCE, INCLUDING THREE TIMES TODAY,
  IT MADE THE SAME EXACT SOUND. I WAS DRIVING
  BOTH IN CITY TRAFFIC (RED LIGHT TO RED LIGHT)
  AND ON A TOLL ROAD WITH LIMITED TRAFFIC. WHEN
  I GOT OUT AND LOOKED AT THE WINDSHIELD, I
  NOTICED LITERALLY 50 OR MORE SMALL "CHIPS" IN
  THE WINDSHIELD.

- NHTSA Complaint, May 14, 2016, ID No. 10864920:  I PURCHASED THE VEHICLE NEW IN FEBRUARY 2015 AND MY WINDSHIELD HAS REQUIRED REPLACEMENT THREE TIMES. THE SLIGHTEST IMPACT (E.G.: A SMALL PIECE OF GRAVEL COMMON ON ROADWAYS) TO THE WINDSHIELD RESULTS IN HUGE CRACKS IMPEDING MY VISION. THE WINDSHIELD DOES NOT SIMPLY CHIP; IT ALWAYS INSTANTLY CRACKS AND REQUIRES REPLACEMENT. I HAVE REPLACED MORE WINDSHIELDS ON THIS VEHICLE THAN ALL OTHER VEHICLES I HAVE EVER OWNED COMBINED. BECAUSE I HAVE THE SUBARU EYESIGHT SYSTEM, I AM REQUIRED TO REPLACE WITH FACTORY GLASS WHICH IS USUALLY ON BACK-ORDER; THIS GLASS IS CLEARLY DEFECTIVE.

- NHTSA Complaint, October 7, 2016, ID No. 10914544:  I WAS DRIVING ON THE INTERSTATE AT 65 MPH WHEN THE CAR AHEAD OF ME MUST HAVE KICKED UP A SMALL PEBBLE THAT HIT THE WINDSHIELD. THE PEBBLE PUT A SMALL CHIP IN THE PASSANGER SIDE WINDSHIELD & WITHIN 1/2 AN HOUR THERE WAS A CRACK ABOUT 6" LONG RUNNING TOWARDS THE CENTER OF THE WINDSHIELD. WHEN I WENT AROUND A CLOVER LEAF EXIT TO GET OFF THE INTERSTATE THE WINDSHIELD CRACKED ANOTHER 6" TOWARDS THE CENTER OF THE WINDSHIELD. THE PEBBLE WAS VERY SMALL & SHOULD HAVE MADE NO MORE THAN A SMALL CHIP IN THE WINDSHIELD. I HOPE THE CRACK WILL NOT CONTINUE TO GROW; THE WINDSHIELD MUST HAVE SOME KIND OF MANUFACTURING FLAW IN IT. I HOPE IT IS STILL SAFE TO DRIVE THE VEHICLE AS I DO NOT HAVE THE $500.00+ TO REPLACE THE WINDSHIELD AT THIS TIME.?

- NHTSA Complaint, July 8, 2016, ID No. 10883624: REPLACING THE WINDSHIELD 3 TIMES ALREADY IN A

2 YEAR PERIOD. NO CHIPS ARE CREATED FROM
SMALL INTERACTIONS WITH OBJECT LIKE LITTLE
STONES BUT IMMEDIATE CRACKS. THE VEHICLE WAS
IN STATIONARY AND MOVING POSITIONS ON A
STREET AND HIGWAY. MAKES ME WONDER WHAT IS
GOING TO HAPPEN IF THERE WOULD BE MORE
SERIOUS COLLISION THAN JUST A SMALL ROCK.

- NHTSA Complaint, February 12, 2017, ID No. 10954058:
  FRONT WINDSHIELD GOT CRACK UPON BEING
  HITTING BY A FOREIGN OBSTACLE, MAYBE A
  PEBBLE. WITHIN A DAY, THE CRACK LINE EXTENDED
  TO MORE THAN 1 FOOT, WHICH AFFECTED FRONT
  VISIBILITY. WITHIN A FEW WEEKS, THE SAME
  PROBLEM HAPPENED TO MY 2017 SUBARU OUTBACK
  THAT SHARES THE SAME WINDSHIELD COMPONENT
  WITH LEGACY. IN THE PAST, I HAD WINDSHIELD
  CRACKS WITH OTHER CARS I OWNED BUT THE
  CRACKS DID NOT GROW AS FAST AS SUBARU'S. I AM
  WONDERING IF THE SUBARU'S WINDSHIELD USED IN
  LEGACY AND OUTBACK MAY HAVE A MATERIAL
  PROBLEM OR A MANUFACTURING ISSUE.

46.     Although Subaru was aware of the widespread nature of the

Windshield Defect in the Class Vehicles, and that it posed grave safety risks,

Subaru has failed to take adequate steps to notify all Class Vehicle owners of the

Defect and provide relief.

47.     Customers have reported the Windshield Defect in the Class Vehicles

to Subaru directly and through its dealers.  Defendant is fully aware of the

Windshield Defect contained in the Class Vehicles.  Nevertheless, Defendant

actively concealed the existence and nature of the Defect from Plaintiffs and the

other Class Members at the time of purchase or repair and thereafter.  Specifically,

Defendant:

a.      failed to disclose, at the time of purchase or repair and
thereafter, any and all known material defects or material nonconformities of the
Class Vehicles, including the Windshield Defect;

b.      failed to disclose, at the time of purchase or repair and
thereafter, that the Class Vehicles and their front windshield were not in good
working order, were defective, and were not fit for their intended purpose; and,

c.      failed to disclose and/or actively concealed the fact that the
Class  Vehicles and their front windshield were defective, despite the fact that
Defendants learned of the Windshield Defect as early as 2014, if not before.

48.    Defendant has deprived Class Members of the benefit of their bargain,
exposed them all to a dangerous safety Defect, and caused them to expend money
at its dealerships or other third-party repair facilities and/or take other remedial
measures related to the Windshield Defect contained in the Class Vehicles.

49.    Defendant has not recalled the Class Vehicles to repair the Windshield
Defect, has not offered to its customers a suitable repair or replacement of parts
related to the Windshield Defect free of charge, and has not reimbursed all Class
Vehicle owners and leaseholders who incurred costs for repairs related to the
Windshield Defect.

50.    Class Members have not received the value for which they bargained
when they purchased or leased the Class Vehicles.

51.    As a result of the Windshield Defect, the value of the Class Vehicles
has diminished, including without limitation, the resale value of the Class
Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a
vehicle's front windshield is not defective and will not crack, chip and/or fracture
for no reason at all or under circumstances that would not cause non-defective
windshields to similarly fail.  Plaintiffs and Class Members further expect and

assume that Subaru will not sell or lease vehicles with known safety defects, such as the Windshield Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Subaru would fail to disclose the Windshield Defect to them, and then purport to remedy the defect with a limited warranty extension program extended to a subset of Class Members that, at best, results in the replacement of one defective component with another.

## TOLLING OF THE STATUTE OF LIMITATIONS

52.     Plaintiffs and the other Class Members were not reasonably able to discover the Windshield Defect, despite their exercise of due diligence.

53.     Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their front windshields was concealed from them.

54.     In addition, even after Class Members contacted Subaru and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their windshields, they were routinely told by Subaru and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

55.     Hence, any applicable statute of limitation, if any, has been tolled by Subaru's knowledge, active concealment, and denial of the facts alleged herein. Subaru is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their front windshields.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to

Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

57.   The Class and Sub-Classes are defined as:

**Nationwide Class:** All persons who purchased or leased any 2015 through 2016 Subaru Outback or Legacy vehicle in the United States.

**New Jersey Sub-Class:** All persons who purchased or leased any 2015 through 2016 Subaru Outback or Legacy vehicle in the State of New Jersey.

**New York Sub-Class:** All persons who purchased or leased any 2015 through 2016 Subaru Outback or Legacy vehicle in the State of New York.

**California Sub-Class**: All persons who purchased or leased any 2015-2016 Subaru Outback or Legacy vehicle in the State of California.

58.   Excluded from the Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class definition, and to add subclasses, if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

59.   **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all

parties and to the Court.  The Class Members are readily identifiable from, inter alia, information and records in Defendant's possession, custody, or control.

60.   **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendant which is subject to the Windshield Defect.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or replacing cracked, chipped and/or fractured windshields and related parts as a result of the Windshield Defect.  Further, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

61.   **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes that predominate over any question affecting only individual Class Members.  These common legal and factual questions include the following:

a.   whether the Class Vehicles suffer from the Windshield Defect;

b.   whether the Windshield Defect constitutes an unreasonable safety hazard;

c.   whether Defendant knows about the Windshield Defect and, if so, how long Defendant has known of the Defect;

d.   whether the defective nature of the Class Vehicles' front windshield constitutes a material fact;

e.   whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' front windshield to Plaintiffs and the other Class Members;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the Windshield Defect contained in the Class Vehicles before it sold or leased them to Class Members; and,

h.      Whether Defendant violated: (1) New Jersey's Consumer Fraud Act N.J. Stat. Ann. § 56:8-1 *et. seq.*; (2) Breach of Express Warranty (N.J. STAT: Ann. 12A:2-313); (3) Breach of Implied Warranty of Merchantability (N.J. STAT: Ann. §12A:2-314); (4) New York's General Business Law for Deceptive Acts or Practices § 349; (5) Breach of Express Warranty (N.Y. U.C.C. § 2-313); (6) the California Consumers Legal Remedies Act, California Civil Code sections 1750 *et seq.*; (7) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (8) the California Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq.*, and Cal. Comm. Code §2314; (9) Breach of Express Warranty, Cal. Comm. Code §2313; (10) common law fraudulent omission; (11) Breach of Written Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. §2301, *et seq.*); and (12) Breach of Implied Warranty Under the Magnuson-Moss Warranty Act (15 U.S.C. §2301, *et seq.*).

62.      Adequate Representation:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

63.      Predominance and Superiority:  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other

available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

(Violations of New Jersey's Consumer Fraud Act N.J. Stat. Ann. § 56:8-1 *et. seq.*

on behalf of the Nationwide Class or in the alternative the New Jersey Sub-Class)

64.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

65.    Plaintiff Bhupendra Khona brings this cause of action on behalf of himself and on behalf of the Nationwide Class, or in the alternative, the New Jersey Sub-Class.

66.    Plaintiff and Class Members are "persons" within the meaning of N.J. STAT. Ann. § 56:8-1(d).

67.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2. Defendant's conduct, as described above and below, constitutes a violation of N.J. Stat. Ann. § 56:8-2. Furthermore, Defendant's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the defective Class Vehicles, constitute conduct directed at consumers.

68.     Defendant knew that the Class Vehicles' windshields suffered from a defect that can cause the windshields to crack, chip and/or fracture and were not suitable for their intended use.

69.     In failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the New Jersey CFA.

70.     Defendant was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' windshields because:

a.     Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

b.     Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' windshields; and

c.    Defendant actively concealed the defective nature of the Class Vehicles' windshields from Plaintiffs and Class Members at the time of sale and thereafter.

71.    The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles suffered from the Windshield Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

72.    Defendant continued to conceal the defective nature of the Class Vehicles and their windshields even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

73.    Plaintiff also asserts a violation of public policy arising from Defendant's withholding of material safety facts from consumers.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

74.    Defendant's omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

75.    Thus, by its conduct, Defendant has engaged in deceptive acts or practices within the meaning of the New Jersey CFA.

76.    Defendant's deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

CLASS-ACTION COMPLAINT

77.     As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.  Since Defendant's willful and knowing conduct caused injury to Plaintiff, Plaintiff seeks recovery of actual damages, discretionary treble damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.J. Stat. Ann. § 56:8-19.

78.     Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a Copy of this Class-Action Complaint.

## SECOND CAUSE OF ACTION

(Breach of Express Warranty N.J. Stat. Ann. 12A:2-313 on behalf of the New Jersey Sub Class)

79.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80.     Plaintiff Bhupendra Khona brings this cause of action on behalf of himself, and the New Jersey Sub-Class.

81.     Defendant provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.  Accordingly, Defendant's express warranty is an express warranty under New Jersey Law.

82.     Defendant provided all purchasers and lessees of the Class Vehicles with a New Vehicle Limited Warranty ("NVLW").  In the NVLW, Defendant expressly warranted that it covered "any repairs needed to correct defects in materials or workmanship reported during the applicable warranty period which occur under normal use." Defendant promised Basic Coverage under the NVLW of "3 years or 36,000 miles, whichever comes first."

83.   Defendant breached the express warranty through the acts and omissions described above.

84.   Plaintiff was not required to notify Subaru of the breach because affording Defendant a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was on notice of the Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Class Vehicles' front windshields, and through other internal sources.

85.   As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Windshield Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' windshields are substantially certain to crack, chip and/or fracture before their expected useful life has run.

86.   As a result of Defendant's breach of the express warranty, Plaintiff and Class Members are entitled to legal and equitable relief against Defendant, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## THIRD CAUSE OF ACTION

(Breach of Implied Warranty of Merchantability N.J. Stat. Ann. §12A:2-314 on behalf of the New Jersey Sub-Class)

87.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88.    Plaintiff Bhupendra Khona brings this cause of action on behalf of himself, and New Jersey Sub- Class.

89.    Defendant is a merchant with respect to motor vehicles.

90.    Defendant provided Plaintiff and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles' designed, manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' windshields would be fit for their intended use while the Class Vehicles were being operated.

91.    Contrary to the applicable implied warranties, the Class Vehicles' windshields at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully above.

92.    Defendant was provided notice of these issues by numerous consumer complaints, warranty data, and dealership repair orders, among other things.

93.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.  Plaintiff and Class Members are entitled to legal and equitable relief against Defendant, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## FOURTH CAUSE OF ACTION

(Violations of New York's General Business Law for Deceptive Acts or
Practices § 349 ("N.Y. GBL") on behalf of the Nationwide Class or in the
Alternative on behalf of the New York Sub-Class)

94.     Plaintiffs incorporate by reference the allegations contained in the
preceding paragraphs of this Complaint.

95.     Plaintiff Jennifer Ludgate brings this cause of action on behalf of
herself and on behalf of the Nationwide Class, or in the alternative, the New York
Sub-Class.

96.     Plaintiff and Class Members are "persons" within the meaning of
N.Y. GBL § 349(h).

97.     The N.Y. GBL § 349 makes unlawful "[d]eceptive acts or practices in
the conduct of any business, trade or commerce."  Defendant's conduct, as
described above and below, constitutes "deceptive acts or practices" within the
meaning of the New York GBL § 349.  Furthermore, Defendant's deceptive acts
and practices, which were intended to mislead consumers who were in the process
of purchasing and/or leasing the Defective Vehicles, constitute conduct directed at
consumers.

98.     Defendant knew that the Class Vehicles' windshields suffered from a
defect that can cause the windshields to crack, chip and/or fracture and were not
suitable for their intended use.

99.     In failing to disclose the Windshield Defect, Defendant knowingly
and intentionally concealed material facts and breached its duty not to do so,
thereby engaging in deceptive acts or practices within the meaning of the N.Y.
GBL § 349.

100.   Defendant was under a duty to Plaintiff and the other Class Members to disclose the defective nature of the Class Vehicles' windshields because:

a.      Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

b.      Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' windshields; and

c.      Defendant actively concealed the defective nature of the Class Vehicles' windshields from Plaintiff and Class Members at the time of sale and thereafter.

101.   The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.  Had Plaintiff and other Class Members known that the Class Vehicles suffered from the Windshield Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

102.   Defendant continued to conceal the defective nature of the Class Vehicles and their windshields even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

103.   Plaintiff also asserts a violation of public policy arising from Defendant's withholding of material safety facts from consumers.  Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

104.   Defendant's omissions of material facts, as set forth herein, also constitute deceptive acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

105.   Thus, by its conduct, Defendant has engaged in deceptive acts or practices within the meaning of the N.Y. GBL § 349.

106.   Defendant's deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

107.   As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

108.   Since Defendant's willful and knowing conduct caused injury to Plaintiff and Class Members, Plaintiff seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under N.Y. GBL § 349.

## **FIFTH CAUSE OF ACTION**

(Breach of Express Warranty N.Y. U.C.C. § 2-313 on behalf of the New York Sub-Class)

109.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

110.   Plaintiff Jennifer Ludgate brings this cause of action on behalf of herself, and the New York Sub- Class.

111.   Defendant provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the

bargain.  Accordingly, Defendant's express warranty is an express warranty under New York law.

112.   Defendant provided all purchasers and lessees of the Class Vehicles with an NVLW.  In NVLW, Defendant expressly warranted that it covered "any repairs needed to correct defects in materials or workmanship reported during the applicable warranty period which occur under normal use." Defendant promised Basic Coverage under the NVLW of "3 years or 36,000 miles, whichever comes first."

113.   Defendant breached the express warranty through the acts and omissions described above.

114.   Plaintiff was not required to notify Subaru of the breach because affording Defendant a reasonable opportunity to cure its breach of written warranty would have been futile.  Defendant was on notice of the Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Class Vehicles' front windshields, and through other internal sources.

115.   As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Windshield Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' windshields are substantially certain to crack, chip and/or fracture before their expected useful life has run.

116.   As a result of Defendant's breach of the express warranty, Plaintiff and Class Members are entitled to legal and equitable relief against Defendant,

including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate

117.    In addition, with respect to Class Members whose repairs were beyond the warranty period, but failed within a reasonable period thereafter, the durational limits of the warranty are unconscionable pursuant to New York Uniform Commercial Code Sec. 2-302(1) and (2), because as alleged herein, Defendant was aware of the basic defects in the windshields prior to selling or leasing the Class Vehicles and knew or should have known that the Class Vehicles suffered from the Windshield Defect, but concealed or intentionally failed to reveal this information to Class Members in order to cause them to wait until after the warranty period to seek repairs.

## SIXTH CAUSE OF ACTION

(Violation of California's Consumers Legal Remedies Act,

California Civil Code § 1750 *et seq.* ("CLRA") on behalf of the nationwide

class, or in the alternative, the California Sub-Class)

118.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119.    Plaintiffs Brian Mann and Lucia Luong bring this cause of action on behalf of themselves, the nationwide class, and in the alternative, the California Sub- Class.

120.    Subaru is a "person" as defined by California Civil Code § 1761(c).

121.    Plaintiffs and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

122.    By failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiffs and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that the Class

Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.  See Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

123.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

124.   Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

125.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

a.     Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

b.     Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.     Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

126.   By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

127.   The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known

that the Class Vehicles' front windshields were defective, they would not have purchased the Class Vehicles or would have paid less for them.

128.   Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles and their front windshields.

129.   As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their front windshields are defective and require repairs or replacement.

130.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and the other Class Members have suffered and will continue to suffer actual damages.

131.   By letters dated March 24, 2017 and May 31, 2017, and sent via certified mail, Defendant was provided with notice of its alleged violations of the CLRA pursuant to California Civil Code Section 1782(a) and it was demanded that Defendant rectify the problems associated with the behavior detailed above.  As of the filing of this Complaint, Defendant has failed to adequately respond to these demands and has failed to give notice to all affected consumers, as required by California Civil Code Section 1782.

132.   Accordingly, Plaintiffs seek an order enjoining the acts and practices described above.

133.   Plaintiffs additionally seek actual damages, restitution, statutory and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper under Section 1780(a) of the CLRA pursuant to Civil Code Section

1782(d), due to Defendant's failure to rectify or agree to adequately rectify its violations as detailed above.

## SEVENTH CAUSE OF ACTION

(Violation of Unfair Competition Law,

California Business & Professions Code § 17200 et seq. ("UCL") on behalf of the Nationwide Class or, in the alternative, the California Sub-Class)

134.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

135.   Plaintiffs Brian Mann and Lucia Luong bring this cause of action on behalf of themselves, the nationwide class, and in the alternative, the California Sub- Class.

136.   California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

137.   Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

138.   In failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

139.   Defendant was under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles' front windshields because:

a.      Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' front windshields;

b.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' front windshields; and

c.    Defendant actively concealed the defective nature of the Class Vehicles' front windshields from Plaintiffs and Class Members at the time of sale and thereafter.

140.   The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them.  Had Plaintiffs and other Class Members known that the Class Vehicles suffered from the Windshield Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

141.   Defendant continued to conceal the defective nature of the Class Vehicles and their windshields even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of this systematic problem today.

142.   Defendant's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendant's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiffs also assert a violation of public policy arising from Defendant's withholding of material safety facts from consumers. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

143.  Defendant's omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

144.  Thus, by its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

145.  Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

146.  As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

147.  Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and Class Members pursuant to sections 17203 and 17204 of the Business & Professions Code.

## EIGHTH CAUSE OF ACTION

(Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1 *et seq*., and Cal. Comm. Code §2314 on behalf of the California Sub-Class)

148.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

149.  Plaintiffs Brian Mann and Lucia Luong bring this cause of action on behalf of the California Sub- Class.

150.  Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

151.   Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

152.   Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things: (i) a warranty that the Class Vehicles' front windshields designed, manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles' front windshields would be fit for their intended use while the Class Vehicles were being operated.

153.   Contrary to the applicable implied warranties, the Class Vehicles' front windshields, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, as described more fully above.

154.   Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of  California Civil Code sections 1792 and 1791.1, and California Commercial Code section 2314.

## NINTH CAUSE OF ACTION

(Breach of Express Warranty, Cal. Com. Code § 2313 on behalf of the California Sub-Class)

155.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

156.    Plaintiffs Brian Mann and Lucia Luong bring this cause of action on behalf of themselves and the California Sub- Class.

157.    As a result of Defendant's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Windshield Defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' windshields are substantially certain to fail before their expected useful life has run.

158.    Defendant provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.  Accordingly, Defendant's express warranty is an express warranty under California law.

159.    Defendant manufactured and/or installed the front windshield in the Class Vehicles, and it is covered by the express warranty.

160.    Subaru provided all purchasers and lessees of the Class Vehicles with New Car Limited Warranty.  In this New Car Limited Warranty, Subaru expressly warranted that it covered "any repairs needed to correct defects in material or workmanship reported during the applicable warranty period which occur under normal use."  Subaru promised Basic Coverage under the New Car Limited Warranty of "3 years or 36,000 miles, whichever comes first."

161.    Defendant breached the express warranty through the acts and omissions described above.

162.    Plaintiffs requested and were denied warranty coverage by one of Defendant's dealers.  Plaintiffs were not required to notify Subaru of the breach

because affording Subaru a reasonable opportunity to cure its breach of written warranty would have been futile.  Subaru was also on notice of the Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the Class Vehicles' front windshields, and through other internal sources.

163.   As a result of Defendant's breach of the express warranty, Plaintiffs and Class Members are entitled to legal and equitable relief against Defendant, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

## TENTH CAUSE OF ACTION

(Fraudulent Omission on behalf of the California Sub-Class)

164.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

165.   Plaintiffs Brian Mann and Lucia Luong bring this cause of action on behalf of themselves and the California Sub-Class.

166.   Defendant knew that the Class Vehicles' front windshields were defectively designed and/or manufactured, would fail, and were not suitable for their intended use.

167.   Defendant concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their windshields.

168.   Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' front windshields because:

a.      Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

b.      Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the front windshields; and,

CLASS-ACTION COMPLAINT

c.      Defendant actively concealed the defective nature of the Class Vehicles' front windshields from Plaintiffs and Class Members.

169.   The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' front windshields, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

170.   Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' front windshields in order to induce Plaintiffs and Class Members to act thereon.  Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendant's defective Class Vehicles.

171.   Defendant continued to conceal the defective nature of the Class Vehicles' front windshields even after Class Members began to report the problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

172.   As a direct and proximate result of Defendant's misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

## ELEVENTH CAUSE OF ACTION

(Breach of Written Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class, or in the alternative the New Jersey Sub-Class, the New York Sub-Class, and the California Sub-Class)

173.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

174.  Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and in the alternative, on behalf of the New Jersey Sub-Class, the New York Sub-Class and the California Sub-Class.

175.  Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

176.  Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

177.  The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

178.  Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. §2301(6).

179.  Defendant breached the express warranty by virtue of the above-described acts.

180.  Plaintiffs and the other Class Members notified Defendant of the breach within a reasonable time and/or were not required to do so.  Defendant was also on notice of the Windshield Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

181.  Defendant's breach of the express warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

182.   As a direct and proximate result of Defendant's breach of the express warranty, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.   Defendant's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## TWELFTH CAUSE OF ACTION

(Breach of Implied Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class, or in the alternative the New Jersey Sub-Class, and the California Sub-Class)

183.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

184.   Plaintiffs bring this cause of action on behalf of themselves, the Nationwide Class, and in the alternative, on behalf of the New Jersey Sub-Class, the New York Sub-Class and the California Sub-Class.

185.   Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

186.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

187.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

188.   Defendant's implied warranty is a "implied warranty" within the meaning of 15 U.S.C. §2301(7).

189.   Defendant breached the implied warranty by virtue of the above-described acts.

190.   Plaintiffs and the other Class Members notified Defendant of the breach within a reasonable time and/or were not required to do so.  Defendant was also on notice of the Windshield Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

191.   Defendant's breach of the implied warranty deprived Plaintiffs and Class Members of the benefits of their bargains.

192.   As a direct and proximate result of Defendant's breach of the implied warranty, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate

## RELIEF REQUESTED

193.   Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, and issue an order providing the following relief:

a.   That Defendant provide notice, in a form pre-approved by the counsel identified below, to all Class Members, and in the said notice offer to replace the defective windshield contained in every Class Vehicle with a non-defective windshield;

b.   That Defendant provide notice, in a form pre-approved by the counsel identified below, to all Class Members, and in the said notice extend the warranty for the Class Vehicles' front windshield to 10 years /unlimited mileage.

c.   That Defendant offer to reimburse all Class Members all expenses already incurred as a result of the Windshield Defect,

including repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.).

d.   That Defendant immediately cease the sale and leasing of the Class Vehicles at all authorized Subaru dealerships without first notifying the purchasers of the Windshield Defect, and otherwise immediately cease to engage in the violations of law as set forth above.

e.   Damages and restitution in an amount to be proven at trial.

f.   An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class and Sub-Classes, and designating the undersigned as Class Counsel;

g.   A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles' front windshields;

h.   Any and all remedies provided pursuant to the state consumer protection laws, express and implied warranty laws, and fraudulent omissions laws alleged herein;

i.   An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.   A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.      An award of attorneys' fees and costs, as allowable under the N.J. Stat. Ann. § 56:8-19, N.Y. G.BL. § 349(h), California Code of Civil Procedure Section 1021.5, and the other laws pursuant to which Plaintiffs' claims are brought or as otherwise allowed by law;

l.      An award of pre-judgment and post-judgment interest, as provided by law;

m.      Leave to amend the Complaint to add additional class representatives, and conform to the evidence produced at trial; and,

n.      Such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated:  April 4, 2019                By:   */s/ Lee Albert*
                                     **GLANCY PRONGAY & MURRAY LLP**
                                     Lee Albert (LA-8307)
                                     230 Park Avenue, Suite 530
                                     New York, NY 10169
                                     Telephone: (212) 682-5340
                                     Facsimile: (212) 884-0988
                                     lalbert@glancylaw.com

                                     Lionel Z. Glancy (*pro hac vice* to be filed)
                                     Marc L. Godino (*pro hac vice* to be filed)
                                     Danielle L. Manning (*pro hac vice* to be filed)
                                     1925 Century Park East, Suite 2100
                                     Los Angeles, California 90067
                                     Telephone: (310) 201-9150
                                     Facsimile: (310) 201-9160
                                     info@glancylaw.com

                                     **GREENSTONE LAW PC**
                                     Mark S. Greenstone (*pro hac vice* to be filed)
                                     1925 Century Park East, Suite 2100
                                     Los Angeles, California 90067
                                     Telephone: (310) 201-9156
                                     Facsimile: (310) 201-9160
                                     mgreenstone@greenstonelaw.com

CLASS-ACTION COMPLAINT